**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:23-cv-21261-ALTMAN/Reid**

---

MICHAEL SIZEMORE, *et al.*,

                     *Plaintiffs*,

      v.

CHANGPENG ZHAO, *et al.*,

                     *Defendants*.

---

**DEFENDANTS' MOTION FOR A STAY OF DISCOVERY**
**PENDING RESOLUTION OF DEFENDANTS' DISPOSITIVE MOTION**

Defendants[1] hereby respectfully move the Court to enter an order staying discovery in this action pending the Court's resolution of Defendants' forthcoming motion to compel arbitration, or, in the alternative, to dismiss the Complaint (ECF No. 1).  In support of this motion to stay, Defendants state as follows:

**INTRODUCTION**

This case is flawed for many reasons.  Chief among them is that Plaintiffs[2] agreed to arbitrate any claims related to their use of the Binance.US platform, and thus this dispute belongs in arbitration—not federal court.  In this regard, as Defendants previously previewed for the Court and Plaintiffs' counsel, Defendants intend to move to compel the claims against them to arbitration before the American Arbitration Association ("AAA").  Defendants respectfully submit that the

---

[1]  Defendants are Binance Holdings Ltd., Binance Holdings (IE) Ltd., Binance (Services) Holdings Ltd., (together, the "Foreign Binance Entities"), BAM Trading Services Inc. ("BAM"), Changpeng Zhao ("Zhao"), Graham Stephan ("Stephan"), Ben Armstrong ("Armstrong") and Jimmy Butler ("Butler," and collectively "Defendants").

[2]  Plaintiffs are Michael Sizemore ("Sizemore"), Rudy Vazquez ("Vazquez") and Mikey Vongdara ("Vongdara," and together with Sizemore and Vazquez, "Plaintiffs").

case is likely to proceed on one of the following two paths once they move to compel arbitration: (Path 1) the motion is granted and the case is either stayed or dismissed in favor of arbitration before the AAA; or (Path 2) the motion is denied (in whole or in part) and that decision is appealed by one or more of the Defendants, in which case these proceedings will be subject to a mandatory stay pending the appeal, *see Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249 (11th Cir. 2004). Under either of these scenarios, discovery will be unable to proceed in any meaningful fashion in the short term.  And allowing discovery to proceed while the motion is pending would undermine the parties' arbitration agreement and be inconsistent with Eleventh Circuit case law.  Accordingly, the Court should stay discovery pending the Court's resolution of Defendants' forthcoming motion to compel arbitration, or, in the alternative, to dismiss the Complaint.

Beyond these practical realities, on the merits, Plaintiffs' claims also suffer from multiple jurisdictional and pleading deficiencies that would bar it from proceeding in federal court even if there were no arbitration agreement.  In their haste to file the Complaint, Plaintiffs failed to allege any facts demonstrating their injury in fact, Defendants' actions toward Florida, or the basic elements of their claims.

Defendants intend to raise all of these issues in their consolidated dispositive motion to be filed on or before Monday, July 24, 2023.  In the interim, Defendants seek a limited stay of discovery to ensure that the parties' arbitration agreement is respected, to preserve judicial resources, and to prevent the parties and the Court from incurring significant costs and burdens that will be moot upon resolution of the motion.  Defendants contend that discovery should be stayed for four reasons.

*First*, all of Plaintiffs' claims are subject to a binding arbitration agreement and therefore, if the claims are to be adjudicated at all, they must be adjudicated before an arbitrator.  BAM's

records reflect that each Plaintiff created an account on the Binance.US platform.  To create an account on Binance.US, Plaintiffs were required to agree to BAM's Terms of Use (the "Terms").  BAM's Terms explicitly provide that "any dispute or controversy arising out of or relating to these Terms or the Services . . . shall be resolved through binding arbitration on an individual basis . . . .  Arbitration shall be conducted in accordance with the rules of the American Arbitration Association (**"AAA"**), Consumer Arbitration Rules."[3]  The breadth of BAM's Terms and the nature of the claims alleged in the Complaint require Plaintiffs to not only arbitrate their claims against BAM, but to arbitrate their claims against all Defendants.

*Second*, Plaintiffs have failed to establish standing.  The Complaint is bereft of any allegations of a concrete and particularized injury Plaintiffs have suffered as a result of Defendants' alleged sale or promotion of "unregistered securities."  Plaintiffs are required to plausibly allege an injury in fact in order to invoke the subject-matter jurisdiction of this Court.  They have not.

*Third*, Plaintiffs have failed to plausibly allege that the Court has personal jurisdiction over Defendants.  The Complaint's scant allegations about Plaintiffs' alleged purchase of unregistered securities on the Binance.US platform are insufficient to establish that their claims *arise from or relate to* any of Defendant's alleged contacts with Florida.

