**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:23-cv-21261-ALTMAN/Reid**

MICHAEL SIZEMORE, *et al.*,

                 *Plaintiffs*,

        v.

CHANGPENG ZHAO, *et al.*,

                 *Defendants*.

**MOVANTS' MOTION TO COMPEL ARBITRATION**
**OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   BACKGROUND .......................................................................................................... 3

  A.  The Binance Platforms ........................................................................................... 3

  B.  The Binance.US Terms of Use Include a Binding Arbitration Clause ................... 4

  C.  Plaintiffs Agreed to the Binance.US Terms ........................................................... 6

  D.  Notwithstanding the Arbitration Agreement, Plaintiffs Sued Defendants in Court ........... 7

III.  ARGUMENT ............................................................................................................... 9

  A.  Plaintiffs' Claims Are Subject to Binding Arbitration ........................................... 9

    1.  The FAA Requires Enforcement of Plaintiffs' Arbitration Agreement ........................... 9

    2.  Plaintiffs Must Arbitrate Their Claims Against All Movants ........................................ 14

    3.  The FAA Requires a Stay of This Action Pending Arbitration ..................................... 16

  B.  Plaintiffs Lack Article III Standing ...................................................................... 16

  C.  Plaintiffs Have Not Established Personal Jurisdiction Over the Foreign Defendants ....... 18

    1.  The Foreign Defendants Are Not Subject to General Jurisdiction................................. 18

    2.  The Foreign Defendants Are Not Subject to Specific Jurisdiction ............................... 19

  D.  Plaintiffs Fail to State any Viable Claims ............................................................ 23

    1.  Plaintiffs' Shotgun Pleading and Conclusory Allegations Fall Short of Basic Pleading Requirements.................................................................................... 23

    2.  The Unregistered Securities Sales Claims Fail ........................................................... 24

    3.  The Securities Fraud Claims Are Inadequately Pled .................................................. 25

    4.  Plaintiffs Do Not Plead an Unregistered Broker-Dealer Claim ................................... 26

    5.  Plaintiffs Fail to State a UCL Claim ......................................................................... 26

    6.  FDUTPA and CCPA Claims Based on Transactions in Alleged Securities Are Impermissible........................................................................................ 27

    7.  The Conversion and Aiding and Abetting Conversion Claims Fail............................... 27

    8.  Plaintiffs' Civil Conspiracy Claim Fails ................................................................... 29

## TABLE OF CONTENTS

IV.    CONCLUSION ................................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Lab'ys v. Finkel*,
   2017 WL 5517399 (D. Colo. Nov. 17, 2017) ..........................................................28

*Aetna Cas. & Sur. Co. v. Jelac Corp.*,
   505 So.2d 37 (Fla. 4th DCA 1987) ..........................................................................4

*Alderman v. GC Servs. Ltd. P'ship*,
   2017 WL 6371325 (S.D. Fla. Dec. 13, 2017) ..........................................................9

*Alhassid v. Bank of Am., N.A.*,
   60 F. Supp. 3d 1302 (S.D. Fla. 2014) ......................................................................30

*Aliani v. Yum Berry*,
   LLC, 2019 WL 13262724 (S.D. Fla. Dec. 19, 2019) ...............................14, 15, 16

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995) ..................................................................................................10

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
   28 Cal. App. 5th 923, 239 Cal. Rptr. 3d 577 (2018) ..............................................29

*Argos Global Partner Services, LLC v. Ciuchini*,
   446 F. Supp. 3d 1073 (S.D. Fla. 2020) ....................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................24

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ..................................................................................................10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) .............................................................................................10, 11

*Attix v. Carrington Mortg. Servs., LLC*,
   35 F.4th 1284 (11th Cir. 2022) .............................................................................10, 12

*Bank of New York v. Fremont Gen. Corp.*,
   523 F.3d 902 (9th Cir. 2008) ....................................................................................28

*Barmapov v. Amuial*,
   986 F.3d 1321 (11th Cir. 2021) ...........................................................................2, 3, 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

*Biondi v. Branch Banking & Tr. Co.*,
  2018 WL 6566027 (S.D. Fla. Aug. 28, 2018).........................................................................28

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ...........................................................................................12

*Burbidge Mitchell & Gross v. Peters*,
  622 F. App'x 749 (10th Cir. 2015) .....................................................................................29

*Calabro v. Pares*,
  2020 WL 7481301 (S.D. Fla. May 27, 2020), *report and recommendation adopted*,
  2020 WL 7481304 (S.D. Fla. June 12, 2020) ....................................................................25

*Cape Flattery Ltd. v. Titan Mar., LLC*,
  647 F.3d 914 (9th Cir. 2011) .............................................................................................13

*Carmouche v. Tamborlee Mgmt., Inc.*,
  789 F.3d 1201 (11th Cir. 2015) .........................................................................................19

*Carney v. Bank of Am. Corp.*,
  2011 WL 13130901 (C.D. Cal. Oct. 20, 2011)...................................................................30

*Carter v. Ford Motor Co.*,
  2021 WL 1165248 (S.D. Fla. Mar. 26, 2021) .....................................................................18

*Carter v. Spiegel*,
  2022 WL 126303 (N.D. Cal. Jan. 13, 2022) .......................................................................13

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*,
  816 F.3d 1208 (9th Cir. 2016) ...........................................................................................11

*Catalyst Pharmaceuticals, Inc. v. Fullerton*,
  748 F. App'x. 944 (11th Cir. 2018) ....................................................................................22

*Chan v. HEI Resources, Inc.*,
  512 P.3d 120 (Colo. 2022)..................................................................................................25

*Citi Cars, Inc. v. Cox Enterprises*,
  Inc., 2018 WL 1521770 (S.D. Fla. Jan. 22, 2018) ..............................................................16

*Citizens Bank v. Alafabco, Inc.*,
  539 U.S. 52 (2003)..............................................................................................................10

*City of Miami v. JPMorgan Chase & Co.*,
  171 F. Supp. 3d 1309 (S.D. Fla. 2016) ...............................................................................25

*Cohen v. CBR Sys., Inc.*,
  625 F. Supp. 3d 997 (N.D. Cal. Sept. 6, 2022) ..................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

*Coinbase, Inc. v. Bielski*,
599 U.S. ----, 2023 WL 4138983 (2023) .................................................................................9

*Cox v. CoinMarketCap OpCo LLC*,
2023 WL 1929551 (D. Ariz. Feb. 10, 2023).........................................................................19

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).............................................................................................................19

*De Ford v. Koutoulas*,
2023 WL 2709816 (M.D. Fla. Mar. 30, 2023) .....................................................................28

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985).......................................................................................................10, 13

*Dhaliwal v. Singh*,
2013 WL 2664336 (E.D. Cal. June 12, 2013) ......................................................................25

*Dillon v. Axxsys Int'l, Inc.*,
185 F. App'x 823 (11th Cir. 2006) .......................................................................................25

*Donovan v. RRL Corp.*,
27 P.3d 702 (2001)...............................................................................................................11

*Doss v. Gen. Mills, Inc.*,
816 F. App'x 312 (11th Cir. 2020) .......................................................................................17

*Estate of Bogue v. Adams*,
405 F. Supp. 3d 929 (D. Colo. 2019)...................................................................................26

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...............................................................................13

*Feng v. Walsh*,
2021 WL 8055449 (S.D. Fla. Dec. 21, 2021), *report and recommendation adopted*,
2022 WL 669198 (S.D. Fla. Mar. 7, 2022)...........................................................................27

*Fish v. Tesla, Inc.*,
2022 WL 1552137 (C.D. Cal. May 12, 2022) ......................................................................11

*Frida Kahlo Corp. v. Pinedo*,
2021 WL 4147876 (S.D. Fla. Sept. 13, 2021) ......................................................................22

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*,
218 F.3d 1247 (11th Cir. 2000) ...........................................................................................18

*Gibson v. Courtois*,
539 So.2d 459 (Fla. 1989).....................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ........................................................................................................ 16

*Green Tree Fin. Corp. v. Alabama Randolph*,
  531 U.S. 79 (2000) ........................................................................................................ 10

*Grice v. Uber Techs., Inc.*,
  2020 WL 497487 (C.D. Cal. Jan. 7, 2020) ................................................................. 11

*Guevara v. Republica Del Peru*,
  2008 WL 11333432 (S.D. Fla. Nov. 7, 2008) .............................................................. 29

*Guzman v. Cruise Yacht Op Co. Ltd.*,
  2023 WL 2572220 (S.D. Fla. Mar. 20, 2023) .............................................................. 21

*Guzman v. Polaris Indus. Inc.*,
  49 F.4th 1308 (9th Cir. 2022) ...................................................................................... 27

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ................................................................................................... 12

*Herrera v. West Flagler Assocs., Ltd.*,
  2017 WL 9324515 (S.D. Fla. Apr. 5, 2017) ............................................................... 14

*Hickerson v. Pool Corp.*,
  2020 WL 5016938 (D. Colo. 2020) .............................................................................. 11

*Hinkle v. Cirrus Design Corp.*,
  775 F. App'x 545 (11th Cir. 2019) ............................................................................... 22

*Home Design Servs., Inc. v. David Weekley Home, LLC*,
  2007 WL 1080001 (M.D. Fla. Apr. 9, 2007) ............................................................... 20

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
  48 F.4th 1236 (11th Cir. 2022) ..................................................................................... 17

*iDoc Holdings, Inc. v. Goethals*,
  2021 WL 2895635 (S.D. Fla. July 9, 2021) .................................................................. 9

*It's a 10, Inc. v. Beauty Elite Grp., Inc.*,
  2013 WL 1636366 (S.D. Fla. Apr. 16, 2013) .............................................................. 21

*Janken v. GM Hughes Elecs.*,
  46 Cal. App. 4th 55 (1996) .......................................................................................... 29

*Johnson v. Chase Bankcard Servs., Inc.*,
  582 F. Supp. 3d 1230 (M.D. Fla. 2022) ...................................................................... 28

## TABLE OF AUTHORITIES

Page(s)

*Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co.*,
  641 F. Supp. 2d 1167 (D. Colo. 2009) ......................................................................30

*JPay, Inc. v. Kobel*,
  904 F.3d 923 (11th Cir. 2018) ..................................................................................10

*Knepfle v. J-Tech Corp.*,
  48 F.4th 1282 (11th Cir. 2022) .................................................................................18

*Kolodziej v. Mason*,
  774 F.3d 736 (11th Cir. 2014) ..................................................................................10

*Konopasek v. Ten Assocs., LLC*,
  2018 WL 6177249 (C.D. Cal. Oct. 22, 2018) ...........................................................26

*Krinsk v. SunTrust Banks, Inc.*,
  No. 8:09-CV-909-T-27EAJ, 2010 WL 11475608 (M.D. Fla. Jan. 8, 2010) ...........24

*LBS Petroleum, LLC v. Demir*,
  2015 WL 12469064 (S.D. Fla. Oct. 28, 2015) ..........................................................17

*Les Bijoux Grp., LLC v. Van Cleef & Arpels, Inc.*,
  2020 WL 13388310 (S.D. Fla. Apr. 23, 2020) ............................................................9

*Lubin v. Verint Americas, Inc.*,
  2021 WL 9080004 (S.D. Fla. June 21, 2021) ...........................................................16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................................18

*Mancinelli v. Davis*,
  217 So. 3d 1034 (Fla. 4th DCA 2017) ......................................................................29

*Massage Envy Franchising, LLC v. Doe*,
  339 So. 3d 481, 485 (Fla. 5th DCA 2022) ................................................................11

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
  603 F. Supp. 3d 1183 (S.D. Fla. 2022) .....................................................................27

*Miro v. Doe*,
  2023 WL 2734374 (S.D. Fla. Mar. 31, 2023) ...........................................................19

*Mitsubishi Motors Co. v. Soler Chrysler Plymouth*,
  473 U.S. 614 (1985) ..................................................................................................13

*In re Mortg. Elec. Registration Sys., Inc.*,
  754 F.3d 772 (9th Cir. 2014) ....................................................................................29

TABLE OF AUTHORITIES

**Page(s)**

*Moses H Cone Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ...........................................................................................................10

*Muransky v. Godiva Chocolatier, Inc.*,
    979 F.3d 917 (11th Cir. 2020) ......................................................................................17

*N. Am. Sugar Indus. Inc. v. Xinjiang Goldwind Sci. & Tech. Co., Ltd.*,
    2022 WL 17662904 (S.D. Fla. Dec. 14, 2022) ..............................................................23

*Nance v. Maxwell Fed. Credit Union (MAX)*,
    186 F.3d 1338 (11th Cir. 1999) ...............................................................................29, 30

*New Prime Inc. v. Oliveira*,
    202 L. Ed. 2d 536 (2019) ...............................................................................................11

*Oueiss v. Saud*,
    2022 WL 1311114 (S.D. Fla. Mar. 29, 2022) ...............................................................23

