**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 23-cv-21261-ALTMAN/Reid**

MICHAEL SIZEMORE, *et al.*,

*Plaintiffs*,

v.

CHANGPENG ZHAO, *et al.*,

*Defendants*.

**DEFENDANT PAXOS TRUST COMPANY, LLC'S MOTION TO**
**COMPEL ARBITRATION OR, IN THE ALTERNATIVE,**
**DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

BACKGROUND ...................................................................................................................1

ARGUMENT .....................................................................................................................3

I.      Plaintiffs' Claims Are Subject to Mandatory Arbitration.........................................3

II.     Plaintiffs Lack Article III Standing.........................................................................4

III.    Plaintiffs Have Not Pleaded Personal Jurisdiction over Paxos............................4

IV.     Plaintiffs Fail to State a Claim Against Paxos. ......................................................5

        A.      Plaintiffs' Shotgun Pleading Defies Basic Pleading Requirements.......................5

        B.      Plaintiffs' State Securities Claims Fail. ......................................................6

                1.      All of the Unregistered Securities and Fraud Claims Fail Against
                        Paxos Because No Plaintiff Alleges a Purchase of BUSD. .......................7

                2.      Plaintiffs Do Not State a Claim That Paxos Is Secondarily Liable
                        for the Sale of Allegedly Unregistered Securities........................................8

                3.      Plaintiffs Do Not State a Claim That Paxos Is Secondarily Liable
                        for State Securities Fraud..........................................................................9

                4.      Plaintiffs Do Not Allege That Paxos Acted as a "Broker-Dealer"
                        Under California Law. ................................................................................10

        C.      Plaintiffs' Unfair or Deceptive Practices Claims Fail..........................................10

        D.      The Aiding and Abetting Conversion Claim Fails. .............................................12

        E.      The Civil Conspiracy Claim Fails.........................................................................13

CONCLUSION...................................................................................................................15

### <u>TABLE OF AUTHORITIES</u>

## CASES

*Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043 (11th Cir. 2007) ..........................14

*Angell v. Allergan Sales, LLC*, 2019 WL 3958262 (M.D. Fla. Aug. 22, 2019) ..........................12

*AREI II Cases*, 216 Cal. App. 4th 1004 (2013) ..........................8

*Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127 (Fla. Dist. Ct. App. 2018)..........13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)..........................5

*Carney v. Bank of Am. Corp.*, 2011 WL 13130901 (C.D. Cal. Oct. 20, 2011) ..........................13

*Cartategui v. Walgreen Co.*, 2021 WL 1795345 (M.D. Fla. Feb. 1, 2021)..........................15

*Chen v. HEI Resources, Inc.*, 512 P.3d 120 (Colo. 2022) ..........................7

*Cohen v. CBR Sys., Inc.*, 625 F. Supp. 3d 997 (N.D. Cal. 2022)..........................3

*Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co.*, 373 F.3d 1100 (10th Cir. 2004) ..........................10

*Dhaliwal v. Singh*, 2013 WL 2664336 (E.D. Cal. June 12, 2013)..........................7

*Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307 (M.D. Fla. 2005), *aff'd* 185 F. App'x 823 (11th Cir. 2006)..........................8

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010)..........................11

*Epoch Int'l Partners, LLP v. Bigfoot Inc.*, 587 F. Supp. 3d 1214 (S.D. Fla. 2022)..........................11

*Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396 (S.D. Fla. 2014) ..........................3

*Guo v. Robl*, 2023 WL 2683473 (C.D. Cal. Mar. 2, 2023)..........................7

*Hines v. FiServ, Inc.*, 2010 WL 1249838 (M.D. Fla. Mar. 25, 2010)..........................8

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)..........................10

*Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co.*, 641 F. Supp. 2d 1167 (D. Colo. 2009)........13

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ..........................10

*Konopasek v. Ten Assocs., LLC*, 2018 WL 6177249 (C.D. Cal. Oct. 22, 2018) ..........................10

*Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904 (11th Cir. 2012)..........................12

*Lockwood v. Oliver*, 2022 WL 1522115 (M.D. Fla. May 13, 2022) ...............................................7

*Lubin v. Verint Americas Inc.*, 2021 WL 9080004 (S.D. Fla. June 21, 2021) ...............................3

*Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001) .......................................................6

*Markowitz v. Diversified Lending Grp.*, 2010 WL 11507662 (C.D. Cal. Feb. 26, 2010) ..............9

*Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084 (11th Cir. 2021) ........................................10, 11

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230 (11th Cir. 2008) ...............................................9

*Nelson v. Elway*, 908 P.2d 102 (Colo. 1995) ............................................................13

*Raimi v. Furlong*, 702 So. 2d 1273 (Fla. Dist. Ct. App. 1997)..........................................13

*Renfro v. Champion Petfoods USA, Inc*, 25 F.4th 1293 (10th Cir. 2022)...................................11

*Richter v. Wells Fargo Bank NA*, 2015 WL 163086 (M.D. Fla. Jan. 13, 2015).....................12, 13

*Rife v. Newell Brands, Inc.*, 632 F.Supp.3d 1276 (S.D. Fla. 2022) ..........................................12

*S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946) ..........................................................7

*Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125 (2020) ..........................................11

*Silver Hills Country Club v. Sobieski*, 55 Cal. 2d 811 (1961) ............................................7

*Smith v. REV Grp., Inc.*, 2023 WL 1861414 (M.D. Fla. Feb. 9, 2023) ..................................10

*Sonnenreich v. Philip Morris Inc.*, 929 F. Supp. 416 (S.D. Fla. 1996) ..................................14

