**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-cv-21261-ALTMAN/Reid**

MICHAEL SIZEMORE, *et al.*,

    *Plaintiffs*,

*v.*

CHANGPENG ZHAO, *et al.*,

    *Defendants*.

_____/

## ORDER DENYING MOTION TO COMPEL ARBITRATION

Our Defendants—Changpeng Zhao and several Binance entities—have filed a Motion to Compel Arbitration (the "Motion") [ECF No. 241]. But neither Zhao nor the Binance entities are signatories to the arbitration agreement they seek to enforce. And the Plaintiffs' counter-signatories to the arbitration agreement—BAM Management U.S. Holdings, Inc. and BAM Trading Services, Inc.—have been dismissed from this case. Undeterred by this procedural problem, the Defendants argue that, as non-signatories, they can compel arbitration under the doctrine of equitable estoppel. So, we need to answer two questions: *First*, does the arbitration agreement delegate to the arbitrator the authority to resolve this issue of equitable estoppel? *Second*, if not, does the doctrine of equitable estoppel permit the Defendants to compel arbitration in the circumstances presented here? Because the answer to both questions is no, we **DENY** their Motion.

### PROCEDURAL BACKGROUND

On June 27, 2024, our Plaintiffs filed a First Amended Class Action Complaint ("FAC") [ECF No. 100] against three groups of defendants—the Binance Defendants, the BAM Defendants, and

the Other Defendants (collectively, the "FAC Defendants").[1] *See generally* FAC. In the FAC, the Plaintiffs alleged, among other things, that Binance—defined as an "opaque web of corporate entities"—sold and promoted "unregistered securities in violation of the securities laws." FAC ¶ 19.

After the Plaintiffs filed the FAC, the FAC Defendants filed a Motion to Compel Arbitration or, in the Alternative, to Dismiss the FAC (the "First Motion to Compel") [ECF No. 132], arguing that the Plaintiffs, as Binance.US users, agreed to the Binance.US "Terms of Use" (the "Terms") [ECF No. 185-2], which contained a provision requiring users to arbitrate any dispute arising out of the Terms (the "Arbitration Provision"). *See* Amended Declaration of Christopher Blodgett [ECF No. 185-1] ¶ 13 ("The Arbitration Provision itself states that 'BAM and You agree that any dispute or controversy arising out of or relating to these Terms or the Services, including, but not limited to, legal and equitable claims, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved through binding arbitration on an individual basis[.]'" (quoting Terms at 36–37)).

Each of our Plaintiffs created Binance.US accounts and, in doing so, agreed to the Arbitration Provision. *See id.* ¶ 25 ("BAM records reflect that Plaintiff Vongdara created his Binance.US account on January 7, 2021, Plaintiff Sizemore created his Binance.US account on August 21, 2021, . . . and Plaintiff Lewis created an account on April 26, 2023."). While the exact wording of the Terms has changed over time, "[e]very version of the [Terms] applicable while [the] Plaintiffs have been BAM users includes an arbitration provision." *Id.* ¶ 33. When Vongdara created his account, the October 30, 2020 Terms were in effect. *See* October 30, 2020 Terms [ECF No. 185-4] at 19. When Sizemore

---

[1] The Binance Defendants are Changpeng Zhao, Binance Holdings Limited (d/b/a/ Binance.com), Binance Holdings (IE) Limited, and Binance Services Holdings Limited. The BAM Defendants (or "BAM") are BAM Management U.S. Holdings, Inc. and BAM Trading Services, Inc. (d/b/a Binance.US). The Other Defendants are Paxos Trust Company, LLC, Jimmy Butler, and Ben Armstrong.

created his account, the April 26, 2021 Terms were in effect. *See* April 26, 2021 Terms [ECF No. 185-5] at 10. When Lewis created his account, the December 7, 2022 Terms were in effect. *See* December 7, 2022 Terms [ECF No. 15-8] at 51. Each version of the Terms included the Arbitration Provision and language explaining that "Arbitration shall be conducted in accordance with the rules of the American Arbitration Association ('AAA')." *See, e.g.*, *ibid.*