*Finally*, the Complaint fails to state a claim upon which relief can be granted.  Plaintiffs assert claims under Florida and California state securities laws, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), California's Unfair Competition Law ("UCL"), and for civil conspiracy.  (Compl. ¶¶ 207-46.)  Defendants' motion will show that the Complaint falls far short of stating a claim for relief under any theory.  For example, despite asserting securities law claims,

---

[3]  BAM's Terms are publicly available at https://www.binance.us/terms-of-use (last updated May 5, 2023).

the Complaint only contains vague and conclusory allegations about Plaintiffs' alleged purchase of securities on the Binance.US platform—allegations that are insufficient to state a claim under the Florida or California state securities laws.  Plaintiffs' FDUTPA claim is fatally flawed because it is based on the alleged sale and promotion of unregistered securities, and "securities transactions are not within the intended scope of the [FDUTPA]."  *Crowell v. Morgan, Stanley, Dean Witter Servs. Co.*, 87 F. Supp. 2d 1287, 1294-95 (S.D. Fla. 2000).  Similarly, Plaintiffs' UCL claim fails because, among other things, Plaintiffs lack statutory standing and have not alleged that they "lack[] an adequate remedy at law."  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Finally, Plaintiffs' civil conspiracy claim fails to state a claim because, for at least the reasons previewed above, Plaintiffs do not adequately plead any underlying legal violation.  *See Alhassid v. Bank of America, N.A.*, 60 F. Supp. 3d 1302, 1317 (S.D. Fla. 2014).

Thus, Defendants have several meritorious arguments that may dispose of this entire action.  A stay of discovery is warranted where a defendant's motion is "likely meritorious and dispositive of the case."  *See Bufkin v. Scottrade, Inc.*, 812 F. App'x 838, 841-42 (11th Cir. 2020).  Defendants' forthcoming motion meets that standard.

## BACKGROUND

The crux of Plaintiffs' complaint is that Defendants allegedly sold and promoted "unregistered securities."  Plaintiffs, however, provide no specific allegations as to the who, what, when, where and how regarding these alleged purchases.  (*See* Compl. ¶¶ 20-22, 32, 211-12.)  Regarding supposed "promotional" efforts by certain Defendants in connection with a Binance platform, among many other defects, Plaintiffs fail to show any "promotion" to encourage purchases of any allegedly unregistered security, or that Plaintiffs even viewed anything posted or said in that regard.  (*See, e.g.*, Compl. ¶¶ 160-61 (showing video image of Defendant Butler stating

"DO YOUR OWN RESEARCH" on "crypto" and alleging "customers . . . in this District," not Plaintiffs specifically, "actually saw those" images).)  Plaintiffs failed to (and cannot) plead that any such Defendant is a statutory seller of unregistered securities as a matter of law, and nothing attributable to them could potentially be found deceptive to a reasonable consumer.  Plaintiffs also provide no specific allegations about the specific platform—Binance.US or Binance.com—on which the supposed transactions occurred.  Plaintiffs expressly acknowledge that BAM "operates Binance.US, a spot digital asset trading platform that offers its services to U.S. residents" (Compl. ¶¶ 27, 56), and the Foreign Binance Entities operate Binance.com, which is a separate and distinct trading platform available to individuals outside the U.S.  (Compl. ¶¶ 75, 117.)  Notwithstanding Plaintiffs' recognition that Binance.US and Binance.com are separate platforms, that Binance.US is the platform available to U.S. residents, and Plaintiffs are U.S. citizens,[4] Plaintiffs never specify the platform on which they created accounts and purportedly "purchased, repurchased, invested and/or reinvested unregistered securities."  (*See* Compl. ¶¶  20-22.)

BAM's records, however, reflect that each Plaintiff created accounts on the Binance.US platform.  Plaintiff Vongdara created his Binance.US account on January 7, 2021, Plaintiff Sizemore created his Binance.US account on August 21, 2021, and Plaintiff Vazquez created his Binance.US account on October 28, 2022.  In doing so, Plaintiffs affirmatively accepted BAM's Terms by checking a box stating that they accept the Terms when they create their Binance.US accounts.  Plaintiffs also continued to assent to the Terms several times when BAM updated the Terms after they created their accounts (most recently on May 5, 2023).  The Foreign Binance

---

[4]  Plaintiff Sizemore alleges he is a citizen and resident of California, and Plaintiffs Vazquez and Vongdara allege they are citizens and residents of Florida.  (Compl. ¶¶ 20-22.)

Entities' records reflect that Plaintiffs have never created accounts or engaged in trading activity on the Binance.com platform.

The import of Plaintiffs' creation of Binance.US accounts and their use of that platform is that Plaintiffs agreed, through BAM's Terms, to arbitrate any disputes arising from or relating to Plaintiffs' activities on the platform.  Every version of the Terms in effect since Plaintiffs created their accounts provided that all disputes must be resolved through arbitration conducted in accordance with the rules of the AAA.  (*See, e.g.*, May 5, 2023 Terms ("[A]ny dispute or controversy arising out of or relating to these Terms or the Services . . . shall be resolved through binding arbitration on an individual basis . . . .  Arbitration shall be conducted in accordance with the rules of the American Arbitration Association (**"AAA"**), Consumer Arbitration Rules.").[5])

As Defendants previewed during the May 30, 2023 conference, Defendants intend to move to compel arbitration of Plaintiffs' claims based on their agreement to the Terms.  In accordance with the Court's directive, Defendants will also concurrently move to dismiss the Complaint on various other grounds, including for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted.