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
    297 F.3d 1182 (11th Cir. 2002) ..................................................................................1, 24

*Pendergast v. Sprint Nextel Corp.*,
    691 F.3d 1224 (11th Cir. 2012) ......................................................................................10

*People v. Black*,
    8 Cal. App. 5th 889 (Cal. Ct. App. 2017) ......................................................................25

*Perry v. Ryan*,
    2023 WL 2403889 (M.D. Fla. Mar. 8, 2023) ...........................................................19, 22

*Petrie v. GoSmith, Inc.*,
    360 F. Supp. 3d 1159 (D. Colo. 2019) ...........................................................................11

*Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*,
    414 F. App'x 240 (11th Cir. 2011) ...........................................................................14, 15

*Pirgmann v. Wood*,
    2014 WL 12860828 (S.D. Fla. Apr. 8, 2014) .................................................................18

*Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*,
    218 F.3d 1085 (9th Cir. 2000) ........................................................................................10

*PowerTec Solutions, Int'l, LLC v. Hardin*,
    2019 WL 6170040 (S.D. Fla. Nov. 20, 2019) ................................................................23

*Pulte Home Corp. v. Bay At Crypress Creek Homeowners' Ass'n, Inc.*,
    118 So. 3d 957 (Fla. 2d DCA 2013) .................................................................................4

ix

## TABLE OF AUTHORITIES

**Page(s)**

*Rafferty v. Retrieval-Masters Creditors Bureau, Inc.*,
  2018 WL 4381196 (M.D. Fla. July 31, 2018), *report and recommendation adopted*, 2018
  WL 4381167 (M.D. Fla. Aug. 15, 2018) ................................................................................21

*Regions Bank v. Kaplan*,
  2021 WL 4852268 (11th Cir. Oct. 19, 2021).........................................................................28

*Rensel v. Centra Tech, Inc.*,
  2019 WL 2085839 (S.D. Fla. May 13, 2019) .........................................................................25

*Rent–A–Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010)..................................................................................................................11

*Robertson's Ready Mix, Ltd. v. Edwards*,
  2023 U.S. Dist. LEXIS 36018 (C.D. Cal. Mar. 2, 2023) ........................................................14

*Robinson v. OppenheimerFunds, Inc.*,
  2013 WL 754417 (D. Colo. Feb. 27, 2013) ...........................................................................27

*Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*,
  428 P.3d 567 (Colo Ct. App. 2016) .......................................................................................29

*Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*,
  207 F.3d 1351 (11th Cir. 2000) .............................................................................................20

*Sanho Corp. v. KaiJet Tech. Int'l Ltd.*,
  2021 WL 2355096 (N.D. Ga. June 9, 2021) ..........................................................................20

*Scheck Invs., L.P. v. Kensington Mgmt., Inc.*,
  2009 WL 10668565 (S.D. Fla. June 17, 2009) ......................................................................25

*Schrier v. Qatar Islamic Bank*,
  2022 WL 4598630 (S.D. Fla. Sept. 30, 2022) ..................................................................22, 23

*Schwarz v. Bd. of Sup'rs*,
  2012 WL 7681416 (M.D. Fla. Nov. 21, 2012*), report and recommendation adopted sub
  nom.*, 2013 WL 945402 (M.D. Fla. Mar. 12, 2013)...............................................................30

*Simula, Inc. v. Autoliv, Inc.*
  175 F.3d 716 (9th Cir. 1999) .................................................................................................13

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007)..................................................................................................................9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

*Stat-Tech Liquidating Tr. v. Fenster,*
    981 F. Supp. 1325 (D. Colo. 1997)................................................................26

*Swann v. Sec'y, Georgia,*
    668 F.3d 1285 (11th Cir. 2012) ....................................................................18

*In re Takata Airbag Prod. Liab. Litig.,*
    396 F. Supp. 3d 1101 (S.D. Fla. 2019) ........................................................17

*Taubenfeld v. Lasko,*
    324 So. 3d 529 (Fla. 4th DCA 2021) ............................................................29

*Thomas v. Thomas,*
    2015 WL 12684449 (C.D. Cal. Apr. 9, 2015) ..............................................14

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ..................................................................................26

*Toll v. North,*
    2022 WL 17412937 (S.D. Fla. Dec. 5, 2022) ..............................................20

*TracFone Wireless, Inc. v. Clear Choice Connections, Inc.,*
    2014 WL 11899285 (S.D. Fla. July 15, 2014)..............................................20

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021)..............................................................................2, 16

*Trilogy Props. LLC v. SB Hotel Assocs. LLC,*
    2010 WL 7411912 (S.D. Fla. Dec. 23, 2010) ..............................................25

*Trump v. Clinton,*
    626 F. Supp. 3d 1264 (S.D. Fla. 2022) ..........................................................3

*Tsao v. Captiva MVP Rest. Partners, LLC,*
    986 F.3d 1332 (11th Cir. 2021) ....................................................................17

*U.S. Nutraceuticals, LLC v. Cyanotech Corp.,*
    769 F.3d 1308 (11th Cir. 2014) ....................................................................12

*United Techs. Corp. v. Mazer,*
    556 F.3d 1260 (11th Cir. 2009) ....................................................................28

*Valiente v. StockX, Inc.,*
    No. 22-CV-22432, 2022 WL 17551090 (S.D. Fla. Dec. 9, 2022).................11

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ......................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

*Waite v. All Acquisition Corp.*,
   901 F.3d 1307 (11th Cir. 2018) ...............................................................18, 19, 21, 22

*Walden v. Fiore*,
   571 U.S. 277 (2014)...............................................................................................19, 21

*Webber v. Uber Techs., Inc.*,
   2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) ..........................................................12

*Wood v. Raffensperger*,
   2021 WL 3440690 (11th Cir. Aug. 6, 2021)..............................................................18

*Wubben v. Kirkland*,
   2008 WL 11334983 (M.D. Fla. Dec. 22, 2008), *report and recommendation adopted*,
   2009 WL 10670013 (M.D. Fla. Mar. 25, 2009) .......................................................16

*Wyndham Vacation Ownership, Inc. v. CLS, Inc.*,
   2018 WL 9869799 (S.D. Fla. Nov. 5, 2018)..............................................................25

*Ziemba v. Cascade Int'l, Inc.*,
   256 F.3d 1194 (11th Cir. 2001) .................................................................................24

STATUTES

9 U.S.C. § 2 ............................................................................................................................10

9 U.S.C. § 3 ............................................................................................................................16

California Unfair Competition Law ..........................................................................14, 26, 27

Cal. Civ. Code § 1550 ............................................................................................................11

Cal. Civ. Code § 1565 ............................................................................................................11

Cal. Corp. Code § 25110 ........................................................................................................25

Colo. Rev. Stat. § 11-51-301 .................................................................................................25

Fla. Stat. § 48.193 ............................................................................................................18, 22

Fla. Stat. § 517.07 ..................................................................................................................25

Florida Deceptive and Unfair Trade Practices Act ...............................................................27

OTHER SOURCES

*Book Hotels with Binance Coin (BNB)*, , TRAVALA.COM, available at: bit.ly/3EE6lLy; CANYA,
   bit.ly/3ZbFAGU .........................................................................................................3

## TABLE OF AUTHORITIES

Page(s)

CANYA, available at: bit.ly/3ZbFAGU ................................................................................3

Changpeng Zhao – Success Story of the Binance Founder, STARTUP TALKY (January 11, 2022),
available at: https://startuptalky.com/changpeng-zhao-binance-founder/. ............................3

*How can third-world countries counter inflation using Bitcoin*?, COINTELEGRAPH, available at:
https://cointelegraph.com/learn/how can third world countries counter inflation using-
bitcoin/amp ...............................................................................................................................3

MACHI X, available at: bit.ly/3m7KAxp ............................................................................3

*Pilot Shop*, AEROTRIPS, bit.ly/3kz8qlq; MACHI X, bit.ly/3m7KAxp ...........................................3

## RULES

Fed. R. Civ. P. 8 ........................................................................................................................1, 23

Fed. R. Civ. P. 9 ..........................................................................................................1, 23, 24, 26, 27

Fed. R. Civ. P. 12 .............................................................................................................................23

The undersigned Movants[1] respectfully move the Court to enter an order compelling arbitration, or, in the alternative, dismissing Plaintiffs'[2] First Amended Complaint (the "Amended Complaint" or "AC") (ECF No. 100).  In support of this motion, Movants state as follows:

## I.   INTRODUCTION

Plaintiffs' Amended Complaint is a shotgun pleading which suffers from a number of fatal flaws. These include Plaintiffs' failure to adequately plead standing and personal jurisdiction; failure to state a claim as to Plaintiffs' various causes of action; and an endemic reliance on impermissible group pleading and irrelevant allegations.  Chief amongst its defects, however, is that each of the four named Plaintiffs explicitly agreed that any "disputes" would be resolved by binding arbitration, meaning their claims belong before an arbitrator and not before this Court.

Plaintiffs assert a laundry list of nearly a dozen causes of action under the laws of three different states—Florida, California and Colorado—but not one of them states a claim for relief. The simple truth is that, despite weighing in at over 115 pages and 430 paragraphs, the Amended Complaint is devoid of factual allegations about the alleged transactions supposedly underlying Plaintiffs' claims.  To the contrary, Plaintiffs provide nothing more than "conclusory allegations, unwarranted deductions of facts [and] legal conclusions masquerading as facts."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citation omitted).  In some cases, they fail even to mention (let alone adequately allege) the basic statutory requirements underlying their claims.  Plaintiffs' allegations do not come close to meeting the basic requirements of Rule 8 of the Federal Rules of Civil Procedure, much less the heightened requirements of Rule 9(b).

But the Court need not address Plaintiffs' wholesale lack of factual support for (let alone the substance of) their claims, because they should never have been filed here in the first place. All of the Plaintiffs created accounts on the Binance.US platform and in doing so, agreed affirmatively to the Binance.US Terms of Use (the "Terms").  Those Terms contain an arbitration provision requiring resolution of "any dispute or controversy arising out of or relating to these

---

[1]  The undersigned Defendants are Binance Holdings Ltd., Binance Holdings (IE) Ltd., Binance (Services) Holdings Ltd., (together, the "Foreign Binance Entities"), BAM Trading Services Inc. ("BAM Trading") and BAM Management US Holdings Inc. ("BAM Management," and together with BAM Trading, "BAM"), Changpeng Zhao, and Ben Armstrong (collectively "Movants"). Pursuant to the Court's Order in Cases with Multiple Defendants, (ECF No. 8), Defendants Jimmy Butler and Paxos Trust Company, LLC obtained leave to file separate motions to dismiss.  (ECF Nos. 110, 131.)

[2]  Plaintiffs are Michael Sizemore, Rudy Vazquez, Mikey Vongdara, and Gordon Lewis.

Terms or the Services" through arbitration.   Given the nature of Plaintiffs' allegations, this language alone compels arbitration as to their claims against BAM, and it is well established under Florida law that principles of equitable estoppel require Plaintiffs to arbitrate their claims against the Foreign Binance Entities, Zhao, and Armstrong, as well.   The Court should compel Plaintiffs to abide by their contractual agreement.

Of course, even if there were no arbitration agreement at all, Plaintiffs' claims would not belong in this Court because they suffer from multiple fatal pleading deficiencies.

*First*, Plaintiffs lack standing.  Plaintiffs are required to plausibly allege that they "suffered an injury in fact that is concrete, particularized, and actual or imminent" and was "caused by the defendant[s]."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  But the Amended Complaint lacks allegations that Plaintiffs were harmed *at all*, much less concretely or by Movants.

*Second*, Plaintiffs have failed to allege any facts whatsoever that could lead the Court to conclude it has personal jurisdiction over the Foreign Binance Entities, Zhao or Armstrong (the "Foreign Defendants").  The Amended Complaint lacks any plausible allegations that these Defendants "targeted" Florida or that Plaintiffs' claims "arise from or relate to" any alleged contacts the Foreign Defendants have with Florida.  *See PeopleShare, LLC v. Vogler*, 601 F. Supp. 3d 1276, 1283 (S.D. Fla. 2022).

*Third*, each of Plaintiffs' claims is inadequately pled.  Plaintiffs fail to identify the specific transactions in which they participated or the specific statements which they allege induced them to participate in those transactions.   Instead, the long-winded Amended Complaint is a quintessential "shotgun pleading[,] . . . replete with conclusory, vague, and immaterial" allegations.  *Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021) (citations omitted). Rather than differentiate between the actions of the independent corporate entities named as Defendants, as they are required to do, Plaintiffs simply refer to all of them collectively as "Binance," making no effort to explain which entity is responsible for which alleged conduct.  The Federal Rules' pleading requirements demand more.

Put simply, there is no basis for the Amended Complaint to proceed in this Court.  Movants respectfully request that the Court enter an order compelling arbitration of Plaintiffs' claims or, alternatively, dismissing the Amended Complaint.