*Sully v. Scottsdale Ins. Co.*, 533 F. Supp. 3d 1242 (S.D. Fla. 2021) .................................1

*Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206 (2023)........................................................12

*Two Moms and a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213 (D. Colo. 2012) ............................................................................................10

*Waite v. All Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018) .......................................4

*Walden v. Fiore*, 571 U.S. 277 (2014)....................................................................5

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313 (11th Cir. 2015)...............................5

**Statutes and Rules**

Cal. Corp. Code § 25110.................................................................................7

Cal. Corp. Code § 25210...............................................................................10

Cal. Corp. Code § 25401.................................................................................6

Cal. Corp. Code § 25501.5.............................................................................10

Cal. Corp. Code § 25504.1........................................................................7, 8, 9

Colo. Stat. § 11-51-501...............................................................................6, 9

Colo. Stat. § 11-51-604.............................................................................6, 7, 9

Fed. R. Civ. P. 8....................................................................................1, 6, 10

Fed. R. Civ. P. 9.................................................................................... *passim*

Fed. R. Civ. P. 12.........................................................................................1

Fla. Stat. § 517.07.......................................................................................7

Fla. Stat. § 517.211...................................................................................7, 8

Fla. Stat. § 620.8202....................................................................................8

Pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), 12(b)(2), and 12(b)(6), Defendant Paxos Trust Company, LLC ("Paxos"), hereby moves to compel arbitration of the asserted claims or, in the alternative, dismiss the First Amended Class Action Complaint ("Amended Complaint" or "AC") (ECF No. 100).

Plaintiffs' claims against Paxos should be arbitrated for the same reason that the claims are inadequately pleaded.  The Amended Complaint time and again lumps Paxos together with the other Defendants and contends in conclusory group allegations that "Defendants" committed various torts, including conspiracy.  Having asserted that Paxos is acting in concert with Defendants with whom Plaintiffs are contractually bound to arbitrate their claims, Plaintiffs are equitably estopped from avoiding arbitration of any alleged claims against Paxos.  *See* Part I.

Apart from grouping Paxos together with other Defendants, Plaintiffs have little to say about the company.  Paxos is mentioned by name in only *six* of the 358 paragraphs of the Amended Complaint that precede the counts.  Plaintiffs purport to bring Paxos into the case because of its business agreement to issue a Binance-branded stablecoin, BUSD, which was sold and continues to be redeemable for one U.S. dollar.  But the Amended Complaint fails to allege that any Plaintiff purchased BUSD, let alone from Paxos; that Paxos sold any digital asset to Plaintiffs; that any Plaintiff lost money in connection with the purchase of BUSD (which is not possible); or that Paxos made any misleading statements with regards to the sale of BUSD.  Without pleading that any Plaintiff (let alone a Florida-based Plaintiff) purchased, much less lost money on, BUSD, Plaintiffs do not have Article III standing to pursue a claim against Paxos, *see* Part II; do not establish this Court's personal jurisdiction over Paxos, *see* Part III; and fail to state a claim against Paxos, *see* Part IV.

For these reasons and the reasons described herein, the Court should compel arbitration of all claims, or, in the alternative, dismiss the Amended Complaint against Paxos.

## BACKGROUND[1]

Paxos Trust Company, LLC ("Paxos") is a New York limited purpose trust company supervised and regulated by the New York State Department of Financial Services ("NYDFS"). AC ¶¶ 31, 136.  In September 2019, Paxos entered into a "Stablecoin as a Service" agreement ("Agreement") with non-party Binance (Switzerland) AG.  *Id.*  ¶¶ 134.  The Agreement

---

[1] Paxos accepts as true the well-pleaded factual allegations in the Amended Complaint, solely for purposes of this motion. *Sully v. Scottsdale Ins. Co.*, 533 F. Supp. 3d 1242, 1247 (S.D. Fla. 2021).

contemplated a new digital asset called the Binance USD ("BUSD") token, fully backed with cash and cash-equivalent reserves and "redeemable on a 1:1 basis for U.S. dollars." *Id.* ¶ 134. Pursuant to the Agreement, Binance (Switzerland) AG agreed to "list, market, and promote" BUSD and Paxos agreed to invest the reserves backing BUSD, with the parties splitting the net interest revenue earned on those reserves. *Id.* A few months later, Paxos entered another agreement with Defendant BAM Trading Services Inc. ("Binance.US") whereby Paxos "provided certain services with respect to BUSD purchases and sales on the Binance.US platform." *Id.* ¶ 31. NYDFS approved of and supervised the issuance of BUSD "subject to anti-money laundering, anti-fraud, and consumer protection laws." *Id.* ¶ 136.

Defendant Binance Holdings Limited ("Binance.com") operates a platform on which users can purchase and trade a variety of digital assets from each other and from Binance.com itself. *Id.* ¶¶ 1, 46-47, 66. Although the Amended Complaint alleges that Binance[2] periodically marketed BUSD through promotions rewarding BUSD holders with benefits, financial incentives, and opportunities to earn more BUSD, *id.* ¶¶ 139-41, Paxos is not alleged to have promoted BUSD as an investment on which to make a profit.

After Paxos began issuing BUSD, it received "funds that appear to relate to the issuance of BUSD" from an account under the name Merit Peak. *Id.* ¶ 78. These funds purportedly were "customer assets" originally sitting in Binance-related bank accounts, but the Amended Complaint does not allege that Plaintiffs' assets were transferred, that Paxos knew of the funds' origin, or that Paxos knew anyone other than Merit Peak had a possessory interest in the funds. *Id.*

On February 21, 2023, NYDFS publicly announced that it had ordered Paxos to stop minting BUSD "as a result of several unresolved issues related to [Paxos's] oversight of its relationship with Binance." *Id.* ¶ 136. Paxos immediately complied with NYDFS's order and ceased issuing BUSD. *Id.* ¶ 31. Paxos, however, continues to allow those who had already purchased BUSD to redeem their assets until at least February 2024. *Id.* ¶ 136.