Before the FAC Defendants' First Motion to Compel was adjudicated, however, the Plaintiffs filed a Second Amended Class Action Complaint ("SAC") [ECF No. 236], dropping the BAM Defendants—the other signatories to the Arbitration Provision—as parties to this case. *See generally* SAC; *see also* Notice of Voluntary Dismissal of BAM Parties [ECF No. 226]. The Defendants then filed this Motion, arguing that the Plaintiffs can't avoid arbitration by dropping the BAM Defendants from the case. *See* Motion at 9 ("The SAC, which maintains the same core allegations as in the First Amended Complaint, is a cynical attempt to avoid arbitrating Plaintiffs' claims[.]"). The Motion is fully briefed and ripe for adjudication. *See* Response in Opposition to Motion ("Response") [ECF No. 244]; Reply in Support of Motion ("Reply") [ECF No. 245]. This Order follows.

## THE LAW

In 1925, "Congress enacted the Federal Arbitration Act to overcome 'the judiciary's long-standing refusal' to enforce arbitration agreements and, in particular, to place such agreements 'upon the same footing as other contracts.' The Act thus aimed to 'make arbitration agreements as enforceable as other contracts, but not more so.'" *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1215–16 (11th Cir. 2021) (Newsom, J., concurring) (first quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (cleaned up); and then quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

"Section 2, the primary substantive provision of the Act, provides, in relevant part, as follows: 'A written provision in . . . a contract evidencing a transaction involving commerce to settle by

arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2) (cleaned up). The Supreme Court has "described this provision as reflecting both a 'liberal federal policy favoring arbitration[ ]' and the 'fundamental principle that arbitration is a matter of contract[.]'" *Ibid.* (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); and then quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms[.]" *Ibid.* (first citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); and then citing *Volt Info. Scis.*, 489 U.S. at 478).

As with any other contract, "a party will not be required to arbitrate where it has not agreed to do so." *Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1335 (S.D. Fla. 2022) (Bloom, J.) (citing *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) (Cooke, J.), *aff'd*, 433 F. App'x 842 (11th Cir. 2011)). "It is axiomatic that the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution." *Ibid.* (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)); *see also Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011) ("As the [FAA] makes clear, arbitration is a creature of contract. *Parties must agree to arbitrate in the first instance*, and may contractually limit or alter the issues to be presented to the arbitrators, the scope of the award, and, as here, the form of the award." (emphasis added)). And, in deciding whether parties have agreed to arbitrate their claims, the Eleventh Circuit has adopted the view of "sister circuits that a summary judgment-like standard is appropriate and [held] that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the

formation of such an agreement." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting FED. R. CIV. P. 56(a)).

**ANALYSIS**

The Defendants advance two arguments. *First*, they say that the Plaintiffs "clearly and unmistakably" agreed to delegate "gateway arbitrability issues" to an arbitrator. Motion at 21. *Second*, they contend that, "even if no delegation agreement existed . . . [u]nder well-settled principles of equitable estoppel, [the Plaintiffs] must arbitrate claims against nonsignatory defendants[.]" *Id.* at 23–24. We'll address, and reject, each argument in turn.

### I.        Choice of Law

We begin by addressing the applicable law. "The scope, validity, and enforceability of arbitration agreements, including the right of non-signatories to compel arbitration, is governed by state contract law." *Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240, 242 (11th Cir. 2011) (citing *Arthur Andersen, LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009)). Here, the Terms include a choice-of-law provision, which says that the "Terms shall be construed in accordance with and governed for all purposes by the laws and public policy of the State of California applicable to contracts executed and to be wholly performed within such state." April 26, 2021 Terms at 10 (the "Choice-of-Law Provision"); *see also* October 30, 2022 Terms at 19 (same); December 7, 2022 Terms at 50 (same). For three reasons, we'll apply California law here.