## ARGUMENT

The threshold issues presented by Defendants' forthcoming dispositive motion warrant a stay of discovery pending the Court's ruling on Defendants' motion.  Indeed, discovery cannot proceed in any meaningful way at this time.  If Defendants' motion to compel arbitration is granted and the case is either stayed or dismissed in favor of arbitration before the AAA, discovery would proceed in arbitration (or not at all).  If, on the other hand, Defendants' motion to compel is denied (in whole or in part) and that decision is appealed by one or more of the Defendants, the case will

---

[5]  *See supra* Note 3.

be subject to a mandatory stay pending the appeal, *see Blinco*, 366 F.3d at 1249, in which case discovery could not begin, at least in earnest, until such time as the stay has been lifted.

Against this backdrop, the Court enjoys "broad discretion in managing pretrial discovery matters," but that "discretion is not wholly unfettered." *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002). The Eleventh Circuit has held that allowing to discovery to proceed before addressing a likely meritorious dispositive motion constitutes an abuse of discretion. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366-68 (11th Cir. 1997). To determine whether a dispositive motion is likely meritorious, the district court need only take "a preliminary peek" at the merits of the motion.[6] *Bufkin*, 812 F. App'x at 842; *see also Candelario v. La Libertad Mkt. Cafeteria Inc.*, 2022 WL 1122610, at *2 (S.D. Fla. Apr. 14, 2022); *Dayem ex rel. Dayem v. Chavez*, 2014 WL 12588513, at *1 (S.D. Fla. Mar. 11, 2014). The review at this stage is limited to a determination of whether Defendants have potential or "likely" meritorious challenges to the Complaint. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2021 WL 10428229, at *2-3 (S.D. Fla. Oct. 9, 2021) (explaining that the relevant inquiry on a motion to stay pending resolution of a dispositive motion is not whether the "Complaint could ultimately survive Defendants' challenges," but whether the defendants present "legitimate . . . challenges" to the sufficiency of the complaint that should be resolved before discovery commences). In instances where likely meritorious dispositive motions are presented, another factor favoring a stay of discovery is the presence of the potentially significant "costs and burdens of proceeding with discovery." *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006); *accord Taylor v. Serv. Corp. Int'l*, 2020 WL 6118779, at *3-4 (S.D. Fla. Oct. 16, 2020).

---

[6] The Court need not resolve Defendants' arguments on this motion to stay; that must wait for the dispositive motion itself.

The standard is easily met here.  Defendants' forthcoming motion will contain several meritorious, dispositive challenges to the Complaint that will eliminate the need for potentially costly and burdensome discovery.

## I.  Defendants Have Several Meritorious Challenges To The Complaint.

Defendants' forthcoming motion will present four separate bases upon which the Court may dispose of this entire action: (1) prior agreement to resolve disputes through arbitration; (2) lack of subject-matter jurisdiction; (3) lack of personal jurisdiction; and (4) failure to state a claim.  The required "preliminary peek" of Defendants' arguments underlying each of these bases is provided below.

### A.  Plaintiffs' Claims Are Subject To Binding Arbitration.

Defendants' forthcoming motion will seek to enforce Plaintiffs' prior agreement to arbitrate this dispute.  Because the arbitration question will raise a "threshold issue" relating to "the authority of the Court to entertain this litigation," the Court should enter a stay of discovery until that issue is resolved.  *Blinco*, 366 F.3d at 1252 (staying discovery pending appeal of the denial of a motion to compel arbitration).

Courts in this Circuit "have routinely stayed discovery into the underlying merits of the case when a motion to compel arbitration has been filed in good faith."  *Parsons v. Advanced Call Center Techs., LLC*, 2018 WL 11458650, at *1 (S.D. Fla. Apr. 13, 2018); *see also Bufkin*, 812 F. App'x at 841-42 (affirming a grant of a discovery stay pending resolution of defendants motions to compel and to dismiss on the basis that the motions "were likely meritorious and dispositive of the case"); *Suarez-Valdez v. Shearson Lehman/Am. Express, Inc*., 858 F.2d 648, 649 (11th Cir. 1988) (holding that the "district court erred in refusing to stay discovery" where there was an "agreement to arbitrate [and] proceed under arbitration rules and not under court rules").

8

The Eleventh Circuit has a strong policy of ensuring arguably arbitrable disputes are decided by arbitrators, not the federal courts. *See Multi-Financial Sec. Corp. v. King*, 386 F.3d 1364, 1367 (11th Cir. 2004). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). And "when parties incorporate the rules of the [American Arbitration] Association into their contract, they *clearly and unmistakably* agree that the arbitrator should decide whether the arbitration clause applies." *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (emphasis added) (cleaned up). In such circumstances, the gateway question of whether the claims at issue are arbitrable must be decided by an arbitrator if the arbitration clause "is susceptible of an interpretation that covers the dispute." *Id.* at 1312.

Here, Defendants' motion will show that Plaintiffs entered into an agreement to arbitrate disputes relating to their use of Binance.US, and that the question of arbitrability of Plaintiffs' claims must be decided by an arbitrator.

*First*, BAM has records showing that Plaintiffs created accounts with Binance.US on January 7, 2021 (Vongdara), August 21, 2021 (Sizemore), and October 28, 2022 (Vazquez), which required that they affirmatively agree to the Terms containing an arbitration clause by checking a box.