## II.  BACKGROUND

### A.     The Binance Platforms

Defendant Changpeng Zhao was born in China, raised in Canada, and resides in the UAE. (AC ¶ 25.)  He emigrated from China to Canada at the age of 12 with his parents, who were teachers, shortly after the 1989 Tiananmen Square protests, and studied computer science at McGill University in Montreal.[3]  After spending approximately a decade working for established businesses, Zhao was struck by cryptocurrency's potential as a transformational technology and began pursuing opportunities in the cryptocurrency industry in Asia.[4]  In 2017, Zhao founded Binance.com in Asia with colleagues in order to provide infrastructure for global digital asset markets.  (AC ¶¶ 25-26, 42-44.)  Shortly after Binance.com launched, it offered the BNB digital asset token for purchase.  (*Id.* ¶ 101.)  Merchants around the world now accept BNB for everything from airfare and hotels, to hiring contractors, to flight lessons and digital art.[5]  In 2019, Zhao and the Foreign Binance Entities set up new Delaware corporations, including Defendant BAM, which would operate and oversee the new Binance.US platform.  (*Id.* ¶¶ 29-30.)  The Binance.US platform launched in 2019.  (*Id.*)

Today, Binance.com has millions of registered users around the world and lists more than 350 different cryptocurrencies.  (*Id.* ¶ 43.)  Binance.US offers its services to U.S. residents in 46 states and 8 U.S. territories (*id.* ¶ 30), and supports over 150 digital assets.  Among other services, the Binance.com and Binance.US platforms provide much-needed banking alternatives to the unbanked, the underbanked, and individuals in countries with relatively unstable currencies and underdeveloped banking infrastructures.[6]

---

[3]  *See* Changpeng Zhao – Success Story of the Binance Founder, STARTUP TALKY (January 11, 2022), available at: https://startuptalky.com/changpeng-zhao-binance-founder/.   The online sources cited in this section are referenced for background.  The Court may take judicial notice of these sources.  *See Trump v. Clinton*, 626 F. Supp. 3d 1264, 1296–97 (S.D. Fla. 2022).

[4]  *Id.*

[5]  *Book Hotels with Binance Coin (BNB)*, TRAVALA.COM, available at: bit.ly/3EE6lLy; *See also* CANYA, available at: bit.ly/3ZbFAGU; *Pilot Shop*, AEROTRIPS, available at: bit.ly/3kz8qlq; MACHI X, available at: bit.ly/3m7KAxp.

[6]  *How can third-world countries counter inflation using Bitcoin?*, COINTELEGRAPH, available at: https://cointelegraph.com/learn/how-can-third-world-countries-counter-inflation-using-bitcoin#:~:text=Individuals%20in%20developing%20countries%20can,bureaucracies%20associated%20with%20traditional%20finance.

## B.    The Binance.US Terms of Use Include a Binding Arbitration Clause

The Terms require prospective users to arbitrate any disputes related to BAM's "Services." (Blodgett Decl. ¶ 8.[7])  The "Services" subject to this requirement include "the Platform . . . which provides Digital Asset . . . trading services" (*i.e.*, Binance.US), the content located on Binance.US or otherwise published by BAM, and various services provided by BAM and its affiliates, including "staking, through third parties or otherwise, of Digital Assets" and "any other services that BAM may make available, directly or indirectly, from time-to-time." (*Id.* ¶ 9.)

The Terms contain an arbitration provision (which is prominently hyperlinked), providing:

> BAM and You [the prospective user] agree that any dispute or controversy arising out of or relating to these Terms or the Services, including, but not limited to, legal and equitable claims, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved through binding arbitration on an individual basis (except as specifically noted …).  Arbitration shall be conducted in accordance with the rules of the American Arbitration Association ("AAA").

(Ex. 1 at 36 (the "Arbitration Provision").)[8]  Every version of the Terms applicable since Plaintiffs registered as BAM users includes a binding arbitration clause with similar language.  (Blodgett Decl. ¶¶ 35, 37, 39, 41, 44.)[9]

---

[7]  Citations to "Blodgett Decl." are to the *Declaration of Christopher Blodgett In Support Of Movants' Motion To Compel Arbitration Or, In The Alternative, To Dismiss Plaintiffs' Amended Complaint*.  Citations to "Ex.__" are to the exhibits attached to the Blodgett Declaration.

[8]  BAM Management may independently compel arbitration based on the express language of the Terms (which cover BAM's "related companies and affiliates") *or* as an intended beneficiary of the Terms. *See* Ex. 3 at 1 (providing that the Terms govern use of services provided by BAM "and its related companies and affiliates"); Ex. 4 at 1 (same); Ex. 6 at 1 (providing that Terms explain the rights the user gives to BAM, its "parents, subsidiaries, affiliates, entities under common ownership, or otherwise related parties"); Ex. 7 at 1 (same); *see Pulte Home Corp. v. Bay At Crypress Creek Homeowners' Ass'n, Inc.*, 118 So. 3d 957, 958 (Fla. 2d DCA 2013) (non-signatories to an arbitration agreement are covered by the arbitration provision if they are a third-party beneficiary to the agreement); *Aetna Cas. & Sur. Co. v. Jelac Corp.*, 505 So.2d 37, 38 (Fla. 4th DCA 1987) ("A third party is an intended beneficiary, and thus able to sue on a contract, only if the parties to the contract intended to primarily and directly benefit the third party.").  As explained in Section III.A.2, *infra*, however, even if that were not the case, the inherent inseparability and interdependency of plaintiffs' claims against BAM and BAM Management would also entitle BAM Management to invoke arbitration as a matter of equitable estoppel.

[9]  Prior to September 7, 2022, the clause read, in relevant part: "If we cannot resolve your dispute through the complaint process . . . , you agree that any dispute or controversy arising out of or

4

Consistent with the AAA rules, the Arbitration Provision contains a delegation clause that provides: "Any dispute between BAM and You regarding the construction, interpretation, or application of this arbitration provision, including the enforceability, severability, revocability, scope, or validity of this arbitration provision, shall be decided by an arbitrator and not by a court or judge." (*Id*. ¶15.)[10] All versions of the Terms in effect since September 7, 2022, have included identical language, and earlier versions explicitly referenced the AAA rules, which (as described below, *see infra* Section III.A) makes clear that questions of arbitrability are to be decided by the arbitrator. (Blodgett Decl. ¶¶ 35, 37, 39, 41, 43-45.)

The Arbitration Provision is flagged at the outset and highlighted throughout the Terms. Prospective users are instructed to "read these Terms," which it makes clear "are important" because they," among other things, "[c]ontain a class action waiver and an agreement to resolve any disputes that may arise by arbitration." (*Id*. ¶ 10.) Every version of the Terms applicable since Plaintiffs registered with BAM has included a similar statement in bullet form at the very beginning of the Terms. (Ex. 1 at 1; Ex. 3 at 1; Ex. 4 at 1; Ex. 5 at 1; Ex. 6 at 1; Ex. 7 at 1.)[11] In addition, since May 2022, the Terms' preamble has also emphasized—in bold and all caps—that the Terms contain an Arbitration Provision:

> PLEASE BE AWARE THAT THESE TERMS CONTAIN PROVISIONS REGARDING THE RESOLUTION OF DISPUTES BETWEEN YOU AND BAM, INCLUDING AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND BAM SHALL BE RESOLVED BY BINDING ARBITRATION. THESE TERMS ALSO CONTAIN A WAIVER OF YOUR RIGHT TO A JURY TRIAL AND A WAIVER OF YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION. PLEASE READ THESE SECTIONS OF THE TERMS CAREFULLY.

(Blodgett Decl. ¶ 11.)

Additionally, the full Arbitration Provision is conspicuously located in a section of the Terms titled "Arbitration." And that section is specifically identified in the user-friendly "Table

---

relating to these Terms or the BAM Services, . . . shall be resolved through binding arbitration on an individual basis . . . . in accordance with the rules of the [AAA]." (Blodgett Decl. ¶ 39.)

[10] This is the second time in the Terms that the user is advised of the delegation clause, which is also highlighted in the preamble at the outset of the Terms.

[11] Since the September 7, 2022 Terms update, the first page also includes a bullet highlighting that the Terms are important because they "contain a clause that delegates decisions regarding the interpretation and application of the arbitration clause to an arbitrator and not to a court or judge." (Ex. 6 at 1; Ex. 7 at 1.)

of Contents" set forth at the outset of the Terms, which contains a hyperlink titled "**Arbitration**" in an orange or blue typeface. (*Id.* ¶12.)  Every version of the Terms applicable since Plaintiffs registered as BAM users has been set up in a substantially similar way.  (Ex. 3 at 1-2; Ex. 4 at 1; Ex. 5 at 2; Ex. 6 at 2; Ex. 7 at 1.)  In addition to requiring that users arbitrate disputes regarding Binance.US Services, the Terms make clear that users and BAM are waiving their rights to a jury trial and to participate in a class action.  (Blodgett Decl. ¶ 16.)  Again, near-identical language appears in every version of the Terms applicable since Plaintiffs signed up with BAM.  (Ex. 3 at 18-19; Ex. 4 at 9; Ex. 5 at 30-31; Ex. 6 at 32; Ex. 7 at 50-51.)

C.     **Plaintiffs Agreed to the Binance.US Terms**

To purchase or trade digital assets on Binance.US, an individual or institution must first register and create an account with Binance.US.  To do so, a user must affirmatively check a box stating, in pertinent part, "I have read, understand, and agree to the **Binance.US Terms of Use**," which hyperlinks (in orange or blue typeface) to the Terms.  (Blodgett Decl. ¶ 19.)  In addition, the Terms also specifically provide:

> You agree that you have read, understand, and accept these Terms by signing up for an Account(s) with BAM, accessing our Website, or BAM APIs.

(*Id.* ¶ 20.)  Every version of the Terms applicable since Plaintiffs registered with BAM includes substantially similar language.  (Ex. 3 at 1; Ex. 4 at 1; Ex. 5 at 1; Ex. 6 at 1; Ex. 7 at 1.)

Immediately following the "Table of Contents," a term titled "Binding Contract" explains to prospective users that the "Terms form a binding contract between you and BAM," and again exhorts them to "read these Terms carefully."  (Blodgett Decl. ¶ 21.)  It also tells the prospective user (for a second time) that if "[they] do not agree with these Terms, do not use" BAM's services. (*Id.* ¶ 22.)  Every version of the Terms applicable since Plaintiffs registered as BAM users includes identical language.  (Ex. 3 at 2; Ex. 4 at 1; Ex. 5 at 3; Ex. 6 at 3; Ex. 7 at 2-3.)  BAM's records reflect that each Plaintiff created accounts on the Binance.US platform and accepted the Terms. Vongdara created his Binance.US account on January 7, 2021; Sizemore created his Binance.US account on August 21, 2021; Vazquez created his Binance.US account on October 28, 2022; and Lewis created his account on April 26, 2023.  (Blodgett Decl. ¶ 25.)  Each Plaintiff had to go through each of the steps outlined above, submit their email addresses, and explicitly assent to the hyperlinked Terms by checking the requisite box.  (*Id.* ¶ 24.)  In addition, users also agree to be bound by periodic updates to the Terms.  Every version in effect since Plaintiffs created their accounts has stated that the Terms may be amended and supplemented, and that users who continue

to use Binance.US after any such changes are affirming their assent to those changes.  This is prominently stated at the beginning of the Terms:

> We may amend, supplement, and/or replace these Terms and any terms and conditions incorporated by reference, now or in the future, by posting on the Website or emailing to you the revised terms and conditions, and the revised terms and conditions shall be effective at such time.

(Blodgett Decl. ¶ 22; Ex. 1 at 1, 33.)  Again, every version of the Terms applicable since Plaintiffs registered with BAM includes substantially similar language.  (Ex. 3 at 16; Ex. 4 at 8; Ex. 5 at 1, 27; Ex. 6 at 1, 28; Ex. 7 at 2, 46.)

As the Terms expressly contemplate, Binance.US has updated the Terms from time to time since 2021.  While these updates have occasionally included modifications to the precise wording of the Arbitration Provision, every version of the Terms in place since Plaintiffs created Binance.US accounts has contained an Arbitration Provision requiring that all disputes like this one must be resolved through arbitration, and that "[a]rbitration shall be conducted in accordance with the rules of the [AAA]."  (Blodgett Decl. ¶¶ 35, 37, 39, 41, 44.)  Moreover, every time there was any update to the Terms, Plaintiffs were sent email notifications by BAM explicitly informing them of the update.  (*Id.* ¶ 46.)  The email notifications each advised Plaintiffs that BAM had updated the Terms and informed them of the content of each update.  For example, the notification sent in connection with the September 7, 2022 update noted that BAM "[has] made some important updates to [the] **Terms of Use**" and included a hyperlink to the updated Terms.  (*Id*. ¶ 48.)  The email also stated: "We encourage you to read the updated terms carefully," and specifically advised that the changes reflected updated information "about [BAM'S] **Dispute Resolution** and arbitration agreement," with a hyperlink to the updated Arbitration Provision.  (*Id*.)  Finally, it noted that the user's "continued use of Binance.US Services on or after [the date of the update] constitutes [the user's] acceptance of these Terms."  (*Id*.)  BAM records reflect that none of the four Plaintiffs terminated their use of BAM's Services or closed their accounts after BAM sent all users emails alerting them to the updates to the Terms.  (*Id.* ¶ 49.)