On March 31, 2023, Plaintiffs filed a class action complaint against Defendants Zhao, Binance.com, Binance Holdings (IE) Limited, Binance (Services) Holdings Limited, Binance.US,

---

[2] The Amended Complaint generally does not distinguish between the various Binance- and BAM-affiliated corporate entities, instead lumping them together as "Binance." *See* AC n.1. In repeating the Amended Complaint's use of the term "Binance" in this motion, Paxos does not endorse that grouping, but has no basis on which to identify the particular entity or entities to which the Amended Complaint refers.

Jimmy Butler, Graham Stephan,[3] and Ben Armstrong.  ECF No. 1.  They later amended their complaint to add Paxos and BAM Management U.S. Holdings, Inc., as Defendants.  ECF No. 100. Of the four named Plaintiffs, only one, Plaintiff Gordon Lewis, identifies any digital asset that he allegedly purchased. AC ¶ 23.  It is not BUSD; Lewis apparently purchased BNB tokens from the Crypto.com platform.  *Id.*  No Plaintiff claims to have purchased BUSD from any Defendant, or any digital asset from Paxos.

The majority of Defendants filed a joint motion to compel arbitration or, alternatively, to dismiss, on July 17, 2023.  ECF No. 132 ("Co-Defendants' Motion").  All Defendants simultaneously filed a motion to stay discovery and institute a protective order pending the resolution of the other motion.  ECF No. 133.  This Court granted Paxos's (and Butler's) motion for leave to file a separate motion to dismiss.  ECF No. 131 (Paxos); ECF No. 110 (Butler).

## ARGUMENT

### I.   Plaintiffs' Claims Are Subject to Mandatory Arbitration.

For the reasons described in Co-Defendants' Motion, which Paxos adopts and incorporates, the entirety of this dispute is subject to mandatory, binding arbitration.  Co-Defendants' Mot. Section III.A.  This includes the claims against Paxos.  When a complaint alleges "concerted misconduct" between a non-signatory and a signatory to an arbitration agreement, the non-signatory also may enforce the agreement pursuant to the doctrine of equitable estoppel. *Lubin v. Verint Americas Inc.*, 2021 WL 9080004, at *4 (S.D. Fla. June 21, 2021) (enforcing arbitration agreement under Florida law); *Cohen v. CBR Sys., Inc.*, 625 F. Supp. 3d 997, 1005–06 (N.D. Cal. 2022) (enforcing arbitration agreement under California law); Co-Defendants' Mot. Section III.A.2.  Here, the Amended Complaint asserts that Paxos materially assisted legal violations committed by, and was involved in a conspiracy with, "Binance," which as defined by the Amended Complaint includes Binance.US, the signatory to the arbitration agreements with Plaintiffs. *E.g.*, AC ¶¶ 366, 380-81, 384, 386, 404, 417-21, 431 & n.1.  This is precisely the type of alleged "concerted misconduct" that courts find allows a non-signatory to invoke an arbitration clause. *See Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1403 (S.D. Fla. 2014) (collecting cases); Co-Defendants' Mot. Section III.A.2.  Accordingly, the Court should compel arbitration as to all claims, including those against Paxos.

---

[3] Plaintiffs later voluntarily dismissed Stephan from this action.  ECF No. 98.

## II.     Plaintiffs Lack Article III Standing.

Paxos also adopts and incorporates the arguments in Co-Defendants' Motion that Plaintiffs lack Article III standing to pursue their claims.  *See* Co-Defendants' Mot. Section III.B.  With respect to Paxos in particular, Plaintiffs do not allege they suffered any losses in connection with Paxos's stablecoin, BUSD.  The Amended Complaint does not allege that any Plaintiff purchased BUSD from anyone, or anything from Paxos.

Accordingly, Plaintiffs cannot have any injury traceable to Paxos.  Indeed, Plaintiffs' own allegations render it impossible that they (or anyone else) has an injury traceable to Paxos arising from the purchase of BUSD.  Plaintiffs' few allegations about Paxos describe BUSD as a stablecoin "pegged to the U.S. Dollar," "backed with cash (and cash equivalent) reserves and redeemable on a 1:1 basis for U.S. dollars."  AC ¶¶ 87, 134.  As Plaintiffs describe, after Paxos stopped issuing BUSD, it announced that "the stablecoin will remain 'fully supported' and 'redeemable' by Paxos through 'at least' February 2024."  AC ¶ 137.  In other words, any past purchaser of BUSD has been and continues to be able to redeem its BUSD for dollars on a 1:1 basis.  Plaintiffs' allegations thus render impossible any injury to any BUSD purchaser (which Plaintiffs do not allege they are).

## III.    Plaintiffs Have Not Pleaded Personal Jurisdiction over Paxos.

The other Foreign Defendants outline the legal standard for what Plaintiffs must allege to establish this Court's jurisdiction over out of state defendants; Paxos adopts those arguments and incorporates them here.  Co-Defendants' Mot. Section III.C.  Plaintiffs fail to meet their burden to plead facts establishing personal jurisdiction over Paxos.

First, there is no basis to exercise general jurisdiction.  Paxos is a New York limited purpose trust company, AC ¶ 31, and Plaintiffs do not allege that Paxos has a principal place of business in Florida or that its affiliations with Florida "are so continuous and systematic as to render [Paxos] essentially at home in the forum state." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018); Co-Defendants' Mot. 18-19.