*First*, as a federal court sitting in diversity, we "must apply the choice of law rules of the forum state." *Clanton v. Inter.Net Glob., LLC*, 435 F.3d 1319, 1323 (11th Cir. 2006) (cleaned up). For contract-related questions, Florida courts "have long adhered to the rule of *lex loci contractus.*" *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). This rule provides that, "in the absence of a contractual provision specifying the governing law," a contract is governed by the law of the state in which the contract was made. *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995).

But, where a contract specifies the governing law, "Florida respects choice of law provisions[.]" *Clarendon Am. Ins. Co. v. Mia. River Club, Inc.*, 417 F. Supp. 2d 1309, 1317 (S.D. Fla. 2006) (Seitz, J.). Here, the Choice-of-Law Provision provides that the Terms shall be "construed in accordance with" and "governed for *all* purposes" by California law. Choice-of-Law Provision (emphasis added).

*Second*, "[n]umerous courts in this District and others have held that the law specified in an arbitration agreement's choice-of-law clause governs whether an arbitration agreement may be enforced by a non-signatory against a signatory." *Newell v. Celebrity Cruises, Inc.*, 2021 WL 12218402, at *8 (S.D. Fla. Nov. 23, 2021) (Altonaga, C.J.) (collecting cases); *see also Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir. 2004) ("In short, if defendants wish to invoke the arbitration clauses in the agreements at issue, they must also accept the Swiss choice-of-law clauses that govern those agreements."). This principle applies with particular force here because, notwithstanding the parties' arguments to the contrary, an actual conflict exists between California and Florida law concerning the application of equitable estoppel—with California law favoring the Plaintiffs.

Both California and Florida law recognize that a party may be estopped from avoiding arbitration when its claims allege interdependent and concerted misconduct between arbitration-agreement signatories and non-signatories. *See Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1119 (11th Cir. 2020) (recognizing this application of equitable estoppel under California law); *see also Schreiber v. Ally Fin. Inc.*, 634 F. App'x 263, 264 (11th Cir. 2015) (recognizing this application of equitable estoppel under Florida law). California law, however, goes a step further and requires a showing that the alleged concerted misconduct must be "'founded in or intimately connected with the obligations of the underlying agreement.'" *Lavigne*, 967 F.3d at 1119 (quoting *Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534, 543–44 (2009)); *see also In re Henson*, 869 F.3d 1052, 1061 (9th Cir. 2017) ("Even where a plaintiff alleges collusion, the *sine qua non* for allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff asserts against the nonsignatory are dependent on or

6

inextricably bound up with the contractual obligations of the agreement containing the arbitration clause." (cleaned up)). Cases applying Florida law, by contrast, *don't* uniformly require the alleged misconduct to be intimately tied to the terms of the relevant contract. *See, e.g.*, *Lubin v. Verint Americas Inc.*, 2021 WL 9080004 (S.D. Fla. June 21, 2021) (Cohn, J.) (finding allegation of concerted misconduct sufficient to invoke equitable estoppel, even absent reliance on the terms of the contract). Given this conflict, it wouldn't make sense to allow the Defendants to enforce the Terms' Arbitration Provision while simultaneously evading the Terms' Choice-of-Law Provision.

*Third*, the parties appear to have litigated under the assumption that the Choice-of-Law Provision would (or at least *may*) compel us to apply California law. The Defendants specifically invoked the Choice-of-Law Provision in their Motion, *see* Motion at 17 n.15 ("The Terms' choice of law provision states that all Terms shall be construed in accordance with and governed for all purposes by the laws and public policy of the State of California applicable to contracts executed and to be wholly performed within such state. *Even if* Florida law applied to the Arbitration Provision, Plaintiffs would still be obligated to arbitrate their claims, as set forth infra." (cleaned up and emphasis added)), and the Plaintiffs argued that they'd succeed under *either* California *or* Florida law and devoted substantial space in their Response to an analysis of California law, *see* Response at 7 ("Generally, under both Florida and California law, a non-signatory to a contract containing an arbitration clause cannot compel a signatory to submit to arbitration." (cleaned up)). Where "the parties litigate the case under the assumption that a certain law applies, we will assume that that law applies." *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012).