*Second*, the arbitration clause in BAM's Terms explicitly incorporates "the rules of the American Arbitration Association ("AAA")." (*See* May 5, 2023 Terms.) Therefore, the parties have "clearly and unmistakably" agreed that the question of arbitrability must be decided by an arbitrator. *See Cyanotech Corp.*, 769 F.3d at 1312; *Terminix Intern. Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005).

*Third*, the arbitration clause in the Terms is broad and thus "susceptible" (at a minimum) to an interpretation that the claims in the Complaint are arbitrable. The arbitration clause covers "any

dispute or controversy arising out of or relating to these Terms or the Services," which includes the Binance.US platform.  (*See* May 5, 2023 Terms.)  BAM and Plaintiffs are parties to the Terms. Courts regularly find that similar arbitration provisions cover any and all claims against the parties to the agreement.  *See King*, 386 F.3d at 1367, 1371 (holding that plaintiffs' federal and state securities, contract, fraud, negligence and fiduciary duty claims were arbitrable where the arbitration clause covered "any dispute, claim, or controversy arising out of or in connection with the business of any member of [defendant]"); *Wubben v. Kirkland*, 2008 WL 11334983, at *6 (M.D. Fla. Dec. 22, 2008), *report and recommendation adopted*, 2009 WL 10670013 (M.D. Fla. Mar. 25, 2009) ("Plaintiffs' allegations against Defendants for the sale of unregistered securities (Counts I–III) 'arises out of' and is 'related to their Contract.' As such, Plaintiffs' unregistered securities claims are subject to arbitration.").[7]

Defendants' motion will also demonstrate that Plaintiffs' claims against the Foreign Binance Entities and individual Defendants are also subject to the arbitration requirement.  The doctrine of equitable estoppel permits the Court to compel arbitration of Plaintiffs' claims against these non-signatory Defendants.  *See Becker v. Davis*, 491 F.3d 1292, 1299 (11th Cir. 2007); *see also Physician Consortium Servs., LLC v. Molina Healthcare, Inc*., 414 F. App'x 240, 242 (11th Cir. 2011).[8]  "Application of equitable estoppel is warranted when the signatory to the contract

---

[7]  During the May 30, 2023 conference, Plaintiffs' counsel suggested that their supposed claims related to trading on platforms other than Binance.com or Binance.US would not be subject to arbitration.  But the Complaint does not include factual allegations related to purchasing from and trading on other platforms—to the contrary, Plaintiffs allege that they "purchased . . . securities *from the Binance Entities*" and "executed trades on the Binance Platform."  (Compl. ¶¶ 20-22 (emphasis added).)  In any event, by incorporating the AAA rules, Plaintiffs agreed to delegate any questions about the arbitrability of claims to the arbitrator.

[8]  The doctrine of equitable estoppel is governed by state law.  *Physician Consortium Servs.*, 414 F. App'x at 242.  Courts in Florida apply Florida state law when assessing equitable estoppel arguments.  *Id.*; *Aliani v. Yum Berry, LLC*, 2019 WL 13262724, at *1 (S.D. Fla. Dec. 19, 2019) (Altman, J.); *Herrera v. W. Flagler Assocs., Ltd.*, 2017 WL 9324515 at *5 (S.D. Fla. Apr. 5, 2017).

containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Becker*, 491 F.3d at 1304 (cleaned up).  The Complaint here expressly alleges just such "concerted misconduct"—Plaintiffs allege a civil conspiracy among all Defendants.  (*See, e.g.*, Compl. ¶ 245) For example, Plaintiffs allege that "the Binance platform" is comprised of "dozens" of entities that "operate the Binance platform together as a common enterprise," and that Defendant Zhao "has ultimately controlled all of Binance's business activities at all times" and "has directly or indirectly owned the scores of entities that collectively operate the Binance platform."  (Compl. ¶¶ 23, 44-45.)  Indeed, throughout the Complaint, Plaintiffs repeatedly group all of the Defendants together, asserting concerted action by all of them together, with one another, and with other companies not named as defendants in this action.  (*See* Compl. ¶¶ 32, 49-57, 210-214, 219-224, 227-234, 238-240, 242-246.)

Where, as here, plaintiffs' claims against non-signatories are based on allegations of concerted misconduct, courts routinely enforce the plaintiffs' arbitration agreements against those non-signatories.  *See Becker*, 491 F.3d at 1303 ("The defendants argue that since the complaint alleges a conspiracy between signatory defendants and nonsignatory defendants, equitable estoppel allows a nonsignatory defendant to compel arbitration. We agree."); *see also Aliani v. Yum Berry, LLC*,  2019 WL 13262724, at *1 (S.D. Fla. Dec. 19, 2019) (Altman, J.) (granting a non-signatory defendant's motion to compel arbitration because "a non-signatory defendant may enforce an arbitration clause against a signatory plaintiff when the signatory alleges interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract[,] [and] [t]he First Amended Complaint is replete with such allegations" (cleaned up)); *Wubben*, 2008 WL 11334983, at *7-8 (granting, on equitable estoppel grounds, defendants'

motion to compel arbitration of plaintiff's claims for the sale of unregistered securities under federal and Florida state law). At a minimum, the non-signatory Defendants have meritorious arguments that Plaintiffs' claims against them must be adjudicated in arbitration.