## D.    Notwithstanding the Arbitration Agreement, Plaintiffs Sued Defendants in Court

Despite agreeing to arbitrate this dispute, Plaintiffs filed this action on March 31, 2023, and then amended their Complaint on June 27, 2023.  The crux of Plaintiffs' claims is that Defendants allegedly promoted and sold digital assets that Plaintiffs deem "unregistered securities" through a wide-ranging scheme that included various "Binance" entities and

individuals, the "Binance platforms" (including Binance.com and Binance.US), and third-party exchanges that listed certain cryptocurrencies associated with Binance (like BNB and BUSD). Despite spanning 430 paragraphs and 115 pages, the Amended Complaint provides no specifics as to the who, what, when, where and how regarding Plaintiffs' alleged transactions. In fact, outside of the class action allegations and causes of action, there are only eight allegations in the entire Amended Complaint that refer to Plaintiffs' alleged purchases. (*See* AC ¶¶ 1, 20-22, 101, 125, 258.)[12] And even those allegations are completely conclusory, stating merely that Plaintiffs Sizemore, Vazquez, and Vongdara purchased and/or invested in "unregistered securities" "on the Binance platforms," without identifying the digital assets they purchased or providing any information about those transactions. (AC ¶¶ 20-22.) Indeed, they even fail to specify which "Binance platform[]" they used for these alleged transactions, although the concurrently filed Blodgett Declaration confirms that each of them is a user of Binance.US. (Blodgett Decl. ¶¶ 24-25.)

Plaintiff Lewis is also a registered user of Binance.US. (*Id.* ¶ 25.) But the Amended Complaint studiously avoids saying so, and appears purposefully vague as to the platform(s) on which Lewis transacted.[13] Indeed, Lewis alleges only that he purchased BNB on Crypto.com—a trading platform not alleged to be affiliated with any Defendant. (AC ¶¶ 101, 125.) That said, like all of the other Plaintiffs, Lewis contends that information regarding "Binance" and the "Binance platform" led him to transact in BNB, and asserts that Defendants marketed BNB as an investment in "the Binance platforms and the Binance ecosystem." (*Compare* AC ¶¶ 20-22, *with* AC ¶ 23; *see also id.* ¶¶ 86, 100-130.) Moreover, and again like the other Plaintiffs, Lewis fails to provide any information regarding *what* specific "misstatements or omissions" encouraged him to make the alleged purchase of BNB, *when* he purchased it, *how* much of it he purchased, or *how* (if at all) he was injured by its purchase.

---

[12] A table listing those allegations is submitted herewith as **Exhibit 1** ("Mot. Ex. 1").

[13] Plaintiff Lewis alleges that he transacted in "unregistered securities that were offered or sold by Binance, including BNB from the Crypto.com platform." (AC ¶ 25 (emphasis added).) Then, he alleges he "only purchased BNB on Crypto.com." (*Id.* ¶¶ 101, 125.) And yet elsewhere, Lewis is lumped in with Plaintiffs writ large, who repeatedly allege "Binance sold and offered to sell the [14] unregistered securities to Plaintiffs." (*E.g.*, AC ¶¶ 364, 380.) It is therefore unclear whether Lewis is alleging that his purchase of BNB on Crypto.com is his only transaction, whether he also purchased other alleged "unregistered securities" from Crypto.com or other third-party exchanges, or whether he even claims to have purchased anything from any Defendant.

### III.   ARGUMENT

Plaintiffs' Amended Complaint does not belong in this Court for several reasons: (1) the claims are subject to binding arbitration; (2) Plaintiffs lack Article III standing; (3) the Court lacks personal jurisdiction over the Foreign Movants; and (4) Plaintiffs fail to state any viable claim.

Because Plaintiffs agreed to arbitrate this dispute, the most efficient approach to resolving this motion is to compel arbitration, which would obviate the need for the Court to address Movants' other challenges.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp*., 549 U.S. 422, 431-32 (2007) ("A federal court has leeway to choose among threshold grounds for denying audience to a case on the merits," and can "bypass[] questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.") (internal quotation marks omitted).[14]  Courts in this District routinely address requests to compel arbitration first, and only turn to jurisdictional and merits challenges if the case is not referred to arbitration.  *See, e.g., iDoc Holdings, Inc. v. Goethals*, 2021 WL 2895635, at *2-4 & n.2 (S.D. Fla. July 9, 2021); *Les Bijoux Grp., LLC v. Van Cleef & Arpels, Inc*., 2020 WL 13388310, at *1 & n.1 (S.D. Fla. Apr. 23, 2020); *Alderman v. GC Servs. Ltd. P'ship*, 2017 WL 6371325, at *1-2 (S.D. Fla. Dec. 13, 2017).  Movants therefore respectfully request that the Court address the issues raised in this motion in the following order: (1) arbitration, (2) Article III standing, (3) personal jurisdiction, and (4) failure to state a claim.

**A.      Plaintiffs' Claims Are Subject to Binding Arbitration**

Plaintiffs should be compelled to arbitrate their claims in accordance with the Parties' arbitration agreement, and this case should be stayed pending the outcome of arbitration.

**1.      The FAA Requires Enforcement of Plaintiffs' Arbitration Agreement**

The Terms' Arbitration Provision is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C §§ 1-16, which applies to any clause in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract."[15]  *Portland*

---

[14]   The Supreme Court recently reaffirmed the strong judicial preference for deciding threshold questions of arbitrability before discovery is permitted at the district court level.  *See Coinbase, Inc. v. Bielski*, 599 U.S. ----, 2023 WL 4138983, at *4 (2023).

[15]   The term "involving commerce" is the "functional equivalent of the more familiar term 'affecting commerce,'" which represents the "broadest permissible exercise of Congress' Commerce Clause power."  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam) (citation omitted).  Here, the alleged transactions involved interstate commerce where Plaintiffs,

*Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*, 218 F.3d 1085, 1089 (9th Cir. 2000) (quoting 9 U.S.C. § 2); *see also Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1231 (11th Cir. 2012) (same).[16]

The FAA reflects a "liberal federal policy favoring arbitration, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018). Accordingly, "where the contract contains an arbitration clause, there is a presumption of arbitrability" and enforcement of the clause "should not be denied unless . . . [it] is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

On a motion to compel, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Alabama Randolph*, 531 U.S. 79, 81 (2000). "[A]ny doubts" concerning the arbitrability of a dispute "should be resolved in favor of arbitration." *Moses H Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022).

a.   **Plaintiffs Agreed to The Terms and Their Arbitration Provision**

Plaintiffs and BAM entered into a valid arbitration agreement. Whether under the laws of Florida, Colorado, or California, formation of a contract requires a mutual manifestation of assent, which turns on whether the consumer had actual or constructive notice of the terms of the agreement. *See Donovan v. RRL Corp.*, 27 P.3d 702, 709 (2001) (citing Cal. Civ. Code §§ 1550, 1565); *see also Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1212 (9th Cir.

---

who are California, Florida and Colorado residents, contracted to do business with BAM Trading, a Delaware corporation "headquartered" in Florida. (AC ¶¶ 20, 21, 22, 23, 30.) *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-75 (1995) (holding that the FAA governs any agreement to arbitrate if some economic activity of at least one of the parties has a nexus to interstate commerce).

[16] The Terms' choice of law provision states that all Terms "shall be construed in accordance with and governed for all purposes by the laws and public policy of the State of California applicable to contracts executed and to be wholly performed within such state." (Ex. 1 at 35.). Even if Florida law applied to the Arbitration Provision, however, the result would be the same.

2016); *Kolodziej v. Mason*, 774 F.3d 736, 741 (11th Cir. 2014) ("[M]utual assent is a prerequisite for the formation of any contract." (citing *Gibson v. Courtois*, 539 So.2d 459, 460 (Fla. 1989)); *Hickerson v. Pool Corp.*, 2020 WL 5016938, at *5 (D. Colo. 2020) ("Under Colorado law, a valid contract, including an arbitration agreement, requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." (cleaned up)).

That manifestation of assent exists here.  As detailed in the accompanying Blodgett Declaration, BAM's records reflect that each Plaintiff created an account on the Binance.US platform, and in doing so affirmatively checked a box indicating their agreement to BAM's Terms containing the Arbitration Provision.  Courts routinely enforce online "clickwrap" agreements of this nature, particularly where the user is required to take affirmative action to consent.[17]  Because Plaintiffs agreed to the Terms as a matter of law, those Terms must be enforced.

> **b.      The Terms Clearly and Unmistakably Delegate Any Arbitrability Questions to The Arbitrator**

Where, as here, the parties to an arbitration agreement "clearly and unmistakably" agree that an arbitrator will decide gateway issues such as the validity, enforceability or applicability of the arbitration agreement, it is for the arbitrator, and not the court, to decide those issues.  *AT&T Techs.*, 475 U.S. at 649.  The Supreme Court has repeatedly affirmed this principle, holding that courts must enforce the parties' "agreement to arbitrate threshold issues" regarding the arbitrability of their dispute, something they may do either by staying federal litigation under Section 3 of the FAA or compelling arbitration under Section 4.  *See Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010).  This mandate is non-negotiable.  The Supreme Court has emphasized that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue . . . even if the court

---

[17] *See*, *e.g.*, *Fish v. Tesla, Inc.*, 2022 WL 1552137, at *4 (C.D. Cal. May 12, 2022) (plaintiffs assented to arbitration agreement when they clicked a "Place Order" button that contained language that they agree to order terms); *Grice v. Uber Techs., Inc.*, 2020 WL 497487, at *11 (C.D. Cal. Jan. 7, 2020) (similar); *Valiente v. StockX, Inc.*, 2022 WL 17551090, at *4 (S.D. Fla. Dec. 9, 2022) (plaintiff assented to arbitration agreement when he "affirmatively click[ed] a box indicating that he agreed to [d]efendant's Terms" containing the arbitration provision); *Massage Envy Franchising, LLC v. Doe*, 339 So.3d 481, 484-85 (Fla. 5th DCA 2022) (reversing denial of motion to compel arbitration where plaintiff clicked a box stating, "I agree and assent to the Terms of Use Agreement" when she checked in for her appointment); *Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159, 1162 (D. Colo. 2019) (plaintiff assented to arbitration agreement when he registered for an account on defendant's website and affirmatively checked a box stating, "I have read and agree to the terms," which were accessible to plaintiff via hyperlink).

thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Plaintiffs and BAM "clearly and unmistakably" agreed to delegate issues of arbitrability to the arbitrator. (*See supra* Section II.C.) The Arbitration Provision in BAM's Terms—and every version of the Terms since Plaintiffs registered their accounts—explicitly incorporates "the rules of the [AAA]." (*See supra* Section II.B; *see also* Blodgett Decl. ¶ 14.) This alone is dispositive. Both the Ninth and Eleventh Circuits have made clear that parties' incorporation of arbitration rules into an agreement suffices to show that the parties "clear[ly] and unmistakabl[y]" agreed to delegate arbitrability questions to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Attix*, 35 F.4th at 1298 ("[I]ncorporation of AAA rules giving an arbitrator the power to rule on his or her own jurisdiction constitutes a clear and unmistakable delegation of questions of arbitrability."); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (same). Indeed, the AAA rules provide that decisions of validity and arbitrability of any claim regarding the arbitration agreement reside with the arbitrator. AAA R-7(a).

The invocation of AAA rules alone is sufficient to constitute a delegation agreement, but since September 2022, the Terms have also explicitly stated that the parties agree to delegate "decisions regarding the interpretation and application of the arbitration clause to an arbitrator and not to a court or judge." (*See supra* note 10; *see also* Blodgett Decl. ¶ 40.) All Plaintiffs agreed to this provision. (*See supra* Section II.C.) Plaintiffs Lewis and Vazquez did so at the time they created their accounts, and Plaintiffs Vongdara and Sizemore did so when they continued using Binance.US after the Terms were updated to include this provision. (*See id*.) Indeed, as detailed in the Blodgett Declaration, Plaintiffs Vongdara and Sizemore received emails notifying them of the September 2022 amendment to the Terms. (Blodgett Decl. ¶¶ 46–47); *see Webber v. Uber Techs., Inc.*, 2018 WL 10151934, at *4 (C.D. Cal. Sept. 5, 2018) (holding that where plaintiff received an email notifying him that Uber's terms of use had been updated and that continued use of the service would constitute assent to those Terms, he was "on reasonable notice of Uber's [t]erms, and thus assented to them by continuing to use the service after the [t]erms were updated"); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (email and news feed notification was sufficient "for notice and assent" to updated terms).