Second, there is no basis to exercise specific jurisdiction in connection with these claims.  As Co-Defendants explain, conclusory group allegations that all Defendants "intentionally availed themselves of the Florida consumer market" or "commit[ed] a tortious act within the state of Florida," AC ¶ 35, do not suffice, Co-Defendants' Mot. 19.   Personal jurisdiction must be

established with respect to each defendant, on the basis of that defendant's contacts with the forum. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The Amended Complaint falls far short of alleging that Paxos had suit-related contacts with Florida necessary to establish specific jurisdiction consistent with Florida's long-arm statute and the Due Process Clause. *See* Co-Defendants' Mot. 19-23; *Walden*, 571 U.S. at 284. Plaintiffs do not allege that any one of them purchased BUSD from Paxos in Florida (or at all), or that any Florida-based Plaintiff somehow lost money on BUSD. In fact, the Amended Complaint does not even mention the words "Paxos" or "BUSD" in the same paragraph as "Florida." At most, the Amended Complaint alleges that Paxos entered into a contract with Binance.US, a Florida company. AC ¶¶ 30-31. But simply contracting with a Florida-based party does not subject a defendant to personal jurisdiction in Florida courts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). The Amended Complaint pleads no facts suggesting that Plaintiffs' claims arise out of or relate to any conduct of Paxos's directed at Florida.

Nor can Plaintiffs establish personal jurisdiction through their allegations of a conspiracy involving Paxos. As described in Co-Defendants' Motion and below, the Amended Complaint does not state a viable claim for conspiracy liability against Paxos. *See infra* Section IV.E; Co-Defendants' Mot. 22-23 & Section III.D.8. Further, it does not adequately allege that any purported co-conspirator committed an act in Florida in furtherance of such a conspiracy. *See* Co-Defendants' Mot. 22-23.

## IV.    Plaintiffs Fail to State a Claim Against Paxos.

The Court need not reach whether the Amended Complaint states a claim, because the threshold defects described above are each independently fatal to Plaintiffs' claims proceeding in this Court. But if the Court were to look further, the Amended Complaint is deficient on all counts.

### A.    Plaintiffs' Shotgun Pleading Defies Basic Pleading Requirements.

The Eleventh Circuit has been battling "shotgun pleadings" like the Amended Complaint for almost forty years, "and there is no ceasefire in sight." *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). For the reasons described in Co-Defendants' Motion, the Amended Complaint fails to provide Paxos adequate notice of the claims against it, as

required by Rule 8(a), or to plead with particularity the facts supporting its fraud-based claims,[4] as required by Rule 9(b).  *See* Co-Defendants' Mot. Section III.D.1.

Plaintiffs' Amended Complaint is a "textbook example" of a shotgun pleading, Co-Defendants' Mot. 24, and this is particularly true with respect to claims asserted against Paxos. Aside from the counts, Paxos is mentioned in only six paragraphs of the Amended Complaint, where Paxos is described as a contractual counterparty to certain Binance entities with respect to one particular digital asset, BUSD.  AC ¶¶ 31, 78, 134, 136, 137, 196.  Paxos is not, and is not alleged to be, a member of the Binance or BAM corporate families, or a Binance or BAM affiliate. AC n.1.  Nor is Paxos alleged to be a "promoter" of Binance.  By lumping Paxos in with all the other Defendants, all of whom are alleged to have engaged in very different types of conduct, the Amended Complaint makes it impossible to discern the theories against Paxos.  This is just "the type of complaint that [the Eleventh Circuit] ha[s] criticized time and again," *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001), and it should fare no better here.

## B.     Plaintiffs' State Securities Claims Fail.

The Amended Complaint does not allege that Paxos itself sold digital assets or made misleading statements to any Plaintiff.  Rather, Plaintiffs allege aiding-and-abetting theories against Paxos: that Paxos materially assisted Binance's sale of allegedly unregistered securities under Florida and California law (Counts One & Three) and fraud in the sale of securities under California and Colorado law (Counts Three & Five).  *See* AC ¶¶ 359-66, 377-90, 397-407.[5] Plaintiffs also allege that Paxos acted as an unauthorized broker-dealer and induced Binance to sell alleged securities to Plaintiffs under California law (Count Three).  *Id.* ¶¶ 383-84.  All of these claims fail at the threshold because the Amended Complaint does not allege that any Plaintiff

---

[4] Counts Two (as to misleading customers), Three (as to secondary liability for violations of Cal. Corp. Code § 25401), Four (as to misleading customers), Five (as to secondary liability for violations of Colo. Stat. § 11-51-501), Six, and Seven (as to conspiracy to commit fraud).

[5] Plaintiffs do not, and cannot, contend that Paxos is secondarily liable under Colorado law for Binance's alleged sale of unregistered securities, because Colorado does not provide such a cause of action.  *See* AC ¶¶ 399-402; Colo. Stat. § 11-51-604(1).  Similarly, Plaintiffs do not contend that Paxos is secondarily liable under Florida law for Binance's alleged misstatements or omissions.  AC ¶¶ 359-366.

purchased BUSD, the only digital asset with any connection to Paxos.  *See id.* ¶¶ 31, 131-41.[6] Even if there had been such a purchase, the Amended Complaint fails to plead that Paxos was sufficiently involved so as to trigger secondary liability under any of the relevant state statutes or qualify Paxos as a "broker-dealer" under California law.

### 1.   All of the Unregistered Securities and Fraud Claims Fail Against Paxos Because No Plaintiff Alleges a Purchase of BUSD.