For these reasons, we'll address the merits of the parties' arguments under California law. Before we do so, however, we need to address one housekeeping matter. Faced with the Plaintiffs' Response, which cites unfavorable Eleventh Circuit precedent applying California law, *see* Response at 8 (discussing *Lavigne*), the Defendants backed off their earlier invocation of the Choice-of-Law

Provision and insisted that Florida law governed this dispute, *see* Reply at 8 ("Florida law—the law of the forum—governs the question of whether nonsignatories can equitably enforce an agreement."). This about-face is unpersuasive for several reasons. *First*, as the Eleventh Circuit has "repeatedly [ ] admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court." *Herring v. Sec., Dept. of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (cleaned up). This is especially true where (as here) it was the *Defendants* that initially invoked the Choice-of-Law Provision, prompting the Plaintiffs to devote a substantial portion of their limited response space to California law—only for the Defendants to reverse course once they realized how unfavorable California law turned out to be. We won't be a party to all that. *Second*, the Defendants forfeited their right to dispute the application of California law by arguing that California and Florida law would yield the same result. *See* Motion at 18 n.16 ("[N]o choice of law analysis is required where the result is the same under different states' laws" (citing *Valiente v. Nexgen Glob.*, LLC, 2023 WL 6213583, at *4–5 (S.D. Fla Sep. 22, 2023) (Altman, J.)). *Third*, the Defendants don't explain why we'd apply our forum state's *substantive* law, when the contract at issue here specifically provides for the application of California law. Again, as a federal court sitting in diversity, we "must apply the *choice of law rules* of the forum state," though not necessarily that state's substantive laws. *Clanton*, 435 F.3d at 1323 (emphasis added). We'll therefore apply California law.

## II.     The Delegation Clause Can't be Enforced by Non-Signatories

Next, we must decide who is authorized to determine the arbitrability of the Plaintiffs' claims—the arbitrator or this Court. According to the Defendants, the Arbitration Provision contains a "delegation clause" that delegates "gateway issues of arbitrability to the arbitrator." Motion at 21. Put simply, the Defendants believe that, pursuant to this clause, *we* should allow the arbitrator to sort out the contours of its own jurisdiction. The Plaintiffs (obviously) disagree. As they see it, while they *may* have agreed to delegate gateway issues of arbitrability with BAM, they *never* agreed to delegate

gateway issues of arbitrability with the Defendants. *See* Response at 14 ("Plaintiffs did not enter into an agreement to arbitrate with any of the Defendants, let alone one that delegates the issue of arbitrability to an arbitrator.").

"The FAA limits federal court review of arbitration agreements to two gateway arbitrability issues: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'" *Houghton v. Polychain Alchemy*, LLC, 2025 WL 2965204, at \*2 (9th Cir. Oct. 21, 2025) (quoting *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023)). "Delegation provisions further limit federal court review by assigning these gateway questions to an arbitrator." *ibid.* The "[e]nforcement of an arbitration agreement through equitable estoppel"—the issue our Defendants raise here—is one such "gateway issue." *Ibid.*

For a delegation clause to be enforceable, the parties must "clearly agree to submit the question of arbitrability to arbitration"; otherwise the arbitrability of the dispute is "subject to independent review by the courts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947 (1995). The Supreme Court recently reaffirmed this principle, holding that "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 143, 149 (2024) (cleaned up).

The Defendants argue that the Arbitration Provision's incorporation of the AAA rules "suffices to show that" the Plaintiffs and BAM "delegated issues of arbitrability to the arbitrator." Motion at 21. The Plaintiffs answer that "[i]t was Plaintiffs and BAM—a non-party—who purportedly agreed that the arbitrator would have the power to rule on their own jurisdiction," *not* the Plaintiffs and the Defendants. Response at 14. We agree with the Plaintiffs.