Because Defendants have meritorious and good faith arguments that this entire dispute is subject to arbitration, the Court should stay discovery pending resolution of Defendants' motion.

**B.  Plaintiffs Have Failed To Establish Subject-Matter Jurisdiction.**

The Complaint is doomed for another threshold reason: Plaintiffs lack Article III standing.

Courts in this Circuit routinely stay discovery when a defendant lodges legitimate challenges to a plaintiff's standing. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,* 2021 WL 10428229, at *2; *Taylor*, 2020 WL 6118779, at *2; *Chavez*, 2014 WL 12588513, at *1; *Varga v. Palm Beach Cap. Mgmt., LLC*, 2010 WL 8510622, at *1 (S.D. Fla. Sept. 3, 2010). "[I]t is well established that threshold issues related to standing are case dispositive and constitute a facial challenge properly resolved before discovery." *In re Mednax*, 2021 WL 10428229, at *2 (holding that standing challenges "should be resolved *before* discovery to conserve the resources of the Court, counsel, and all parties").

To establish Article III standing, Plaintiffs "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *City of Miami Gardens v. Wells Fargo & Co*., 931 F.3d 1274, 1282 (11th Cir. 2019).

The Complaint makes no attempt whatsoever to allege that Plaintiffs have suffered an injury in fact. Despite being seventy-four pages in length, the Complaint contains no factual allegations explaining how Plaintiffs suffered an Article III injury. Instead, Plaintiffs merely repeat a handful of vague and conclusory allegations that each Plaintiff "has sustained" unspecified

and unidentified "damages" and that Defendants "caused and continue[] to cause substantial injury," without any supporting facts or explanation.  (Compl. ¶¶ 20-22, 240.)  Courts repeatedly dismiss similarly conclusory allegations of harm for failure to plausibly allege Article III injury in fact.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (The plaintiffs cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.");  *TocMail, Inc. v. Microsoft Corp.*, 2023 WL 3070085, at *6 (11th Cir. Apr. 25, 2023) (holding plaintiffs' failed to establish an Article III injury where plaintiff offered only speculative statements as to its harm related to sales and purchases).  Defendants respectfully submit that the Court should do the same and dismiss this action in its entirety, but at a minimum Defendants' challenge to Plaintiffs' standing warrants a stay of discovery pending the Court's decision.

### C.  Plaintiffs Have Not Established Personal Jurisdiction Over All Defendants.

Defendants' motion also will show that Plaintiffs' allegations are insufficient to establish personal jurisdiction over several Defendants.  Defendants' personal jurisdiction arguments are likely meritorious and warrant a stay of discovery in this action.

"[T]he exercise of personal jurisdiction over a defendant must comport with due process." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018).  Personal jurisdiction may be general or specific.  *Id.*  Here, the Complaint only alleges specific personal jurisdiction over Defendants.  (*See* Compl. ¶ 32 (discussing alleged minimum contacts with Florida).)

For courts in Florida to exercise specific personal jurisdiction in a manner that comports with due process, specific plaintiffs' claims must "arise out or relate to one of [defendant's] contacts with Florida."  *Waite*, 901 F.3d at 1314.  Even where personal jurisdiction is based on conspiracy jurisdiction, a plaintiff must establish (1) "the existence of a conspiracy in which the

non-resident defendant and the resident participated"; and (2) one of the conspirators committed "a tortious act within the state" that serves as the basis for the plaintiff's claims. *Schrier v. Qatar Islamic Bank*, 2022 WL 4598630, at *12-13 (S.D. Fla. Sept. 30, 2022) (Altman, J.).

Plaintiffs fail to establish specific personal jurisdiction over Defendants because Plaintiffs have not plausibly alleged any of the Defendants committed a tortious act in Florida. *See, e.g.*, *Miro v. Doe*, 2023 WL 2734374, at *4 (S.D. Fla. Mar. 31, 2023) (dismissing claims against Binance Holdings, Ltd. for lack of personal jurisdiction); *Cox v. CoinMarketCap OpCo LLC*, 2023 WL 1929551, at *5-6 (D. Ariz. Feb. 10, 2023) (dismissing claims against BAM and Defendant Zhao for lack of personal jurisdiction). The linchpin of Plaintiffs' claims is Defendants' alleged "sale of unregistered securities in Florida," which they allege "constitutes [] a tortious act within the state of Florida." (*See* Compl. ¶ 32.) Yet, the Complaint contains only vague and conclusory allegations about Plaintiffs' supposed purchases. (*See, e.g.*, Compl. ¶¶ 20-22 (conclusory allegations about how each Plaintiff "purchased, repurchased, invested, and/or reinvested" unspecified "securities from the Binance Entities").) The Complaint is completely devoid of any allegations as to what supposed securities Plaintiffs' allegedly purchased, when they purchased them, where they purchased them (the Binance.US platform or the Binance.com platform), how many transactions, or how much money they have spent on purchasing these alleged unregistered securities. Plaintiffs' barebones allegations are insufficient to establish that their claims *arise from or relate to* any purchase of unregistered securities sold to them by any Defendant in this action. *See Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 550 (11th Cir. 2019) (holding that the district court lacked personal jurisdiction because plaintiff did not show plaintiff's purchase from defendant was in any way connected to Florida); *Schrier*, 2022 WL 4598630, at *13 (finding lack

14

of personal jurisdiction where plaintiff failed to show defendants' allegedly tortious purchase occurred in Florida).