Accordingly, to the extent Plaintiffs raise any challenges to the scope or enforceability of the Arbitration Provision, those issues are to be addressed by the arbitrator.

         **c.**      **Even If There Were No Delegation Clause, the Court Should
Still Find Plaintiffs Must Arbitrate Their Claims**

Plaintiffs' explicit agreement to delegate questions of arbitrability is sufficient to compel
arbitration. But even if no delegation agreement existed, arbitration would still be appropriate
because Plaintiffs' claims fall squarely within the scope of the Arbitration Provision.

When deciding issues of arbitrability, courts engage in a two-part inquiry, determining
whether (1) the arbitration agreement is valid, and (2) the agreement encompasses the claims at
issue. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627-28 (1985).
When determining whether the arbitration clause encompasses the claims at issue, "all doubts are
to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir.
1999). The factual allegations need only "touch matters" covered by the contract containing the
arbitration clause. *See id.* at 721 (citation omitted). The question is "whether the factual
allegations underlying [the claims] . . . are within the scope of the arbitration clause, whatever the
legal labels attached to those allegations." *Mitsubishi Motors*, 473 U.S. at 622 n.9.

The first prong—existence of an arbitration agreement—is easily met here. (*See supra*
Section III.A.1.a.) Equally clear is the fact that Plaintiffs' claims fall within the Arbitration
Provision, which applies broadly to "any dispute or controversy arising out of or relating to these
Terms or the Services," including disputes relating to BAM's Binance.US platform. (Ex. 1 at 36;
*supra* at 4.) As the Ninth Circuit has recognized, arbitration clauses containing language such as
"arising out of or relating to" are "broad arbitration provision[s]," *Cape Flattery Ltd. v. Titan Mar.,
LLC*, 647 F.3d 914, 922 (9th Cir. 2011), and courts regularly enforce them. *See, e.g.*, *Carter v.
Spiegel*, 2022 WL 126303, at *5 (N.D. Cal. Jan. 13, 2022) (compelling arbitration of securities
claims).[18] Moreover, Plaintiffs allege that Defendants engaged in the sale and promotion of
supposed "unregistered securities" through a web of entities and individuals (BAM amongst them)
and the "Binance ecosystem," including the Binance.US platform and the BNB token. (*See, e.g.*,
AC ¶¶ 60, 86, 97-98.) For example, Plaintiffs allege that "Binance.US ha[s] violated federal and

---

[18] That Plaintiffs allege securities and consumer protection claims makes no difference, as courts
routinely compel arbitration of similar claims. *See, e.g.*, *Dean Witter*, 470 U.S. at 215, 223-24
(claims under the Securities Exchange Act of 1934 and various state-law claims); *Robertson's
Ready Mix, Ltd. v. Edwards*, 2023 WL 3049228, *1-2 (C.D. Cal. Mar. 2, 2023) (claims for
conversion, civil conspiracy, and violations of the UCL); *Thomas v. Thomas*, 2015 WL 12684449,
at *2 (C.D. Cal. Apr. 9, 2015) (claim for conversion).

state securities laws," that Defendants "encouraged the Binance.com and Binance.US platforms' customers to buy BNB," that Defendants promoted BNB as an investment in "the Binance platforms" (*e.g.*, Binance.US) and "the Binance ecosystem," that Defendants used BNB to "prop[] up and increas[e] the value of Binance and its platforms," that "Binance.US has engaged in the unregistered offer and sale of its Staking Program as an investment contract, and thus, as a security," and that the Binance.US platform was expressly created to evade U.S. regulatory scrutiny.  (AC ¶¶ 86, 97, 118, 169, 177, 180-85.)  Plaintiffs cannot credibly claim that their claims here do not "relat[e] to" the Binance.US platform.  Accordingly, their claims belong in arbitration.

## 2.    Plaintiffs Must Arbitrate Their Claims Against All Movants

Plaintiffs' claims against BAM Management, the Foreign Binance Entities, Zhao, and Armstrong (the "Non-Signatory Defendants") also belong in arbitration.[19]  Under Florida law, a plaintiff bound by an arbitration agreement must arbitrate claims against non-signatory defendants in either of the following circumstances, both of which apply here: (1) where the plaintiff alleges "interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract," *Aliani v. Yum Berry, LLC*, 2019 WL 13262724, at *1 (S.D. Fla. Dec. 19, 2019) (Altman, J.) (cleaned up), or (2) where a plaintiff's claims against a non-signatory defendant are "both based on the same facts" and "inherently inseparable from the alleged" conduct by a signatory.  *Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240, 243 (11th Cir. 2011) (reversing denial of motion to compel arbitration where non-signatory was the signatory's parent company); *accord Herrera v. W. Flagler Assocs., Ltd.*, 2017 WL 9324515, at *5 (S.D. Fla. Apr. 5, 2017).[20]  Requiring arbitration of interrelated claims

---

[19]  Plaintiffs allege that Defendant BAM Management is a "shell corporation" that owns BAM. (AC ¶ 29.)  As discussed above, BAM Management is covered by the Terms both directly and as a beneficiary.  *See supra* at n. 8.  Moreover, because Plaintiffs allege no independent misconduct on the part of BAM Management, the claims against it are inseparable from those against BAM and thus must be arbitrated as an equitable matter for the reasons discussed in this section.

[20]  As this Court has noted, courts in Florida apply Florida state law when determining whether to compel arbitration of claims against a non-signatory defendant.  *See Aliani*, 2019 WL 13262724, at *1 (Altman, J.); *see also Physician Consortium*, 414 F. App'x at 242-43.  Even if California law applied, the result would be the same.  *See, e.g.*, *Cohen v. CBR Sys., Inc.*, 625 F. Supp. 3d 997, 1005–06 (N.D. Cal. 2022) (compelling arbitration of claims against non-signatory parent company, where its alleged conduct was "substantially interdependent with" the conduct of the signatory (a subsidiary), and the claims against both defendants were "based on the same facts and inherently inseparable").

against non-signatories prevents plaintiffs from "attempting an 'end run'" around their arbitration agreements. *Physician Consortium*, 414 F. App'x at 243.  Here, where Plaintiffs allege that the Defendants worked together as part of a "common enterprise" (*e.g.*, AC ¶¶ 60, 138), and Plaintiffs' claims against BAM and the Non-Signatory Defendants are inherently inseparable, the Court should do the same.

Plaintiffs expressly allege a conspiracy involving all Defendants and other non-parties to "solicit U.S. customers" to trade on Binance.com "while avoiding U.S. regulation" of that platform, and that Binance.US was a critical component of this alleged conspiracy (*id.* ¶¶ 16, 29, 44, 58-62, 177, 180)—and Plaintiffs even assert a "civil conspiracy claim" (*id.* ¶¶ 416-21).  This is particularly true for BAM, the Foreign Binance Entities, and Zhao.  The Amended Complaint relies almost entirely on group pleading when referring to BAM and the Foreign Binance Entities—rather than allege individual conduct by those Defendants, Plaintiffs lump them together as "Binance."  (*Id.* ¶ 1 n.1.)  Plaintiffs also allege (without factual support) that Zhao "controlled all of Binance's business activities" and has "owned the scores of entities that collectively operate the Binance platforms."  (*Id.* ¶ 25; *see also id.* ¶¶ 58-65.)  Plaintiffs' claims against Zhao are based on their theory that he supposedly "orchestrated the development of" BAM and the Binance.US platform, (*id.* ¶ 184), directed "Binance" to "solicit[]" and "target" U.S. customers for Binance.com, (*id.* ¶¶ 178, 257), and "maintained custody and control of the crypto assets" on Binance.US (*id.* ¶ 39).  Plaintiffs' allegations as to Defendant Armstrong are no better—they are based on the contention that Armstrong "partnered with Binance to promote its platforms."  (*Id.* at 74; *see also, e.g.*, *id.* ¶¶ 6, 57, 269-89.)

Not only do Plaintiffs allege concerted action, but they allege eight of the nine claims (including civil conspiracy) against all Defendants, without even attempting to identify what each Defendant supposedly did in connection with each claim.  For example, Plaintiffs' civil conspiracy claim (Count 7) alleges that "Binance entered into one or more agreements with the other Defendants"—presumably including Zhao and Armstrong—to fraudulently induce investments in purportedly unregistered securities (*id.* ¶ 418), and their aiding and abetting conversion claim (Count 9) similarly alleges that Zhao, Butler, "and/or" Armstrong "aided, abetted, and/or participated with Binance" in the alleged conversion of funds (*id.* ¶ 431).  Plaintiffs' state law securities claims (Counts One, Three, and Five) also allege that "Defendants" collectively provided "material assistance" to facilitate Binance's alleged violations.  (*id.* ¶¶ 366, 380, 404.)

And Plaintiffs' consumer protection counts (Counts Two, Four, and Six) are alleged against undifferentiated "Defendants."  (*Id.* ¶¶ 371-72, 393-95, 410-12.)

These are exactly the types of allegations that courts in the Eleventh Circuit have consistently held equitably estop a plaintiff from avoiding arbitration of claims against non-signatories.[21]  This Court should reach the same conclusion here.

### 3.    The FAA Requires a Stay of This Action Pending Arbitration

When the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the Act directs the district court to compel arbitration and stay the lawsuit pending the resolution of arbitration.  *See* 9 U.S.C. § 3; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The Court should enter such a stay in this case.

### B.    Plaintiffs Lack Article III Standing

To establish Article III standing, Plaintiffs must allege that they "suffered an injury in fact that is concrete, particularized, and actual or imminent," and "that the injury was likely caused by the defendant." *TransUnion*, 141 S. Ct. at 2203.  Plaintiffs meet none of these requirements.

*First*, Plaintiffs do not allege any injury-in-fact. The Amended Complaint is devoid of factual allegations explaining how Plaintiffs were supposedly harmed.  Plaintiffs' theory appears to be that they purchased certain digital assets that they claim should have been registered as securities (*see* AC ¶¶ 20-23), and that certain Defendants purportedly converted funds "invested in the Binance platform(s)."  (*Id.* ¶ 423; *see also id.* ¶¶ 95-96.)  But it is unclear whether Plaintiff Lewis is alleging that he purchased *any* digital assets from Defendants,[22] and no Plaintiff alleges any facts to support the conclusion that any of them overpaid for any digital assets, experienced any out-of-pocket losses, or were otherwise harmed in any concrete way by Defendants' purported wrongdoing.  Instead, each Plaintiff parrots the same conclusory allegation that he "purchased, invested, and/or reinvested unregistered securities" after "being exposed to" unidentified

---

[21] *See, e.g.*, *Aliani*, 2019 WL 13262724, at *1 (complaint was "replete with" allegations of "interdependent and concerted misconduct"); *Wubben v. Kirkland*, 2008 WL 11334983, at *7 (M.D. Fla. Dec. 22, 2008) (securities claims against signatory defendant were "intertwined with" claims against non-signatory "managing members" and "the other entities" under their control), *report and recommendation adopted*, 2009 WL 10670013 (M.D. Fla. Mar. 25, 2009); *see also Lubin v. Verint Americas, Inc.*, 2021 WL 9080004, at *4 (S.D. Fla. June 21, 2021); *Citi Cars, Inc. v. Cox Enters., Inc.*, 2018 WL 1521770, at *11 (S.D. Fla. Jan. 22, 2018).

[22] *See supra* note 13.

"misrepresentations and omissions regarding the Binance platforms," and thereby "sustained damages." (AC ¶¶ 20-23.) As the Eleventh Circuit has made clear, such "conclusory statements do not suffice" to establish standing, *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (citation omitted), and a plaintiff must demonstrate that its supposed injury "actually exists," *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (affirming dismissal for lack of standing). Plaintiffs do not identify the occurrences from which any "damages" they suffered might flow, and their vague reference to unspecified "transactions" falls well short of meeting their burden. *See Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021) (rejecting "vague, conclusory allegations").

Moreover, Plaintiffs fail to allege a "particularized" injury, which requires that their grievance affect them "in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Here, Plaintiffs Sizemore, Vongdara, and Vazquez fail to identify *any* assets that they purchased, and Plaintiff Lewis does not clearly allege that he purchased any assets from Defendants.[23] No Plaintiff alleges when they purchased any assets, how much they paid, or whether the assets were sold. *See Doss v. Gen. Mills, Inc.*, 816 F. App'x 312, 314 (11th Cir. 2020) (no standing where plaintiff failed to allege that she purchased the product containing the omission); *see also In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1125 (S.D. Fla. 2019) (no standing for claims relating to products the plaintiff did not purchase); *LBS Petroleum, LLC v. Demir*, 2015 WL 12469064, at *4 (S.D. Fla. Oct. 28, 2015) (no standing for claims related to products that plaintiff did not purchase).