Because the Amended Complaint does not connect Paxos to any digital asset aside from BUSD, any plausible claim for secondary liability would have to arise out of a primary violation related to the sale of BUSD.  *See* Cal. Corp. Code § 25504.1 (requiring primary violation); Colo. Stat. § 11-51-604(5)(c) (same); Fla. Stat. § 517.211 (same).  As Co-Defendants describe in their Motion, Plaintiffs do not properly allege any primary violations for the sale of any unregistered securities or securities fraud, Co-Defendants' Mot. Sections III.D.2-3, and Plaintiffs certainly do not allege any primary violation with respect to the sale of BUSD.

Here again, the Amended Complaint's complete failure to plead that any Plaintiff purchased BUSD dooms the claims from the start.  Plaintiffs' repeated assertions that Binance sold and offered to sell a laundry list of digital assets, of which BUSD is one, (*e.g.*, AC ¶¶ 380, 386, 404) do not plausibly suggest sales of BUSD *to Plaintiffs* so as to support a primary violation.  *See Dhaliwal v. Singh*, 2013 WL 2664336, at *14 (E.D. Cal. June 12, 2013) (finding a claim was "vague and conclusory" because "[t]he complaint fail[ed] to identify adequately the securities transactions at issue").[7]  Paxos cannot be secondarily liable for a sale or misleading statements in connection with a sale that Plaintiffs have not alleged occurred.  *See Guo v. Robl*, 2023 WL 2683473, at *6 (C.D. Cal. Mar. 2, 2023).

---

[6] Plaintiffs claim that BUSD is an "investment contract and, therefore, . . . a security."  *See* AC ¶ 133.  Paxos strongly disagrees, but the Court need not reach this issue to dismiss Plaintiffs' claims against Paxos.  Should the case proceed, Paxos will be prepared to demonstrate that BUSD is not a security under either the *Howey* test (adopted by Florida, Colorado, and California) or the risk capital test (an alternative way of determining what is a security in California).  *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946); *Chen v. HEI Resources, Inc.*, 512 P.3d 120, 123 (Colo. 2022); *Lockwood v. Oliver*, 2022 WL 1522115, at *4 (M.D. Fla. May 13, 2022); *Silver Hills Country Club v. Sobieski*, 55 Cal. 2d 811, 815 (1961).

[7] To plead a primary violation for sale of unregistered securities, Plaintiffs also would have to plead that sales to Plaintiffs occurred within the relevant state, which the Amended Complaint does not even attempt to do.  *See* Fla. Stat. § 517.07; Cal. Corp. Code § 25110.

### 2.    Plaintiffs Do Not State a Claim That Paxos Is Secondarily Liable for the Sale of Allegedly Unregistered Securities.

Plaintiffs also fail to allege that Paxos was sufficiently involved in Binance's alleged sale of unregistered securities so as to trigger secondary liability under Florida or California law.

*Florida*.  Florida's securities laws extend liability to "every director, officer, partner, or agent of or for the seller . . . [who] has personally participated or aided in making the sale" of unregistered securities.  *See* Fla. Stat. § 517.211.  But to state a claim under this provision, Plaintiffs must plead both that Paxos was Binance's "director, officer, partner, or agent," and that Paxos engaged in "some activity in inducing the purchaser to invest."  *Hines v. FiServ, Inc.*, 2010 WL 1249838, at *6 (M.D. Fla. Mar. 25, 2010) (quoting *Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005), *aff'd* 185 F. App'x 823 (11th Cir. 2006)).  The Amended Complaint fails on both counts.

First, the Amended Complaint pleads no factual allegations to support its conclusory statement that Paxos and other Defendants "are directors, officers, partners, and/or agents of Binance."  *See* AC ¶ 365.  Plaintiffs assert that "Paxos issued [BUSD] in partnership with Binance.US," and that "Binance.US entered into a partnership with Paxos," *id.* ¶ 31, but a mere reference to "partnership" to describe a business arrangement between two independent legal entities does not convert them into "partners" under Florida law, *see* Fla. Stat. § 620.8202.

Second, the Amended Complaint does not set forth any allegations suggesting that Paxos acted to "induce" a Plaintiff to purchase any digital asset from Binance.  At most, the Amended Complaint alleges that Paxos held supposed customer funds backing BUSD, *see* AC ¶ 134, but it does not suggest that Plaintiffs knew of this role; in any event, such activity could hardly be called "actively and directly . . . influenc[ing] or induc[ing]" Plaintiffs to purchase BUSD from Binance, *see Dillon*, 385 F. Supp. 2d at 1311.

*California*.  California extends secondary liability to "[a]ny person who materially assists in" a sale of unregistered securities "with intent to deceive or defraud."[8]  *See* Cal. Corp. Code § 25504.1; *AREI II Cases*, 216 Cal. App. 4th 1004, 1014 (2013).  The only sales that Paxos could have materially assisted are sales of BUSD, and Plaintiffs fail to plead that they were parties to any.  As to "intent to deceive or defraud," that element requires "actual knowledge" of the

---

[8] Plaintiffs contend that "intent to deceive or defraud" is not required, but they offer no legal authority to support their position, which defies the plain statutory text.  *See* AC n.47.

underlying violations of securities law.  *Markowitz v. Diversified Lending Grp.*, 2010 WL 11507662, at *4 (C.D. Cal. Feb. 26, 2010).  Plaintiffs do not allege any facts to support the inference that Paxos had "actual knowledge" of Binance's alleged violations of state securities law.  To the contrary, the Amended Complaint alleges that Paxos believed it was operating lawfully, stating that Paxos was authorized and supervised by the NYDFS and requested a compliance audit of Binance.  *See* AC ¶¶ 31, 136, 196.