The mere incorporation of the AAA rules doesn't "clearly and unmistakably" delegate gateway arbitrability issues when the gateway issue is whether a non-signatory can enforce an arbitration agreement against a signatory. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013)

("[T]he arbitration agreements do not contain clear and unmistakable evidence that Plaintiffs and [non-signatory] Toyota agreed to arbitrate arbitrability. While Plaintiffs may have agreed to arbitrate arbitrability in a dispute with the [signatory] Dealerships, the terms of the arbitration clauses are expressly limited to Plaintiffs and the Dealerships . . . The language of the contracts thus evidences Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else. The Dealerships are not a party to this action. Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable." (citation omitted)); *Houghton*, 2025 WL 2965204, at *3 ("[T]he incorporation of the AAA rules . . . [isn't] sufficient to find 'clear and unmistakable' evidence of delegation. While in *Brennan v. Opus Bank*, we did hold that 'the incorporation of the AAA rules constitutes clear and unmistakable evidence' of delegation, that holding was in the context of 'contracting parties agree[ing]' to 'arbitrate arbitrability.' We have not subsequently extended the holding where the party seeking enforcement is not a signatory to the arbitration agreement." (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1127, 1130 (9th Cir. 2015))); *Young v. Solana Labs, Inc.*, 2025 WL 2953247, at *2 (9th Cir. Oct. 20, 2025) ("Incorporating the JAMS rules . . . does not unambiguously resolve the delegation of arbitrability in [the non-signatory's] favor given the other language limiting the arbitration agreement to [the two signatories]. Therefore, the arbitration agreement in [the] Terms of Use does not 'clearly and unmistakably' delegate arbitrability with non-signatories."); *Lavigne*, 967 F.3d at 1118 ("Under California law (which governs these agreements), 'one must be a party to an arbitration agreement to be bound by it or invoke it.' Because none of the top distributors is a party to any of the aggrieved distributors' agreements, they cannot invoke the agreements' arbitration clauses." (quoting *Westra v. Marcus & Millichap Real Est. Inv. Brokerage Co., Inc.*, 129 Cal. App. 4th 759, 763 (Ct. App. 2005))); *see also id.* at 1120 n.7 ("Threshold questions of arbitrability can be delegated to an arbitrator by contract. But how does one go about delegating the question of equitable estoppel?

10

By definition, there is no contract, which is, after all, why one of the parties is demanding equitable estoppel. So, if there is no contract, how can the issue of equitable estoppel be delegated in the first place?" (citing *First Options*, 514 U.S. at 943)).

Like the cases cited above, our Arbitration Provision expressly applies to the Plaintiffs and BAM. *See* Arbitration Provision at 37 ("*BAM and you agree* that any dispute or controversy arising out of or relating to these Terms or the Services . . . shall be resolved through binding arbitration[.]" (emphasis added)); *see also id.* at 38 ("Any dispute *between BAM and You* regarding the construction, interpretation, or application of this arbitration provision, including the enforceability, severability, revocability, scope, or validity of this arbitration provision, shall be decided by an arbitrator and not by a court or judge." (emphasis added)). Applying the relevant precedents, we conclude that the delegation clause—signed only by the Plaintiffs and BAM—*isn't* enforceable as between the Plaintiffs and the Defendants because the Plaintiffs and the Defendants never mutually agreed to delegate gateway questions of arbitrability. That means it's up to us—not the arbitrator—to determine whether the Defendants can compel arbitration.[2]

---

[2] We'd reach the same result under Florida law. In *Lubin v. Starbucks Corp.* 122 F.4th 1314, 1320–21 (11th Cir. 2024), the plaintiff—the spouse of a former Starbucks employee—brought a putative class action against Starbucks, alleging that it failed to provide him and similarly situated class members with adequate COBRA enrollment notices. *Id.* at 1317–18. Starbucks sought to compel arbitration based on the arbitration and delegation clauses that were included within the employment agreement Lubin's wife had signed. *Ibid.* Starbucks—like our Defendants—argued that "the delegation clause of the arbitration agreement makes clear that the parties agreed to arbitrate questions of arbitrability," despite the fact that Lubin wasn't a signatory to that agreement. *Id.* at 1320. In denying Starbucks's motion to compel arbitration, the Eleventh Circuit, applying Florida law, held that:

> Lubin is not a party to the delegation clause. And absent an agreement between Lubin and Starbucks, a court cannot compel the parties to settle their dispute in an arbitral forum. Arbitration agreements are no more enforceable than an average contract, and we may not devise novel rules to favor arbitration over litigation. The delegation clause, just like every other clause in the arbitration agreement, was between Starbucks and Lubin's wife, not Lubin. We thus conclude that the terms of the arbitration agreement do not require Lubin to arbitrate his claim against Starbucks, absent another principle of law or equity.

11

Resisting this conclusion, the Defendants cite two district court orders—both unpersuasive. *See* Motion at 22 ("[I]t is within the arbitrator's (not the Court's) province to determine whether this case is arbitrable, including whether the [Binance Defendants] are entitled to enforce the Arbitration Provision." (first citing *Eco Brands, LLC by & through Midas Fin. Grp., LLC v. Eco Brands, LLC*, 2021 WL 724924, at *6 (S.D. Fla. Feb. 5, 2021) (Otazo-Reyes, Mag. J.), *report and recommendation adopted*, 2021 WL 722801 (S.D. Fla. Feb. 24, 2021) (Martinez, J.); and then citing *Rivera v. L-3 Commc'ns Corp.*, 2010 WL 11629096, at *2 (M.D. Fla. May 24, 2010) (Whittemore, J.)). For one thing, these cases aren't binding on us. *Eco Brands* is a magistrate judge's unpublished report and recommendation, while *Rivera* is the unpublished view of a district judge. *Second*, both cases predate *Lubin*, where (as we've said) the Eleventh Circuit explained that a delegation clause, agreed to by two signatories, doesn't delegate the question of arbitrability in a lawsuit between a signatory and a non-signatory. *Third*, neither case applies California law, which we've determined is the substantive law that governs this dispute.

The delegation clause thus doesn't strip us of the authority to determine the arbitrability of the Plaintiffs' claims.

### III.     The Doctrine of Equitable Estoppel Doesn't Require Us to Compel Arbitration

We therefore turn to our final question: whether the Defendants can invoke the Arbitration Provision to require the Plaintiffs to arbitrate their claims.

It's a well-established rule of contract law that a non-party to an agreement can't enforce the contract's terms against a party, unless an exception under the "relevant state contract law allows him" to do so. *Arthur Andersen, LLP*, 556 U.S. at 632. The Defendants aren't signatories to the Terms or the Arbitration Provision so, to compel arbitration, they must rely on a state contract law exception

---

*Id.* at 1320–21 (cleaned up); *see also Garn v. S. Fla. Stadium LLC, 2025 WL 1279071*, at *3 (S.D. Fla. Mar. 26, 2025) (Williams, J.) (applying *Lubin* to reach the same conclusion we've reached here). That's much the same logic we've deployed to reach the same result here.

to this general rule. One such exception—and the only one the Defendants rely on—is the doctrine of equitable estoppel. "Generally, in the arbitration context, equitable estoppel allows a nonsignatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory." *GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438 (2020) (cleaned up); *see also Lavigne*, 967 F.3d at 1118 ("Under California law . . . the purpose of equitable estoppel is 'to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement.'" (quoting *Goldman*, 92 Cal. Rptr. 3d at 543–44)).

"A non-signatory to an arbitration agreement may compel arbitration [under equitable estoppel] in one of two circumstances: (1) when the plaintiff-signatory must rely on the terms of the written agreement in asserting its claims or (2) when the plaintiff-signatory alleges substantially interdependent and concerted misconduct by the signatories and non-signatories, and such alleged misconduct is founded in or intimately connected with the obligations of the underlying agreement[.]" *Lavigne*, 967 F.3d at 1118–19. (cleaned up).