Because Defendants have meritorious challenges that they are not subject to personal jurisdiction here, the Court should enter a stay of discovery.  *See Textile USA, Inc. v. Diageo N. Am., Inc*., 2016 WL 11317301, at *1 (S.D. Fla. June 8, 2016); *Taylor*, 2020 WL 6118779, at *2.

### D.  The Complaint Fails To State A Claim Upon Which Relief May Be Granted.

Beyond the jurisdictional flaws plaguing their Complaint, Plaintiffs have failed to state any claim against Defendants under Rule 12(b)(6).  Defendants' arguments are sufficiently meritorious to warrant a stay of discovery pending resolution of the motion.

Where, as here, "even the most cursory review of [Plaintiffs'] shotgun complaint reveals that it contains [claims] . . . of questionable validity," allowing the "case to proceed through discovery without" first adjudicating the dispositive motion is unwarranted. *Chudasama*, 123 F.3d at 1368-69; *see also In re Mednax*, 2021 WL 10428229, at *2 (staying discovery pending resolution of motion to dismiss for failure to state a claim because defendants identified "notable pleading deficiencies" regarding all of plaintiffs' claims); *Taylor*, 2020 WL 6118779, at *2 (same); *Textile USA, Inc*., 2016 WL 11317301, at *1 (same); *Chavez*, 2014 WL 12588513, at *1 (same).

The Complaint alleges five causes of action:  (1) violation of section 517.07 of the Florida Securities and Investor Protection Act ("FSIPA"); (2) violation of section 25110 of the California Securities Law ("CSL"); (3) violation of the FDUTPA; (4) violation of the UCL; and (5) civil conspiracy.  (Compl. ¶¶ 207-46.)

Defendants' forthcoming motion will show that Plaintiffs have failed to state a claim as to each claim alleged in the Complaint.  For example:

***FSIPA and CSL Claims.***  The allegations in the Complaint regarding Defendants' alleged sale of unregistered securities fall far short of stating a claim under the FSIPA and CSL.  Under

both states' securities laws, "vague" or "conclusory" allegations regarding plaintiffs' alleged purchase of securities do not adequately state a claim for relief. *Trilogy Props. LLC v. SB Hotel Assocs. LLC*, 2010 WL 7411912, at *12 (S.D. Fla. Dec. 23, 2010) (dismissing a FSIPA claim where the complaint contained "conclusory allegation[s], unsupported by facts"); *Dhaliwal v. Singh*, 2013 WL 2664336, at *13 (E.D. Cal. June 12, 2013) (dismissing a CSL § 25110 claim where plaintiffs' "vague and conclusory" allegations failed "to identify with precision securities transactions, [and] their timing"); *see also Rensel v. Centra Tech, Inc*., 2019 WL 2085839, at *6 (S.D. Fla. May 13, 2019) ("Mere conclusory allegations" about defendants' "sale of stock . . . are insufficient to state a claim under Section 12" of the Securities Act).[9] That is the case here; the Complaint only contains vague and conclusory allegations about Plaintiffs' alleged purchase of securities. (*See* Compl. ¶ 212 ("The Binance Entities sold and offered to sell the unregistered securities to Plaintiffs.").) Such vague and conclusory allegations are insufficient to state a claim of violations of the FSIPA or CSL. *See Trilogy Props. LLC*, 2010 WL 7411912, at *12; *Dhaliwal*, 2013 WL 2664336, at *13; *see also Rensel*, 2019 WL 2085839, at *6.

**FDUTPA Claim.** The Complaint cannot establish a violation of the FDUTPA "[b]ecause [when] Plaintiffs' allegations . . . are rooted in securities transactions, [the] FDUPTA does not apply." *Feng v. Walsh*, 2021 WL 8055449, at *13 (S.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022); *accord Crowell*, 87 F. Supp. 2d at 1287.

---

[9] Both Florida and California courts look to federal securities law when determining whether defendants have violated their respective state securities laws. *See Phillips v. Kaplus*, 764 F.2d 807, 815 n.8 (11th Cir. 1985); *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc*., 998 F.3d 397, 405 (9th Cir. 2021).

16

***UCL Claim.***   Plaintiffs' UCL claim fails because they lack statutory standing under the UCL, which requires that they have "suffered injury in fact and [] lost money or property."   *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (2009) (citation and internal quotation marks omitted). Because the UCL is equitable in nature, Plaintiffs also are required to specifically allege that they "lack[] an adequate remedy at law."   *Sonner*, 971 F.3d at 844; *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1216 (S.D. Fla. 2022) ("Plaintiff [] fails to allege [] that there is no adequate legal remedy for his alleged injuries . . . . Therefore, Plaintiff[]'s claims under the UCL . . . must be dismissed.").   But Plaintiffs do not make any allegations that they lack an adequate remedy at law.   (*See* Compl. ¶¶ 236-240.)   And they fail to state a UCL claim under any of the three UCL "prongs"—fraud, unfairness, or unlawfulness—on which they rely.