As for Plaintiffs' accusations that unspecified customer funds were transferred from the Binance.US platform for unauthorized purposes (*see* AC ¶¶ 72, 94-96), these too fail to meet the threshold for pleading a particularized injury absent any allegation that *Plaintiffs'* funds were implicated by those alleged transfers (*see infra* Section III.D.7). Rather, they amount to nothing more than a "generalized grievance." *Wood v. Raffensperger*, 2021 WL 3440690, at *2 (11th Cir.

---

[23]  *See supra* note 13. Further, as Plaintiffs concede, the BAM Defendants could not have had anything to do with the issuance of BNB because the issuance of BNB in 2017 predates the founding of Binance.US in 2019. (AC ¶¶ 29, 50.) Accordingly, to the extent that Lewis is not alleging that he made any purchases on Binance.US, he cannot meet the requirements for Article III standing with respect to his claims against BAM. Nor can Lewis demonstrate standing as to the Foreign Binance Entities to the extent he does not allege he made any purchases on Binance.com or against Zhao or Armstrong (given that he does not allege he transacted with them at all).

Aug. 6, 2021) (no standing where plaintiff failed to allege injury specific to him as opposed to the public); *see also Pirgmann v. Wood*, 2014 WL 12860828, at *2 (S.D. Fla. Apr. 8, 2014) (similar, where "converted funds" belonged to other entities).

*Second*, Plaintiffs contend that Defendants failed to register certain assets as securities, made misrepresentations about the Binance Platform, and diverted unspecified customer funds (*see* AC ¶¶ 20-23, 72, 94-96), but do not allege that there is a "causal connection" between those acts and any supposed injury they suffered.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiffs do not plead any facts about their alleged purchases, nor do they allege any facts tying their accounts to the allegedly diverted customer funds.  *See, e.g.*, *Swann v. Sec'y, Georgia*, 668 F.3d 1285, 1288 (11th Cir. 2012) (no standing where plaintiff's alleged injury was not caused by defendant's actions).  For both these reasons, Plaintiffs lack Article III standing.

**C.     Plaintiffs Have Not Established Personal Jurisdiction Over the Foreign Defendants**

Plaintiffs' claims against the Foreign Binance Entities, Armstrong, and Zhao (the "Foreign Defendants") fail for the additional reason that Plaintiffs' allegations do not establish the Foreign Defendants are subject to personal jurisdiction in this Court.

Personal jurisdiction requires a two-part analysis: whether the exercise of personal jurisdiction (1) "comports with the forum state's long-arm statute," and (2) is "consistent with" federal due process.  *Carter v. Ford Motor Co.*, 2021 WL 1165248, at *4 (S.D. Fla. Mar. 26, 2021) (Altman, J.); *see also Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1291 (11th Cir. 2022).  Personal jurisdiction may be either general or specific.  *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018).  The burden is on Plaintiffs to plead *facts* establishing personal jurisdiction. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).

Here, Plaintiffs have not shown that the Foreign Defendants are subject to jurisdiction.

**1.     The Foreign Defendants Are Not Subject to General Jurisdiction**

Plaintiffs provide no basis for general, "at home" personal jurisdiction over the Foreign Defendants.  *Waite*, 901 F.3d at 1317.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  A corporate entity is at home in "the corporation's place of incorporation and its principal place of business."  *Waite*, 901 F.3d at 1317*.*  In fact, Plaintiffs concede that Zhao and Armstrong are neither citizens nor residents of Florida, admit that the Foreign Binance Entities are incorporated outside the U.S., and fail to allege the Foreign Binance Entities' principal places of

business are here.  (AC ¶¶ 25-28, 33.)  There is no basis to exercise general jurisdiction here.[24] *See Waite*, 901 F.3d at 1317-18; *Perry v. Ryan*, 2023 WL 2403889, at \*3 (M.D. Fla. Mar. 8, 2023).

## 2.        The Foreign Defendants Are Not Subject to Specific Jurisdiction

As other courts have concluded in similar suits, Plaintiffs also fail to establish specific personal jurisdiction over the Foreign Defendants.  *See Miro v. Doe*, 2023 WL 2734374, at \*4 (S.D. Fla. Mar. 31, 2023) (dismissing claims against Binance Holdings, Ltd. for lack of personal jurisdiction); *Cox v. CoinMarketCap OpCo LLC*, 2023 WL 1929551, at \*5-6 (D. Ariz. Feb. 10, 2023) (dismissing claims against Defendant Zhao for lack of personal jurisdiction).

To establish specific jurisdiction, Plaintiffs must plausibly allege that: (1) the Foreign Defendants have "purposefully availed" themselves of the Florida forum; (2) Plaintiffs' claims against the Foreign Defendants "arise out of or relate to" the Foreign Defendants' "contacts with" Florida; and (3) the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."  *Waite*, 901 F.3d at 1313.  The specific personal jurisdiction inquiry focuses on "a defendant's contacts with Florida," *id.* at 1312, and jurisdiction must be based on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

As a threshold matter, Plaintiffs' entire theory of specific jurisdiction is plagued by improper shotgun and group pleading because their jurisdictional allegations are levied against the collective "Defendants," not each Foreign Defendant.  (*See infra* Section III.D.1.)  For example, Plaintiffs allege that "Defendants" collectively have "intentionally availed themselves of the Florida consumer market," that "Defendants" collectively "engaged in a conspiracy," and that "Binance"—a catch-all term for at least two different BAM entities and three different foreign Binance entities—engaged in certain conduct with Zhao.  (AC ¶ 1 n.1, 35, 37-39.)  Courts in this Circuit routinely hold that shotgun (or group) pleading like this does not meet a plaintiff's burden as to personal jurisdiction.  *See Sanho Corp. v. KaiJet Tech. Int'l Ltd.*, 2021 WL 2355096, at \*5 (N.D. Ga. June 9, 2021); *Home Design Servs., Inc. v. David Weekley Homes, LLC*, 2007 WL 1080001, at \*3 (M.D. Fla. Apr. 9, 2007) (plaintiffs' "shotgun pleading" failed to establish what actions individual defendants took to establish personal jurisdiction).

---

[24]  The Florida long-arm statute provides for general jurisdiction to the limits imposed by the Due Process Clause.  *See Carmouche v. Tamborlee Mgmt., Inc*., 789 F.3d 1201, 1204 (11th Cir. 2015) (citing Fla. Stat. § 48.193(2)).

***No Purposeful Availment.***   Plaintiffs plead no facts indicating that each Foreign Defendant purposefully availed itself of this forum by "direct[ing] [its] activities at the forum" "such that [it] has fair warning that a particular activity may subject [it] to [] jurisdiction" here. *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000) (cleaned up).

As to the Foreign Defendants specifically, the only allegations are that (1) "Defendant Binance.US (under Zhao's and Binance's [supposed] control) obtained Florida business licenses and transacted business in this District, including through the operation of the Binance.US platform, which was accessed by individuals in Florida" (AC ¶ 36); (2) "Until September 2019, Binance (as controlled by Zhao) made the Binance.com platform publicly and readily available for trading to customers in Florida," (*id.* ¶ 37); (3) "Armstrong's promotions were published on public social media accounts accessible to plaintiffs nationwide, including in Florida," (*id.* ¶ 287); and (4) Armstrong "has made various appearances in the State of Florida throughout the applicable time period" (*id.* ¶ 33).[25]   These are insufficient.

 Merely alleging that the Binance.com platform *was available* in Florida or that certain alleged "promotions" about "Binance" *were accessible* in Florida is insufficient to establish purposeful direction. *See Toll v. North*, 2022 WL 17412937, at *3 (S.D. Fla. Dec. 5, 2022) (merely making a website available is not "target[ing] it [to] a Florida audience in any way"); *Argos Global Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1090 (S.D. Fla. 2020) ("[T]he mere posting of a website without more is insufficient to demonstrate that Defendants purposefully aimed their activity toward Florida.") (cleaned up).   As to Armstrong's alleged "various appearances" in Florida, Plaintiffs fail to allege how such appearances relate to Plaintiffs' causes of action, and it is "insufficient to rely on a defendant's random, fortuitous, or attenuated contacts." *Walden*, 571 U.S. at 286 (cleaned up).

Plaintiffs' purposeful availment allegations regarding Zhao fail for the additional reason that they are barred by Florida's corporate shield doctrine, which prohibits Florida courts from

---

[25]  Plaintiffs' generalized allegations about "Binance" profits garnered in Florida (*id.* ¶¶ 55, 84), also do not show the Foreign Defendants' purposeful availment of Florida. *See TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 2014 WL 11899285, at *4 (S.D. Fla. July 15, 2014) (no purposeful availment simply because "websites could be accessed by Florida residents" and defendant "derived substantial revenue from Florida customers," where plaintiff alleged no "specific[] facts indicating that [defendant] meaningfully directed activities toward Florida" (cleaned up)).

exercising jurisdiction over individuals "simply because [they are] a corporate officer" of an entity alleged to have contacts with Florida. *See Rafferty v. Retrieval-Masters Creditors Bureau, Inc.*, 2018 WL 4381196, at *3 (M.D. Fla. July 31, 2018), *report and recommendation adopted*, 2018 WL 4381167 (M.D. Fla. Aug. 15, 2018); *see also It's a 10, Inc. v. Beauty Elite Grp., Inc*., 2013 WL 1636366, at *4 (S.D. Fla. Apr. 16, 2013) (no jurisdiction over corporate officer absent specific allegations or evidence that officer "directed or participated in" alleged misconduct). Thus, Plaintiffs cannot establish jurisdiction over Zhao simply because he allegedly "owns and controls" BAM Trading or was a director of BAM Management and BAM Trading (AC ¶¶ 25, 30, 60). *See, e.g.*, *Guzman v. Cruise Yacht Op Co. Ltd.*, 2023 WL 2572220, at *3 (S.D. Fla. Mar. 20, 2023) (no personal jurisdiction based on defendant's actions as director).

**Claims Do Not Arise From or Relate To The Foreign Defendants' Suit-Related Forum Contacts.** Plaintiffs also plead no facts indicating that their claims arise out of or relate to any Florida-directed conduct by the Foreign Defendants. Where specific jurisdiction is asserted based on a defendant's allegedly tortious act, the Eleventh Circuit has held that "a tort arises out of or relates to the defendant's activity in a state only if the activity is a but-for cause of the [alleged] tort." *Waite*, 901 F.3d at 1314 (cleaned up). Plaintiffs fail this test because they do not plead any connection between their claims and any suit-related Florida conduct by the Foreign Defendants.

Plaintiffs' jurisdiction hook is Defendants' alleged "sale of unregistered securities in Florida." (AC ¶ 35.) But the Amended Complaint includes no factual allegations tying Plaintiffs' supposed purchases to any suit-related Florida contacts by the Foreign Defendants. (*See* Mot. Ex. 1; *see also* Section III.B *supra*.) As to Plaintiffs Sizemore, Vazquez and Vongdara, the Amended Complaint lacks any allegations as to what digital assets, if any, they purchased, where they were purchased, and who was involved in those purchases. (*See* Mot. Ex. 1; *see also supra* Section III.B.) Without that information it is impossible for the Court to even conduct an inquiry into whether Plaintiffs' claims arise from or relate to any contact by the Foreign Defendants with this forum. The allegations as to Plaintiff Lewis fare no better; while he alleges to have purchased "BNB on Crypto.com," (AC ¶¶ 101, 125), he fails to allege any role by any Defendant—much less an action in Florida by the Foreign Defendants—connected to that supposed sale.

Courts routinely dismiss claims for lack of personal jurisdiction with similarly vague allegations about purchases at the heart of the case. *See Hinkle v. Cirrus Design Corp*., 775 F. App'x 545, 550 (11th Cir. 2019) (no personal jurisdiction where plaintiff failed to show that

purchase was connected to Florida); *Schrier v. Qatar Islamic Bank*, 2022 WL 4598630, at *13 (S.D. Fla. Sept. 30, 2022) (Altman, J.) (no personal jurisdiction where plaintiff failed to show purchase occurred in Florida); *Perry*, 2023 WL 2403889, at *3 ("[T]he complaint does not allege specific factual events or transactions involving Defendants that occurred in Florida.").

*Not Consistent with Fair Play and Substantial Justice.*  Because Plaintiffs fail with respect to the first two steps of the specific jurisdiction analysis, there is no need to assess whether exercising personal jurisdiction would comport with traditional notions of fair play and substantial justice. *See Waite*, 901 F.3d at 1313.  But given, among other things, the Foreign Defendants' lack of connections with Florida and the burden that would be placed on them if they were required to proceed in this forum, the Court's exercise of personal jurisdiction over the Foreign Defendants would violate traditional notions of fair play and substantial justice.  *See Frida Kahlo Corp. v. Pinedo*, 2021 WL 4147876, at *6 (S.D. Fla. Sept. 13, 2021).