### 3. Plaintiffs Do Not State a Claim That Paxos Is Secondarily Liable for State Securities Fraud.

Plaintiffs' securities fraud claims in Counts Three (California) and Five (Colorado) are subject to the Rule 9(b) heightened pleading requirements.  *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).  To the extent that Plaintiffs seek to hold Paxos secondarily liable for allegedly material misstatements or omissions by Binance, *see* AC ¶¶ 388-89, Plaintiffs have not alleged "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud," *Mizzaro*, 544 F.3d at 1237 (11th Cir. 2008) (internal quotation marks omitted).  At best, the supposed "misrepresentations and omissions" on which Plaintiffs purport to base their claims as to *any* Defendant are vague and unspecified "misrepresentations and omissions regarding the functionality of the Binance platforms, and/or in receiving secret undisclosed compensation for the promotion of the Binance platform." AC ¶ 357.  The Amended Complaint does not identify the statements or plead any facts plausibly connecting Paxos to such statements or omissions, let alone allegations that satisfy Rule 9(b).

Plaintiffs also have failed to allege with specificity that Paxos knew of or how Paxos materially assisted Binance's alleged fraud.  Like California, *see supra* Section IV.B.2; Cal. Corp. Code § 25504.1, Colorado allows secondary liability only against one who "knows that another person" has committed fraud "in connection with the offer, sale, or purchase of any security" and "gives substantial assistance to such conduct," Colo. Stat. §§ 11-51-501, 11-51-604(5)(c).  Here, Plaintiffs fail to adequately allege any of those requirements.  Plaintiffs do not even plead the conclusory allegation that Paxos knew of any false or misleading statement, instead contending that "Defendants . . . had knowledge of . . . *or were negligent* in failing to investigate and discover" false or misleading statements.  AC ¶ 388.  And Plaintiffs do not plead any *facts* supporting the

inference that Paxos knew Binance was making allegedly false or misleading statements to customers; that Paxos assisted Binance in making such statements; or that Paxos had any intent or understanding of its (non-existent) role in misleading Binance's customers.

### 4. Plaintiffs Do Not Allege That Paxos Acted as a "Broker-Dealer" Under California Law.

Plaintiffs make cursory allegations that Paxos (along with the other Defendants who are not Binance or BAM corporate entities) violated California Corporations Code § 25210(b) by "encouraging Binance to offer and sell" a host of digital assets, including BUSD, "to Plaintiff and Class members . . . even though Binance was not licensed" as a broker-dealer. AC ¶¶ 383-84. That provision bars broker-dealers from effecting transactions or inducing or attempting to induce the purchase or sale of securities without state certification. Cal. Corp. Code § 25210(a); *see also id.* § 25501.5. Plaintiffs, however, "do[] not allege facts indicating that [Paxos] acted as [an] investment adviser[] or broker-dealer[]." *Konopasek v. Ten Assocs., LLC*, 2018 WL 6177249, at *5 (C.D. Cal. Oct. 22, 2018). Paxos is not "alleged to have advised others on the purchase or sale of securities," or "to have engaged in any securities transactions as [a] broker-dealer[]." *Id.* As a result, the claim under §§ 25210(b) & 25501.5 fails as a matter of law.

### C. Plaintiffs' Unfair or Deceptive Practices Claims Fail.

Plaintiffs also allege violations of the Florida Deceptive and Unfair Trade Practices Act (Claim 2), the California Unfair Competition Law (Claim 4), and the Colorado Consumer Protection Act (Claim 6). AC ¶¶ 367-76, 391-96, 408-15. To state a claim under any of these laws, Plaintiffs must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages" or injury. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) (Florida); *see In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (2009) (California); *Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co.*, 373 F.3d 1100, 1112 (10th Cir. 2004) (Colorado).[9] For the reasons explained in Co-Defendants' Motion, which Paxos adopts and incorporates, Plaintiffs' consumer protection claims are deficient. Co-Defendants' Mot. Sections III.D.5-6; *see*

---

[9] To the extent they are grounded in allegedly misleading customers, these claims sound in fraud and are subject to Rule 9(b)'s heightened pleading requirements, *see Smith v. REV Grp., Inc.*, 2023 WL 1861414, at *4 (M.D. Fla. Feb. 9, 2023); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Two Moms and a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012), but would also fail under Rule 8(a).

*also* Butler Br. at 12-18.  The claims against Paxos are especially weak; Plaintiffs fail to plead any of the three elements.

*First*, Plaintiffs fail to identify any "deceptive act or unfair practice" by Paxos.  Under each act, "[a] deceptive act or practice is one that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Epoch Int'l Partners, LLP v. Bigfoot Inc.*, 587 F. Supp. 3d 1214, 1219 (S.D. Fla. 2022) (Florida) (internal quotation marks omitted).[10]  In Florida, an unfair practice "is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *Marrache*, 17 F.4th at 1098 (internal quotation marks omitted), and in California, an "unfair" act is one that is "tethered to an[] underlying constitutional, statutory or regulatory provision, or that [] threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law," *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010).[11]

Plaintiffs do not allege Paxos made any deceptive misstatements or omissions.  Nor do Plaintiffs allege that Paxos engaged in unfair trade practices.  Plaintiffs' six Paxos-related allegations amount to Paxos having "issued in partnership with Binance.US the crypto asset BUSD, which was approved by and under the supervision of the New York Department of Financial Services."  AC ¶ 31; *see also id.* ¶¶ 78, 134, 136, 137, 196.  Nothing about that was deceptive, unlawful, or unfair.