The Defendants rely exclusively on the second circumstance. As they see it, "the SAC continues to allege substantially interdependent and concerted conduct between BAM and Defendants. Plaintiffs' persistent references to 'Binance' and the 'Binance platform' encompass not only Defendants and Binance.com, but BAM and Binance.US as well; [ ] therefore, the SAC is necessarily replete with allegations of 'interdependent and concerted misconduct' between BAM (the signatory) and Defendants (the nonsignatories)." Motion at 26 (cleaned up); *see also ibid.* ("[A]ccording to the SAC, Defendants' purported skirting of U.S. regulations—with the alleged assistance of BAM— form the alleged bases of Plaintiffs' newly alleged civil RICO claim."); *id.* at 27 ("Plaintiffs' claims here

13

continue to rely on alleged conduct from which BAM is inseparable.").

But, even if we agreed with the Defendants here, mere "allegations of substantially interdependent and concerted misconduct by [the Defendants] and [BAM], standing alone, are not enough: the allegations of interdependent misconduct must be founded in or intimately connected with the obligations of the [Terms]." *In re Henson*, 869 F.3d at 1061 (cleaned up). And none of the Plaintiffs' allegations of misconduct are founded in (or intimately connected with) the Terms. The Plaintiffs don't allege that the Defendants breached any contractual obligations under the Terms, nor do they rely on any written provisions of the Terms in their SAC. "When a plaintiff fails even to mention any of the terms, much less discuss them in detail, we are hard-pressed to conclude that he or she relied on such terms." *Lavigne*, 967 F.3d at 1119; *see also In re Henson*, 869 F.3d at 1061 ("Even where a plaintiff alleges collusion, the *sine qua non* for allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff asserts against the nonsignatory are dependent on or inextricably bound up with the contractual obligations of the agreement containing the arbitration clause." (cleaned up)).

Parrying, the Defendants argue (in Reply) "that [the] Plaintiffs' claims are indisputably rooted in (and thus intimately intertwined with) their contractual relationships with BAM . . . [because] without the contractual legal relationship that was established between [the] Plaintiffs and BAM through the Terms in the first place, [the] Plaintiffs would have no basis to assert any of their claims in the SAC." Reply at 8–9 (cleaned up). But the Ninth Circuit, applying California law, squarely rejected this same argument in *Murphy v. DirecTV, Inc.*, holding that:

> Even if [Defendant] is correct that Plaintiffs' claims on some abstract level require the existence of the Customer Agreement, the law is clear that this is not enough for equitable estoppel. In California, equitable estoppel is inapplicable where a plaintiff's allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the customer agreements. Applying this principle in *Kramer*, we held that Toyota could not compel arbitration of a consumer class action on the basis of arbitration clauses contained in the Purchase Agreements customers entered into with their dealerships. We expressly rejected Toyota's argument that the plaintiffs' claims

14

> were necessarily intertwined with the Purchase Agreements merely because the lawsuit was predicated on the bare fact that a vehicle purchase occurred. Rather, we held that the plaintiffs' causes of action, which, as here, largely arose under California consumer protection law, were not sufficiently intertwined with the Purchase Agreements to trigger equitable estoppel. Likewise, here, the Customer Agreement proves at most the existence of a transaction; Plaintiffs' claims do not depend on the Agreement's terms.