***Civil Conspiracy.***   As to Plaintiffs' civil conspiracy claim, "civil conspiracy is not an independent cause of action; there must be an underlying wrong on which the conspiracy claim is based."   *Nance v. Maxwell Fed. Credit Union (MAX)*, 186 F.3d 1338, 1342 (11th Cir. 1999). Plaintiffs' civil conspiracy claim likely fails to state a claim because, for at least the reasons previewed above, Plaintiffs do not adequately plead any underlying legal violation.   *See Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1317 (S.D. Fla. 2014) ("[B]ecause Plaintiffs' . . . statutory violation claims, etc., against [defendant] do not survive this Motion to Dismiss, they cannot substantiate Plaintiffs' civil conspiracy claim.").

## II.   Discovery Would Impose Significant Costs And Burdens On The Parties And The Court.

In addition to Defendants' numerous meritorious and dispositive challenges to the Complaint, the propriety of issuing a stay of discovery is bolstered by the fact that Plaintiffs'

putative class action Complaint presents the likelihood of significant discovery costs and burdens

on Defendants, Plaintiffs, and most importantly, the Court.

Discovery imposes significant burdens on the parties and the Court.  In supporting the

imposition of a stay pending resolution of a potentially meritorious arbitration motion, the

Eleventh Circuit specifically acknowledged:

> Discovery imposes several costs on the litigant from whom
> discovery is sought. These burdens include the time spent searching
> for and compiling relevant documents; the time, expense, and
> aggravation of preparing for and attending depositions; the costs of
> copying and shipping documents; and the attorneys' fees generated
> in interpreting discovery requests, drafting responses to
> interrogatories and coordinating responses to production requests,
> advising the client as to which documents should be disclosed and
> which ones withheld, and determining whether certain information
> is privileged. The party seeking discovery also bears costs, including
> attorneys' fees generated in drafting discovery requests and
> reviewing the opponent's objections and responses. Both parties
> incur costs related to the delay discovery imposes on reaching the
> merits of the case. Finally, discovery imposes burdens on the
> judicial system; scarce judicial resources must be diverted from
> other cases to resolve discovery disputes.

*Chudasama*, 123 F.3d at 1367-68.  The concerns expressed by the Eleventh Circuit are particularly

pertinent where, as here, the challenged complaint is a putative class action.  *See In re Mednax*,

2021 WL 10428229, at *2; *Taylor,* 2020 WL 6118779, at *3.

In light of these costs and burdens, the Eleventh Circuit instructed that legally deficient

claims "should be eliminated before the discovery stage, if possible."  *Chudasama*, 123 F.3d at

1367-68 ("If the district court dismisses a nonmeritorious claim before discovery has begun,

unnecessary costs to the litigants and to the court system can be avoided.").  The *Chudasama* court

warned that "[a]llowing a case to proceed through the pretrial processes with an invalid claim that

increases the costs of the case does nothing but waste the resources of [] litigants, . . .  squander

scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system." *Id.*

The need to stay discovery is also heightened here because Defendants have a meritorious motion to compel arbitration that, if granted, will result in this litigation proceeding in another forum under different procedural rules. Based on the arbitration agreement in the Terms that Plaintiffs agreed to, Defendants have "a right not to litigate the dispute in a court and bear the associated burdens, . . . including pretrial discovery." *See Blinco*, 366 F.3d at 1252. The AAA rules have different discovery procedures, and allowing Plaintiffs to obtain discovery in this case through the Federal Rules would be an end-run around the parties' arbitration agreement. *See Kolici v. Montway*, *LLC*, 2021 WL 9374959, at *1 (M.D. Fla. Oct. 26, 2021) (finding that "discovery in arbitration is designed to be less burdensome than discovery under the Federal Rules of Civil Procedure [so] requiring the latter before a decision on arbitration may deprive a litigant of a bargained-for benefit").

In fact, Plaintiffs are already seeking costly and overbroad discovery. Earlier today, Plaintiffs served over 100 document requests on Defendants along with deposition notices to every Defendant and lengthy Rule 30(b)(6) notices to the corporate Defendants.[10] Plaintiffs' requests are widely overbroad and unduly burdensome. For example, Plaintiffs demand that Defendant Zhao—Binance's founder and CEO—produce all documents and communications regarding "any business" he has "conducted with the Binance Entities."[11] Plaintiffs also demand that all

---

[10] Copies of the Requests For Production and Notices of Deposition Plaintiffs served on Defendants on June 6, 2023 are attached hereto as Exhibits 1-16.

[11] *See* Exhibit 8 at 9.