*Florida Long-Arm Statute.*  Florida's long-arm statute does not provide for the exercise of specific personal jurisdiction here either.  Plaintiffs offer two theories under the statute: that Movants allegedly (1) "commit[ed] a tortious act within the state of Florida" by allegedly promoting and selling "unregistered securities" here,[26] and (2) "engaged in a conspiracy" that involves overt acts carried out in Florida.  (AC ¶ 35.)

*First*, for the reasons discussed in Section III.D *infra*, Plaintiffs have not plausibly alleged any legal violations.  Plaintiffs therefore cannot establish specific jurisdiction under the Florida long-arm statute.  *See Catalyst Pharm., Inc. v. Fullerton*, 748 F. App'x. 944, 947 (11th Cir. 2018).

*Second*, Plaintiffs have not established conspiracy-based personal jurisdiction as to the Foreign Defendants.  A plaintiff seeking to establish personal jurisdiction on the basis of an alleged conspiracy must establish (1) "the existence of a conspiracy in which the non-resident defendant and the resident participated," and (2) that one of the conspirators committed "a tortious act within the state" that serves as the basis for the plaintiff's claims.  *Schrier*, 2022 WL 4598630, at *12-13. Plaintiffs have not plausibly alleged an underlying tortious act, (*see infra* Section III.D), and thus cannot establish conspiracy jurisdiction.  *See Schrier*, 2022 WL 4598630, at *13 (no conspiracy-based jurisdiction over non-resident without allegations that the defendants "committed a tortious act *within the state*").

---

[26]  *See* Fla. Stat. § 48.193(1)(a)(2) (permitting the exercise of specific jurisdiction for "any cause of action arising from . . . [c]ommitting a tortious act within this state")

In any event, Florida courts do not permit the exercise of personal jurisdiction over an alleged co-conspirator unless another co-conspirator "commits an act in Florida in furtherance of the conspiracy." *N. Am. Sugar Indus. Inc. v. Xinjiang Goldwind Sci. & Tech. Co., Ltd.*, 2022 WL 17662904, at *11 (S.D. Fla. Dec. 14, 2022). The Amended Complaint does not allege how any affirmative conduct by any co-conspirator in Florida furthered the alleged conspiracy, nor does it offer "nonconclusory allegations" that Defendant Jimmy Butler, the only Defendant who allegedly resides in Florida (AC ¶ 32), "agreed to participate in [any] [c]onspiracy" with the other Defendants. *Oueiss v. Saud*, 2022 WL 1311114, at *14 (S.D. Fla. Mar. 29, 2022). For these reasons, conspiracy jurisdiction cannot lie. *See id.* (no jurisdiction over nonresident where there were "no nonconclusory facts" alleged "that provide[d] context or a factual predicate for the alleged recruitment of [resident defendants] into" alleged conspiracy); *PowerTec Solutions, Int'l, LLC v. Hardin*, 2019 WL 6170040, at *3 (S.D. Fla. Nov. 20, 2019) (Altman, J.) ("bald allegation that defendants committed, and conspired to commit, acts . . . within the State of Florida was insufficient" (cleaned up)).

In sum, Plaintiffs' barebones allegations fail to establish specific personal jurisdiction.

**D.    Plaintiffs Fail to State any Viable Claims**

Beyond the threshold jurisdictional defects plaguing their claims, Plaintiffs fail to state any claim against Movants under Rule 12(b)(6). The Amended Complaint alleges nine causes of action. (AC ¶¶ 359-432.) None of these is sufficiently pled.

> **1.    Plaintiffs' Shotgun Pleading and Conclusory Allegations Fall Short of Basic Pleading Requirements**

None of Plaintiffs' claims survive Rule 8 or—as to those claims that sound in fraud—Rule 9(b). Under the Rule 8 pleading standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs cannot meet their pleading obligations with "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt.*, 297 F.3d at 1188. Rule 9(b) is even more exacting. For Plaintiffs' claims sounding in fraud,[27] they must "state with particularity the circumstances constituting the fraud," Fed. R. Civ. P. 9(b), meaning "(1) precisely what statements were made . . . or what omissions were made"; "(2) the

---

[27] *See* Plaintiffs' claims under California Securities Law § 25401 (Count Three, (AC ¶¶ 385-88), and Colorado Securities Act § 11-51-501 (Count Five, AC ¶¶ 403-06) sound in fraud.

time and place of each such statement and the person responsible for making" or "not making" it; "(3) the content of such statements and the manner in which they misled the plaintiff"; and "(4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Neither of these standards are met where, as here, Plaintiffs engage in improper "shotgun" (or group) pleading. *See Barmapov*, 986 F.3d at 1325. Shotgun pleading covers a number of pleading failures and requires dismissal where a plaintiff "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against," or where the complaint is "replete with conclusory, vague, and immaterial" allegations. *Id.* at 1325-26. The Amended Complaint presents a textbook example. Plaintiffs mix and match groups of Defendants when discussing their alleged wrongdoing, do not specify which Defendants each claim is raised against, and plead a large number of vague and irrelevant facts. (*See, e.g.*, AC ¶¶ 20-22, 66, 202, 371.) Each of these is an independent basis to dismiss the Amended Complaint.

Indeed, the very first footnote in the Amended Complaint touts Plaintiffs' shotgun pleading approach, announcing its intention to refer to wholly separate corporate entities domiciled in wholly different jurisdictions as one single undifferentiated entity. (AC ¶ 1 n.1.)[28] Plaintiffs' decision to "impermissibly lump[] together" the Defendants alone warrants dismissal. *See Wyndham Vacation Ownership, Inc. v. CLS, Inc.*, 2018 WL 9869799, at *2 (S.D. Fla. Nov. 5, 2018); *City of Miami v. JPMorgan Chase & Co.*, 171 F. Supp. 3d 1309, 1314 (S.D. Fla. 2016).

### 2.    The Unregistered Securities Sales Claims Fail

Plaintiffs allege claims under Florida, California, and Colorado law for the alleged sale of unregistered securities. (Counts One, Three and Five, AC ¶¶ 360-66, 379-82, 399-402.) To state a claim under any of these statutes, Plaintiffs must plausibly allege that each Movant sold them a security that was not registered with each state.[29] *See, e.g.*, *Calabro v. Pares*, 2020 WL 7481301,

---

[28] Plaintiffs seemingly attempt to invoke a "common enterprise" theory linking all Defendants (*e.g.*, AC ¶¶ 60, 138), but fail to allege sufficient facts to support that theory or even to establish that a common enterprise theory is appropriate for their claims. *See Krinsk v. SunTrust Banks, Inc*., 2010 WL 11475608, at *6 n.6 (M.D. Fla. Jan. 8, 2010) (rejecting common enterprise argument as improperly pled, even assuming application to claims).

[29] Fla. Stat. § 517.07(1); Cal. Corp. Code § 25110; Colo. Rev. Stat. § 11-51-301.

at *2 (S.D. Fla. May 27, 2020), *report and recommendation adopted*, 2020 WL 7481304 (S.D. Fla. June 12, 2020).  They have not met this requirement.[30]

Plaintiffs offer nothing more than vague and conclusory allegations about their supposed purchase of the alleged securities from "Binance."  (*See* AC ¶¶ 362-64; *see also* Mot. Ex. 1.)  Such allegations fail to state a claim that Movants sold Plaintiffs unregistered securities in violation of Florida, California or Colorado law.  *See Trilogy Props. LLC v. SB Hotel Assocs. LLC*, 2010 WL 7411912, at *12 (S.D. Fla. Dec. 23, 2010); *Dhaliwal v. Singh*, 2013 WL 2664336, at *13 (E.D. Cal. June 12, 2013); *see also Rensel v. Centra Tech, Inc.*, 2019 WL 2085839, at *6 (S.D. Fla. May 13, 2019) ("Mere conclusory allegations" about defendants' "sale of stock . . . are insufficient to state a claim under Section 12" of the Securities Act for the unregistered sale of securities).[31]  Nor do Plaintiffs allege any basis for asserting secondary liability against the non-selling Movants.  No Plaintiff pleads facts indicating that Zhao or Armstrong "personally participated or aided in making the sale" of the unidentified digital assets, as required to state claims against non-sellers.  *See Dillon v. Axxsys Int'l, Inc.*, 185 F. App'x 823, 828 (11th Cir. 2006) (no Florida securities claim where there was no evidence that the defendant had "personal activity and involvement in the sale"); *see also Stat-Tech Liquidating Tr. v. Fenster,* 981 F. Supp. 1325, 1339 (D. Colo. 1997) (dismissing Colorado Securities Act ("CSA") claim for secondary liability where there was no evidence as to "defendant knowingly and substantially assist[ing]" in a primary violation).  Nor do Plaintiffs plead any facts indicating that Zhao or Armstrong "materially assist[ed]" any sale "with intent to deceive or defraud" Plaintiffs, as required under CSL § 25504.1.  *See SIC Metals, Inc. v. Hyundai Steel Co.*, 2018 WL 6842958, at *5 (C.D. Cal. Nov. 14, 2018)

### 3.      The Securities Fraud Claims Are Inadequately Pled

Plaintiffs' claims under California and Colorado law for alleged securities fraud (Counts Three and Five, AC ¶¶ 385-88, 403-06) are subject to the heightened pleading standard under

---

[30] Movants vigorously dispute that any of the digital assets identified in the Amended Complaint qualify as securities under Florida, California, or Colorado law (or federal law, for that matter).

[31] *See Scheck Invs., L.P. v. Kensington Mgmt., Inc.*, 2009 WL 10668565, at *2 (S.D. Fla. June 17, 2009) ("The Florida Supreme Court [has] acknowledged that the Florida legislature intended that Florida securities laws be hand-in-glove with federal securities laws."); *Chan v. HEI Resources, Inc.*, 512 P.3d 120, 127 (Colo. 2022) (holding that the Colorado Securities Act's "provisions are to be coordinated with referenced federal law" and that "federal authorities are highly persuasive."); *People v. Black*, 8 Cal. App. 5th 889, 905 (2017) ("It is well settled that federal cases construing federal securities laws are persuasive authority when interpreting our state law.").

Rule 9(b), *Konopasek v. Ten Assocs., LLC*, 2018 WL 6177249, at *3 (C.D. Cal. Oct. 22, 2018). Because Plaintiffs fail to plead "'the who, what, when, where, and how' of the fraudulent conduct charged"—including the relevant misstatements that they claim induced them to purchase any digital asset—they fail to state a CSL § 25401 or CSA § 11-51-501 claim. *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)); *Est. of Bogue v. Adams*, 405 F. Supp. 3d 929, 939 (D. Colo. 2019) (dismissing CSA fraud claim where plaintiffs did not allege "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof" (cleaned up)).

### 4.      Plaintiffs Do Not Plead an Unregistered Broker-Dealer Claim

For similar reasons, Plaintiffs have failed to state a claim against Defendants Zhao and Armstrong under CSL § 25210(b), which prohibits inducing another party to engage in transactions with an unregistered broker-dealer.  (Count Three, AC ¶¶ 383-84 (alleging Zhao and Armstrong "*encourag[ed]* Binance to offer and sell" digital assets to Plaintiffs (emphasis added)). Plaintiffs have not alleged *any* statements or other actions from Defendants Zhao or Armstrong that *induced or "encouraged" Plaintiffs* to transact on Binance.US or Binance.com.  As a result, the Amended Complaint "does not create a plausible inference" that Zhao's and Armstrong's alleged conduct was in any way "connected to" Plaintiffs' alleged transactions or that Zhao or Armstrong "violated . . . California securities laws."  *See Konopasek*, 2018 WL 6177249, at *5.

### 5.      Plaintiffs Fail to State a UCL Claim

Plaintiffs' California Unfair Competition Law ("UCL") claim (Count Four, AC ¶¶ 391-96) fails multiple times over.  *First*, Plaintiffs lack statutory standing under the UCL, which requires that they have "suffered injury in fact and . . . lost money or property."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (2009) (cleaned up).  The closest Plaintiffs come to even acknowledging that requirement is their claim that they "deposited and/or maintained funds and assets in their Binance accounts," and "were injured through the uniform misconduct" alleged in the Amended Complaint. (AC ¶¶ 348, 423.)  But nowhere in the Amended Complaint do Plaintiffs allege that their money or property was ever lost, or specify any injury.  (*See supra* Section III.B.)  *Second*, Plaintiffs do not (and cannot) establish that they lack an adequate legal remedy (*see* AC ¶¶ 391-96), as required to state a UCL claim.  *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022); *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1216 (S.D. Fla. 2022).  The UCL claim fails on that basis as well.