*Second*, Plaintiffs have failed to allege that they were harmed by Paxos—or harmed at all. As explained above, Plaintiffs have not alleged that they actually purchased BUSD, or that they were harmed because of such a purchase.  *See supra*, Section II; *see also* Co-Defendants' Mot. Section III.B.  BUSD was promised to be worth a dollar; BUSD was worth a dollar the entire time Paxos issued it; and BUSD is worth a dollar today.  AC ¶¶ 134, 137.  Accordingly, there is no "difference in the market value of [BUSD] in the condition in which it was delivered and its market

---

[10]  The California Unfair Competition law similarly prohibits "fraudulent" business acts and practices, which are ones that are "likely to deceive" members of the public.  *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1135 (2020).  And "a deceptive trade practice under the [Colorado Consumer Protection Act] requires *a false statement of fact* that either induces the recipient to act or has the capacity to deceive the recipient."  *Renfro v. Champion Petfoods USA, Inc*, 25 F.4th 1293, 1301 (10th Cir. 2022) (internal quotation marks omitted).

[11]  Plaintiffs do not allege that Defendants engaged in an "unfair" trade practice in violation of the Colorado Consumer Protection Act.  AC ¶ 410 (emphasis added).

value in the condition in which it should have been delivered," and Plaintiffs cannot allege actual damages.  *See Rife v. Newell Brands, Inc.*, 632 F.Supp.3d 1276, 1314 (S.D. Fla. 2022) (Altman, J.) (internal quotation marks omitted).

*Third*, because Plaintiffs have failed to allege either that Paxos committed a deceptive or unfair practice or that they were harmed, they have failed to allege a causal connection between Paxos's conduct and their alleged harms.

### D.       The Aiding and Abetting Conversion Claim Fails.

The Amended Complaint fails to state a claim that Paxos aided and abetted any conversion of Plaintiffs' property.  As the United States Supreme Court recently explained, "courts have long recognized the need to cabin aiding-and-abetting liability to cases of truly culpable conduct." *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1221 (2023).  Plaintiffs come nowhere close.

To state an aiding and abetting claim, Plaintiffs must allege "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abett[or]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor."  *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012); *see* Co-Defendants' Mot. Section III.D.7 & n.34.  Plaintiffs do not adequately allege conversion by any "primary wrongdoer," so their aiding and abetting claim also must fail.  Co-Defendants' Mot. Section III.D.7.

In addition, Plaintiffs have not pleaded facts to plausibly allege that Paxos either knew of or substantially assisted in any supposed conversion.  Plaintiffs must plead actual knowledge of the underlying wrongdoing; "allegations which demonstrate merely constructive knowledge, recklessness or gross negligence cannot satisfy the 'knowledge' element of an aiding and abetting claim under Florida law."  *Angell v. Allergan Sales, LLC*, 2019 WL 3958262, at *9 (M.D. Fla. Aug. 22, 2019).  The defendant also must provide "substantial assistance," which "occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the [underlying violation] to occur." *Richter v. Wells Fargo Bank NA*, 2015 WL 163086, at *3 (M.D. Fla. Jan. 13, 2015) (internal quotation marks omitted).  Plaintiffs allege neither with respect to Paxos.

The only allegation in the Amended Complaint possibly related to a purported aiding and abetting conversion claim against Paxos is that "Binance entities" sent "customer assets" to an "intermediary," Merit Peak, "which transferred to Paxos all of those funds that appear to relate to

the issuance of BUSD." AC ¶ 78. But the Amended Complaint does not allege that (i) any of the transferred funds were Plaintiffs'; (ii) Paxos actually knew the funds Merit Peak transferred were "customer funds" at all, let alone Plaintiffs' funds; (iii) Paxos took any action to assist the unspecified "Binance entities" in their movement of funds; or (iv) Paxos did anything outside of its ordinary course of business. *See id.* The Amended Complaint merely alleges that Paxos received funds transferred from *its* customer, Merit Peak. *Id.* And even if such passive receipt could somehow qualify as substantial assistance in another context, here the alleged conversion "was already complete" when the funds were transferred to Merit Peak. *Richter*, 2015 WL 163086, at *4. Any actions taken afterwards "did not aid and abet the conversion." *Id.*

Finally, the Amended Complaint's general allegations that Paxos (and others) "acquired knowledge of Binance's conversion of Plaintiffs' funds" "based on [its] knowledge of Binance's operations obtained through due diligence, ongoing monitoring, and partnership," AC ¶ 430, do not save its claim. Those allegations do not meet the requirements of Rule 9(b), and fail to describe any "monitoring" or "due diligence" by Paxos that supports a plausible inference that Paxos actually knew that the funds transferred from Merit Peak were converted customer funds. Indeed, the only specific factual allegation in Plaintiffs' Amended Complaint regarding Paxos's knowledge is that Binance misled Paxos regarding its compliance program. *Id.* ¶ 196.

### E.   The Civil Conspiracy Claim Fails.

Plaintiffs' civil conspiracy claims also fail. Under Florida law, "[a] civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997). It is not an independent, freestanding cause of action, but rather "requires an actionable underlying tort or wrong." *Id.*; *see also Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. Dist. Ct. App. 2018); Co-Defendants' Mot. Section III.D.8.[12] Reading the Amended Complaint in the light most favorable to the Plaintiffs, Plaintiffs attempt to ground their civil conspiracy count in two underlying torts:

---

[12] Although the Amended Complaint does not allege the governing law, California and Colorado set similar requirements. *See Carney v. Bank of Am. Corp.*, 2011 WL 13130901, at *2 (C.D. Cal. Oct. 20, 2011); *Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co.*, 641 F. Supp. 2d 1167, 1183-84 (D. Colo. 2009); *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995); *see also* Co-Defendants' Mot. 29 n.36.

misrepresentation and omissions made to Plaintiffs, and the sale of allegedly unregistered securities. AC ¶ 419. Like Plaintiffs' other claims, this claim fails for multiple reasons.