724 F.3d 1218, 1230–31 (9th Cir. 2013) (cleaned up). So too here. While the Plaintiffs' harm may have been caused, in part, by the fact that they were Binance.US users, their claims arise under various state and federal laws wholly unrelated to the Terms. That the terms suggest a relationship between the Plaintiffs and BAM is thus insufficient to show that the Plaintiffs' claims are so intertwined with the agreement as to justify the application of equitable estoppel.[3]

And, for two reasons, we find uncompelling the Defendants' characterization of the Plaintiffs' dismissal of the BAM Defendants as a "tactical ploy." *First*, the Plaintiffs' dismissal of the BAM Defendants was hardly gamesmanship. Our Defendants and BAM—for reasons outside the scope of this Order—*chose* to operate as distinct entities, creating separate corporations and limiting the application of the Terms to BAM only. *See generally* Terms. While they were perfectly within their rights to do so, we won't penalize the Plaintiffs for adhering to the very separation the Defendants intentionally created. *See Taborda v. Freedom Mortg. Corp.*, 2026 WL 804142, at *4 (S.D. Fla. Mar. 24, 2026) (Altman, J.) ("[The plaintiff] elected to conduct business through an LLC— presumably to avail himself of the legal protections that corporate form afforded him. We won't allow him to disregard the principle of corporate separateness now that its consequences are inconvenient for him."

---

[3] For these same reasons, the Plaintiffs' claims *also* don't fall within the first circumstance. *See Lavigne*, 967 F.3d at 1119 ("[I]t is not enough that the alleged misconduct is somehow connected to the obligations of the underlying agreements; the misconduct must be founded in or inextricably bound up with such obligations." (cleaned up)); *see also In re Henson*, 869 F.3d at 1060 ("As to the first circumstance, merely making reference to an agreement with an arbitration clause is not enough. Instead, for equitable estoppel to apply, Henson's claims against Turn must rely on the terms of the Customer Agreement. In other words, Henson's claims must be based on the obligations imposed by the Customer Agreement." (cleaned up)).

15

(emphasis removed)).

*Second*, the cases the Defendants cite in support of their position—that an arbitration-agreement signatory can't avoid arbitration by dismissing its counter-signatory—are inapposite here. *See* Motion at 25 (first citing *Morselife Found., Inc. v. Merrill Lynch Bank & Tr. Co.*, 2010 WL 2889932, at *1–3 (S.D. Fla. July 21, 2010) (Marra, J.); and then citing *Physician Consortium Servs.*, 414 F. App'x at 243). In *Morselife*, the court compelled arbitration because the plaintiffs failed to allege *any* independent misconduct by the non-signatory defendant—instead, all its claims were really against the signatory. *See Morselife*, 2010 WL 2889932, at *4 ("[T]he Amended Complaint does not allege any tortious acts by [non-signatory defendant] MLTC that are separate and apart from the alleged acts of [signatory] Merrill Lynch employees[.]"). Here, the Plaintiffs allege that the Defendants engaged in misconduct that's separate from any acts that could've been alleged against the BAM Defendants—such as issuing the purportedly illegal BNB tokens and allegedly selling unregistered securities on Binance.com. *See generally* SAC. The Defendants' reliance on *Physician Consortium* is equally misplaced. In that case, the Eleventh Circuit held that a non-signatory could compel arbitration under equitable estoppel because the "[p]laintiffs' claims against [the non-signatory] [were] based entirely on the terms of the Purchase Agreement." *Physician Consortium Servs.*, 414 F. App'x at 242. That's the very opposite of our case—where (as we've outlined) the Plaintiffs' claims against the Defendants *aren't* based on the Terms at all.[4]

### CONCLUSION

In sum, the Defendants aren't parties to the contract that included the Arbitration Provision and thus lack the authority to enforce its terms against the Plaintiffs. And the doctrine of equitable estoppel doesn't apply here because the Plaintiffs' claims don't rely on any contractual right or

---

[4] In any event, neither *Morselife* nor *Physician Consortium* applies California law, which governs us here.

obligation found in the Terms.[5] We therefore **DENY** the Defendants' Motion to Compel Arbitration [ECF No. 241].

      **DONE AND ORDERED** in the Southern District of Florida on April 9, 2026.

               **ROY K. ALTMAN**
               **UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

---

[5] Because the Defendants can't enforce the Arbitration Provision, we needn't (and shouldn't) address the scope or validity of that provision.