Defendants produce all documents related to any "due diligence" regarding "the solicitation, promotion, offer and/or sale of BNB, BUSD, Unregistered Products or the Binance Platform."[12]

Absent a stay of discovery, Defendants will "be prejudiced by participating in discovery [a]s . . . the Eleventh Circuit has held that one factor in determining whether a party waives its right to arbitration is the extent to which 'a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate.'" *Internaves De Mexico s.a. de C.V. v. Andromeda Steamship Corp.*, 2017 WL 7794599, at *2 (S.D. Fla. Feb. 24, 2017) (quoting *Citibank, N.A. v. Stok & Assoc., P.A.*, 387 F. App'x 921, 924 (11th Cir. 2010)). Defendants "should not be put in the position of needing to be uncooperative with [the plaintiff] in order to preserve their asserted rights." *Id.*

Finally, as set forth above, even if the Court denies Defendants' motion to compel arbitration, Defendants will have a right to immediate appeal of the Court's decision, and during the pendency of the appeal, all proceedings in this Court will be stayed. *See Blinco*, 366 F.3d at 1252-53.

In sum, it is imperative that the Court enter a temporary stay to protect both the parties and the Court from the burdens and costs attendant to discovery that may never become necessary due to the meritorious challenges to the Complaint in Defendants' forthcoming motion.

## CONCLUSION

For the reasons set forth above, this Court should enter an order staying discovery pending the Court's ruling on Defendants' forthcoming motion to compel arbitration, or in the alternative, to dismiss the Complaint.

---

[12] *See, e.g.*, *id.*; Exhibit 1 at 9; Exhibit 3 at 20.

**LOCAL RULE 7.1(A)(3) CERTIFICATION OF COUNSEL**

Counsel for Defendants have conferred by videoconference in good faith with counsel for Plaintiffs in a good faith effort to resolve the issues raised in this motion and have been unable to do so.

Submitted:  June 6, 2023

/s/ Melanie M. Blunschi
Melanie M. Blunschi (*pro hac vice*)
Email: melanie.blunschi@lw.com
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: 415-391-0600

Abid R. Qureshi (*pro hac vice*)
Email: abid.qureshi@lw.com
Latham & Watkins LLP
555 Eleventh Street NW Suite 1000
Washington, DC 20004
Tel: 202-637-2200

Martin B. Goldberg
Email: mgoldberg@lashgoldberg.com
Ian Michael Campa
Email: icampa@lashgoldberg.com
Lash & Goldberg
100 SE 2nd Street, Suite 1200
Miami, Florida 33131
Tel: 305-347-4040

*Attorneys for Defendant Changpeng Zhao*

/s/ Adam Michael Foslid
Adam Michael Foslid
Email: AFoslid@winston.com
Daniel Tramel Stabile
Email: DStabile@winston.com
Gabriela Ana Plasencia
Email: GPlasencia@winston.com
Winston & Strawn
200 S Biscayne Blvd, Suite 2400
Miami, FL 33131

/s/ Aaron S. Weiss
Michael Celio (*pro hac vice*)
Email:  mcelio@gibsondunn.com
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304
Tel:  650-849-5300

Mary Beth Maloney (*pro hac vice*)
Email:  mmaloney@gibsondunn.com
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Tel:  212-351-4000

Aaron S. Weiss (FBN 48813)
Email:  aweiss@carltonfields.com
Carlton Fields, P.A.
700 NW 1st Avenue, Suite 1200
Miami, FL 33136
Tel:  305-530-0050

Benjamin M. Stoll
Email:  bstoll@carltonfields.com
Carlton Fields, P.A.
1025 Thomas Jefferson St., NW, Ste. 400 W.
Washington, DC 20007
Tel:  202-965-8160

*Attorneys for Defendant Binance Holdings Limited, Binance Holdings (IE) Limited, Binance (Services) Holdings Limited*

Tel: 305-910-0646

*Attorneys for Defendant BAM Trading Services Inc.*

/s/ Courtney Rockett
Courtney R. Rockett (*pro hac vice*)
Email: crockett@mintz.com
Douglas P. Baumstein
Email: dbaumstein@mintz.com
Mintz Levin Cohn Ferris Glovsky & Popeo PC
919 Third Avenue
New York, NY 10022
Tel: 212-692-6714

David Alan Rothstein
Email: drothstein@dkrpa.com
Alexander Manuel Peraza
Email: aperaza@dkrpa.com
Eshaba Jahir-Sharuz
Email: eshaba@dkrpa.com
Dimond Kaplan & Rothstein
2665 South Bayshore Dr., PH-2B
Coconut Grove, FL 33133
Tel: 305-374-1920

Michelle Renee Suskauer
Email: Michelle@dkrpa.com
Dimond Kaplan & Rothstein, P.A.
515 N. Flagler Drive, Suite P-300
West Palm Beach, FL 33401
Tel: 561-671-1920

*Attorneys for Defendant Jimmy Butler*

/s/ Kimberly Stein
Josef M. Mysorewala
Email: josefm@lawjmm.com
Law Office of Josef M. Mysorewala, PLLC
770 S Dixie Hwy, Ste. 113
Coral Gables, Florida 33146
Tel: 305-356-1031

Kimberly P. Stein (*pro hac vice*)
Email: kps@fdlawlv.com
Flangas Law Group, Inc.
3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146
Tel: 702-307-9500

*Attorneys for Defendant Graham Stephan*

/s/ Darren Adam Heitner
Darren Adam Heitner
Email: Darren@HeitnerLegal.com
Heitner Legal, P.L.L.C.
215 Hendricks Isle
Fort Lauderdale, Florida 33301
Tel: 954-558-6999

*Attorneys for Defendant Ben Armstrong*