   **6.**  **FDUTPA and CCPA Claims Based on Transactions in Alleged Securities Are Impermissible**

  The Court may also easily dispose of Plaintiffs' claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and Colorado Consumer Protection Act ("CCPA") because the claims as alleged are based on the purchase of so-called unregistered securities. (Counts Two and Six, AC ¶¶ 367-76, 408-15.)  Both FDUPTA and CCPA are inapplicable when the underlying conduct consists of alleged securities transactions.  *See Feng v. Walsh*, 2021 WL 8055449, at *13 (S.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022); *Robinson v. OppenheimerFunds, Inc.*, 2013 WL 754417, at *4 (D. Colo. Feb. 27, 2013).   In any event, Plaintiffs also fail to plead required elements of these claims: Plaintiffs allege deceptive practices theories under the FDUTPA and CCPA, and an unfair practice theory under the FDUTPA (AC ¶¶ 371, 410), but fail to allege any false or misleading statement (let alone in compliance with Rule 9(b)), much less an unfair practice or damages, as required.  *See Marrache v. Bacardi U.S.A. Inc.*, 17 F.4th 1084, 1097-98 (11th Cir. 2021) (FDUTPA claim requires "a deceptive act or unfair practice," "causation," and "actual damages"); *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120 (10th Cir. 2008) (similar for CCPA).

   **7.**  **The Conversion and Aiding and Abetting Conversion Claims Fail**

  Plaintiffs' claim for conversion against "Binance" (Count Eight, AC ¶¶ 422-26) and aiding and abetting conversion against Defendants Zhao and Armstrong (Count Nine, AC ¶¶ 427-32) are insufficiently pled:  (1) the conversion claim fails because Plaintiffs do not allege that their funds were transferred by Binance, and (2) the aiding and abetting claim fails because there was no predicate offense, Defendants Zhao and Armstrong are not alleged to have assisted any conversion, and the claim against Zhao is also barred by the intra-corporate conspiracy doctrine.

  ***Conversion.***  A claim for conversion under Florida law is premised on "an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (cleaned up).  A cause of action *only* accrues "where a person wrongfully refuses to relinquish property to which another has the right of possession," *id.*, and "[w]ithdrawal of funds from a bank account" only gives rise to a conversion claim "if the specific money in question can be identified," not if funds are commingled in "general bank accounts." *Johnson v. Chase Bankcard Servs., Inc.*, 582 F. Supp. 3d 1230, 1237-

38 (M.D. Fla. 2022) (citation omitted); *see also Regions Bank v. Kaplan*, 2021 WL 4852268, at *6 (11th Cir. Oct. 19, 2021) (conversion of money requires "specific and identifiable money.").[32]

Plaintiffs come nowhere near alleging facts that any of the Defendants "wrongfully refuse[d] to relinquish" any of the funds they invested in Binance.  *Mazer*, 556 F.3d at 1270. Indeed, they say nothing about those funds at all.  Plaintiffs' claim appears to be based on the SEC's allegation that Binance transferred unidentified customer funds to third-party entities and offshore accounts.  (AC ¶¶ 94-96 (repeating what "[t]he SEC has alleged").)  But this conclusory allegation, which the SEC conceded was unsupported,[33] cannot support a conversion claim. Plaintiffs do not allege that *their* "specific and identifiable money" was transferred by any Binance entity.  *Regions Bank*, 2021 WL 4852268, at *6.  Nor do they allege that Binance has refused to return their money, *see id.*, or that they are otherwise unable to access their money or have "been divested of their property."  *De Ford v. Koutoulas*, 2023 WL 2709816, at *16 (M.D. Fla. Mar. 30, 2023).  Further, Plaintiffs do not allege that any of their funds were "identifiable" such that they could even be the subject of a conversion claim, *see Johnson*, 582 F. Supp. 3d at 1236-38 (collecting cases), and their description of the alleged transfers precludes any possibility that their funds could be "identified."  (*See* AC ¶¶ 16, 71, 95-96.)  This defect is incurable.  *See Biondi v. Branch Banking & Tr. Co*., 2018 WL 6566027, at *6 (S.D. Fla. Aug. 28, 2018).

***Aiding and Abetting Conversion.***  To state an aiding and abetting conversion claim, Plaintiffs must allege: (1) an underlying violation by a primary wrongdoer; (2) knowledge of that violation by the aider and abetter; and (3) substantial assistance in committing the wrongdoing by the alleged aider and abettor.  *Taubenfeld v. Lasko*, 324 So. 3d 529, 543-44 (Fla. 4th DCA 2021).[34] Plaintiffs satisfy none of these requirements.

---

[32]  Plaintiffs do not specify which state's laws they invoke, but the tests are substantially the same for California and Colorado.  *Compare Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008), *with Abbott Lab'ys v. Finkel*, 2017 WL 5517399, at *2 (D. Colo. Nov. 17, 2017).

[33]  During the hearing on the SEC's motion for a temporary restraining order, the SEC's counsel conceded that there was no evidence that BAM customer assets have been misused or dissipated. *See, e.g.*, Tr. at 33:4-6, 44:22-45:9.  A copy of the transcript is submitted herewith as **Exhibit 2**.

[34]  California and Colorado apply similar standards.  *Compare AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 949 (2018), *with Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 428 P.3d 567, 577 (Colo. Ct. App. 2016).

*First*, Plaintiffs have not alleged conversion by any "primary wrongdoer," and thus cannot assert an aiding and abetting claim against Defendants Zhao and Armstrong.  *See Guevara v. Republica Del Peru*, 2008 WL 11333432, at *3 (S.D. Fla. Nov. 7, 2008).[35]

*Second*, Plaintiffs plead no supporting facts demonstrating that Defendants Zhao or Armstrong had knowledge of and provided substantial assistance to any supposed conversion. *Taubenfeld*, 324 So. 3d at 543-44.  The few allegations that even remotely relate to the alleged fund transfers at the heart of their conversion claim do not implicate Armstrong at all.  (AC ¶¶ 71-72, 94-96.)  And, consistent with their group pleading, Plaintiffs simply lump Zhao in with all of the "Binance" entities, without plausibly alleging his knowledge of or substantial assistance in the supposed conversion.  (*Id.* ¶¶ 427-32.)

*Third*, Plaintiffs' aiding and abetting claim against Defendant Zhao is also barred by the intra-corporate conspiracy doctrine.  In the same way that an employee cannot "conspire with his or her corporate principal or employer," *Mancinelli v. Davis*, 217 So. 3d 1034, 1037 (Fla. 4th DCA 2017), an employee cannot aid and abet its employer's commission of a tort.  "The concept of aiding and abetting involves two separate persons, one helping the other," and "since a corporation can act only through its employees, the element of concert is missing in the 'aiding and abetting' context." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 77-78 (1996).  That is exactly what Plaintiffs seek to do here, and their claim against Zhao fails as a result.

### 8.    Plaintiffs' Civil Conspiracy Claim Fails

Plaintiffs' civil conspiracy claim (Count Seven, AC ¶¶ 416-21) fails because "[c]ivil conspiracy is not an independent cause of action."  *Nance v. Maxwell Fed. Credit Union (MAX)*, 186 F.3d 1338, 1342 (11th Cir. 1999).  Instead, Plaintiffs must plead "an underlying wrong on which the conspiracy claim is based."  *Id.*  For the reasons above, they have not.  *See Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1317 (S.D. Fla. 2014).[36]

---

[35]  *Accord In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 786 (9th Cir. 2014); *Burbidge Mitchell & Gross v. Peters*, 622 F. App'x 749, 756 n.5 (10th Cir. 2015).

[36]  Because Plaintiffs do not specify which state's law applies to the civil conspiracy claim (AC ¶¶ 416-21), Movants presume Plaintiffs allege a civil conspiracy claim under Florida common law. Even if Plaintiff claims were rooted in California or Colorado law, the result would be the same as civil conspiracy is not independent cause of action in Colorado or California.  *See Carney v. Bank of Am. Corp.*, 2011 WL 13130901, at *2 (C.D. Cal. Oct. 20, 2011); *Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co.*, 641 F. Supp. 2d 1167, 1183 (D. Colo. 2009).

Plaintiffs' conspiracy claim against Zhao also fails because it is barred by the intra-corporate conspiracy doctrine.  (*See supra* Section III.D.7.)

In addition, Plaintiffs fail to adequately allege that they suffered any damages.  *Alhassid*, 60 F. Supp. 3d at 1316 (civil conspiracy requires a showing of "damage to plaintiff as a result of the acts done under the conspiracy").  Plaintiffs' conspiracy claim alleges they were damaged "in the amount of their lost investments."  (AC ¶ 421.)   What exactly those lost investments are remains a mystery; the Amended Complaint provides no information on any such investments, less so on any losses from such investments.  Plaintiffs must allege "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiffs simply list fourteen digital assets allegedly sold to them by "Binance"—which they define as at least Zhao, two BAM entities, and three Foreign Binance Entities (AC ¶ 1 n.1)—without identifying which of the fourteen digital assets or tokens each Plaintiff purchased or the Binance platform—Binance.US or Binance.com—on which the alleged transactions occurred.  (*See id.* ¶ 418.)  Plaintiffs' "broad and conclusory assertion" that they allegedly bought assets and suffered losses, without more "cannot be said to satisfy the pleading standards set forth in *Ashcroft* and *Twombly*." *Schwarz v. Bd. of Sup'rs*, 2012 WL 7681416, at *4 (M.D. Fla. Nov. 21, 2012).

## IV.   CONCLUSION

For the reasons set forth above, the Court should compel Plaintiffs to arbitrate their claims and stay this action pending the outcome of arbitration, or, in the alternative, dismiss the Amended Complaint.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(b)(2), Movants request oral argument on this motion.  Given the many different legal issues in this motion, Movants believe that an opportunity to address any questions the Court may have concerning these issues may assist the Court.  Movants estimate that ninety minutes will be a sufficient amount of time for oral argument.

## LOCAL RULE 7.1(A)(3) CERTIFICATION OF COUNSEL

Counsel for Movants have conferred by teleconference with counsel for Plaintiffs in a good faith effort to resolve the issues raised in this motion and have been unable to do so.

Submitted:  July 17, 2023

*/s/ Melanie M. Blunschi*
Melanie M. Blunschi (*pro hac vice*)
Email: melanie.blunschi@lw.com
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: 415-391-0600

Abid R. Qureshi (*pro hac vice*)
Email: abid.qureshi@lw.com
Latham & Watkins LLP
555 Eleventh Street NW Suite 1000
Washington, DC 20004
Tel: 202-637-2200

Martin B. Goldberg (FBN 827029)
Email: mgoldberg@lashgoldberg.com
Ian Michael Campa
Email: icampa@lashgoldberg.com
Lash & Goldberg
100 SE 2nd Street, Suite 1200
Miami, Florida 33131
Tel: 305-347-4040

*Attorneys for Defendant Changpeng Zhao*

*/s/ Adam Michael Foslid*
Adam Michael Foslid (FBN 827029)
Email: AFoslid@winston.com
Daniel Tramel Stabile (FBN 1010193)
Email: DStabile@winston.com
Gabriela Ana Plasencia
Email: GPlasencia@winston.com
Winston & Strawn
200 S Biscayne Blvd, Suite 2400
Miami, FL 33131
Tel: 305-910-0646

George Mastoris (*pro hac vice*)
Email: GMastoris@winston.com
Thania (Athanasia) Charmani (*pro hac vice*)
Email: ACharmani@winston.com
Winston & Strawn LLP

*/s/ Aaron S. Weiss*
Michael Celio (*pro hac vice*)
Email:  mcelio@gibsondunn.com
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304
Tel:  650-849-5300

Mary Beth Maloney (*pro hac vice*)
Email:  mmaloney@gibsondunn.com
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Tel:  212-351-4000

Aaron S. Weiss (FBN 48813)
Email:  aweiss@carltonfields.com
Carlton Fields, P.A.
700 NW 1st Avenue, Suite 1200
Miami, FL 33136
Tel:  305-530-0050

Benjamin M. Stoll (*pro hac vice*)
Email:  bstoll@carltonfields.com
Carlton Fields, P.A.
1025 Thomas Jefferson St., NW, Ste. 400 W.
Washington, DC 20007
Tel:  202-965-8160

*Attorneys for Defendant Binance Holdings Limited, Binance Holdings (IE) Limited, Binance (Services) Holdings Limited*

*/s/ Darren A. Heitner*
Darren Adam Heitner  (FBN 85956)
Email: Darren@HeitnerLegal.com
Heitner Legal, P.L.L.C.
215 Hendricks Isle
Fort Lauderdale, Florida 33301
Tel: 954-558-6999

*Attorneys for Defendant Ben Armstrong*

200 Park Avenue
New York, NY 10166
Tel: (212) 294-4623

*Attorneys for Defendants BAM Management*
*US Holdings Inc. and BAM Trading*
*Services Inc.*