As an initial matter, as described above and in Co-Defendants' Motion, the Amended Complaint fails to properly allege any underlying tort. With respect to a conspiracy to commit fraud—which must be pleaded with particularity, *see Sonnenreich v. Philip Morris Inc.*, 929 F. Supp. 416, 420 (S.D. Fla. 1996)—the Amended Complaint does not allege facts suggesting Paxos made any misrepresentations or omissions at all. And for the reasons described in Co-Defendants' Motion, Plaintiffs do not adequately allege any actionable tort for alleged misrepresentations or omissions made by the other Defendants. Co-Defendants' Mot. Sections III.D.3. Similarly, the Amended Complaint does not state a claim either that Paxos sold any allegedly unregistered securities to Plaintiffs, or that the other Defendants did. Co-Defendants' Mot. Section III.D.2. The Court's inquiry can end here: without an adequately pleaded underlying tort, Plaintiffs' conspiracy claim must be dismissed. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) ("[A] claim that is found not to be actionable cannot serve as the basis for a conspiracy claim.").

Even if the Court were to look further, Plaintiffs' claim would fail. Plaintiffs do not allege any facts to support an inference that Paxos reached any agreements related to misleading statements, nor do Plaintiffs allege that Paxos's agreements relating to the sale of BUSD caused any Plaintiff damage.

The only agreements, formal or informal, that the Amended Complaint mentions involving Paxos are (1) the "Stablecoin as a Service Agreement," under which Paxos issued BUSD and invested the reserves backing it, while a Binance affiliate would "list, market, and promote BUSD," AC ¶ 134; *see also id.* ¶ 31, and (2) a vague "partnership" with Binance.US "whereby Paxos provided certain services with respect to BUSD purchases and sales on the Binance.US platform," *id*. ¶ 31. These bare allegations fail to support a plausible inference that Paxos reached an agreement with any other Defendant regarding any alleged misrepresentations or omissions made to Plaintiffs, and fall far short of the particularity requirements required by Rule 9(b) for such a claim based in fraud. The Amended Complaint does not allege that Paxos had any involvement with Binance's marketing or promotion of BUSD (or any other of the digital assets listed in the Amended Complaint), or reached any agreement regarding the statements Plaintiffs

now contend were misleading.  Indeed, the allegations indicate that the marketing and promotion of BUSD was the responsibility of Binance entities, not a joint effort.

At most, the Amended Complaint alleges that Paxos and a Binance affiliate entered into an agreement related to the sale of BUSD.  *See id.* ¶¶ 31, 134.  Even if BUSD were an unregistered security—which it is not—Plaintiffs fail to plead any damages in connection with such sales, which is a required element to state a civil conspiracy claim.  As described above, the Amended Complaint does not allege that any Plaintiff purchased BUSD, or lost money in connection with the purchase of BUSD (or, indeed, any digital asset).  For BUSD in particular, such allegations would be inconsistent with the fact that BUSD is "pegged to the U.S. dollar," *id.* ¶ 87, and continues to this day to be redeemable "on a 1:1 basis for U.S. dollars," *id.* ¶¶ 134, 137.  The Amended Complaint's vague and generalized assertion of "lost investments," *id.* ¶ 421, does not suffice, as it provides no basis upon which to plausibly conclude that any Plaintiff suffered any damage resulting from the asserted underlying tort of allegedly unregistered sales of BUSD.  *See Cartategui v. Walgreen Co.*, 2021 WL 1795345, at *3 (M.D. Fla. Feb. 1, 2021) (report & recommendation).  Without properly alleged damages, Plaintiffs cannot state a claim.

## CONCLUSION

For all of the reasons described above and in Co-Defendants' Motion, the Court should compel arbitration of all claims or, in the alternative, dismiss the Amended Complaint against Paxos.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(b)(2), Paxos requests oral argument on this motion.  Given the many different legal issues in this motion, Paxos believes that an opportunity to address any questions the Court may have concerning these issues may assist the Court.  Paxos estimates that 30 minutes will be a sufficient amount of time for oral argument on its motions.

## CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for Paxos has conferred with counsel for Plaintiffs in a good faith effort to resolve the issues raised in this motion and have been unable to do so.

Dated:  July 24, 2023

Respectfully submitted,

MARCUS NEIMAN RASHBAUM
& PINEIRO LLP

One Biscayne Tower
2 S. Biscayne Blvd., Ste. 2530
Miami, Florida 33131
(305) 400-4260

By: /s/ Jeffrey E. Marcus
Jeffrey E. Marcus, Esq.
Florida Bar No. 310890
jmarcus@mnrlawfirm.com
Michael Pineiro
mpineiro@mnrlawfirm.com
Fla. Bar No. 041897
Brandon Floch
bfloch@mnrlawfirm.com
Fla. Bar No. 125218

WILLIAMS & CONNOLLY LLP

680 Maine Ave. SW
Washington, DC 20024
(202) 434-5000

Steven M. Farina (*pro hac vice* )
sfarina@wc.com
John S. Williams (*pro hac vice*)
jwilliams@wc.com
Melissa B. Collins (*pro hac vice*)
mcollins@wc.com

*Counsel for Defendant Paxos Trust Company, LLC*